# Exhibit A

⚜ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
JEFFERSON COUNTY, GEORGIA

**23CV00138**

**DEC 12, 2023 04:06 PM**

*Anne L. Durden*
Anne L. Durden, Clerk
Jefferson County, Georgia

## IN THE SUPERIOR COURT OF JEFFERSON COUNTY
### STATE OF GEORGIA

| | | |
|---|---|---|
| Jonathan Dunn, Individually<br>And on Behalf of All Others Similarly<br>Situated,<br><br>Plaintiff,<br><br>v.<br><br>REDSPEED GEORGIA LLC and<br>CITY OF WRENS, GEORGIA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CLASS ACTION<br>CIVIL ACTION FILE<br>NO. _____ |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, individually and on behalf of all other persons similarly situated, by and through his attorneys, upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, alleges as follows:

### NATURE OF THE ACTION

1.

This is a class action for refund of unauthorized and excessive fees levied and collected by Defendant Redspeed Georgia, LLC (Redspeed) not permitted by O.C.G.A. § 40-14-18 (the "School Zone Electronic Enforcement Statute") and to challenge the validity of the contract between the City of Wrens and Redspeed. The School Zone Electronic Enforcement Statute provides for maximum electronic processing fees and specific fines that may be collected as civil monetary penalties for excessive speed in an authorized school zone by governing bodies and further directs how the funds must be spent. Redspeed is a private, for-profit LLC. It is not a *governing body,* nor is it an agent of a *governing body* nor an agent of a *law enforcement agency.* Redspeed has disregarded the statute, and is collecting *unauthorized revenue*, wrongfully retaining

revenue, imposing unsubstantiated "electronic processing fees," "license reader module" fees and unauthorized credit card usage fees against named Plaintiff and the prospective Class Members in violation of Georgia law.

2.

Georgia law does not allow private, for-profit corporations to share on a percentage-basis fines and penalties imposed upon its citizens for violations of criminal statutes, nor does it authorize a private, for-profit LLC to masquerade as a law enforcement agency and thereby deceptively hide the fact that a large portion of the solicited monies are being retained by the undisclosed private, for-profit LLC. Such conduct is illegal, fraudulent, and actionable under the Georgia RICO statute.

## PARTIES, JURISDICTION AND VENUE

3.

Plaintiff is a resident and citizen of Chatham County, Georgia, and was issued a "Notice of School Speed Violation" under the "School Zone Electronic Enforcement Statute" on November 17, 2023, in Wrens, Jefferson County, Georgia.

4.

Defendant Redspeed Georgia, LLC (Redspeed) is a Georgia Limited Liability Company. It is a citizen of the State of Georgia within the meaning of 28 U.S.C. § 1332(c)(1). Redspeed may be served through its registered agent, CT Corporation, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805. Redspeed operates a Speed Photo Enforcement System (SPE) within school zones in numerous Georgia counties, including Jefferson County. As such, it has elected to be subject to the general jurisdiction of the courts of Georgia, including this Court.

2

5.

Defendant City of Wrens, Georgia is a municipal in Jefferson County, Georgia.  Defendant City of Wrens has a contract with Defendant Redspeed for the operation of a Speed Photo Enforcement System in Wrens, Georgia.  This action challenges the validity of that contract.  The City of Wrens is therefore a necessary party. Pursuant to O.C.G.A. § 9-11-4(e)(5), the City of Wrens may be served by service upon its City Administrator, Arty Thrift, at his office at 401 East Broad Street, Wrens, Georgia  30833.

6.

Venue is proper in Jefferson County.  The events or omissions giving rise to Plaintiff's claims occurred in this County including wrongfully extracting $84 from Plaintiff Dunn not authorized by the School Zone Electronic Enforcement Statute through fraudulent and deceptive conduct as set forth herein.

## FACTUAL BACKGROUND

### Overview

7.

On or about November 17, 2023, Plaintiff Jonathan Dunn received a "Notice of School Speed Violation" that purports to be from the City of Wrens Police Department. The violation states that a vehicle registered to Jonathan Dunn was issued a notice of violation of O.C.G.A. § 40-14-18 for excessive speed in a school zone.  More specifically, the notice of violation states that a camera took photographs of Plaintiff's vehicle traveling  61 miles per hour in a school zone with a speed limit of  45 miles per hour. A copy of the "Notice of School Speed Violation" is attached hereto as Exhibit "A".

8.

The "Notice of School Speed Violation" states a 2013 BMW registered to Jonathan Dunn was photographed violating the "School Zone Electronic Enforcement Statute" and as the registered owner of the vehicle, Plaintiff Dunn was responsible for a civil monetary penalty. The civil monetary penalty set forth on the violation was $80.00 even though the statute only authorizes a civil penalty of $75.00 for the first offense. O.C.G.A. § 40-14-18(b)(1). Redspeed included its "electronic processing fee" as part of the "civil penalty."

9.

Redspeed did not send to Plaintiff "a copy of a certificate sworn to or affirmed by a certified peace officer" that complies with Georgia law and the mandate of O.C.G.A. § 40-14-18(b)(2)(D). On information and belief, no officer was administered an oath by a person authorized to administer oaths verifying the violation asserted and mailed by Redspeed to Plaintiff Dunn, a requirement of Georgia law. The statement to the contrary in the citation that Redspeed mailed to Plaintiff Dunn was materially false and deceptive, and was used to extract money from the Plaintiff in violation of Georgia law, including O.C.G.A. § 16-8-3. On information and belief, other solicitations for money sent by Redspeed were similarly deficient and deceptive.

10.

Plaintiff Dunn paid the $80.00 penalty set forth on the Notice of School Speed Violation solicited by Redspeed on December 4, 2024 and was charged and paid an additional $4.00 for the use of a credit card for payment. Plaintiff's total payment was $84.00. The payment was processed and retained by Redspeed at its home office in Lombard, Illinois through Redspeed's payment website "www.SpeedViolations.com." This website is accessible to recipients who received Notices of Violation. A true and correct copy of the receipt indicating payment is attached hereto

as Exhibit "B".

11.

The payment was not voluntary.  All the facts were not known by Mr. Dunn.  Plaintiff Dunn had the misplaced confidence that the violation was from the City of Wrens Police Department. Redspeed used deception of Mr. Dunn and others to collect unauthorized revenue. The payment was compelled under threat of a lien on the title to Mr. Dunn's automobile and deprivation of the use of his automobile and his rights as owner of  his automobile.

**The School Zone Electronic Enforcement Statute**

12.

The School Zone Electronic Enforcement Statute became effective on July 1, 2018.  A true and correct copy of the School Zone Electronic Enforcement Statute is attached as Exhibit "C".

13.

The School Zone Electronic Enforcement Statute provides:

[T]he speed limit within any school zone as provided for in Code Section 40-14-8 and marked pursuant to Code Section 40-14-6 may be enforced by using photographically recorded images for violations which occurred only on a school day during the time in which instructional classes are taking place and one hour before such classes are scheduled to begin and for one hour after such classes have concluded when such violations are in excess of ten miles per hour over the speed limit.

O.C.G.A. § 40-14-18(a)(1).

14.

The School Zone Electronic Enforcement Statute further provides:

The owner of a motor vehicle shall be liable for a civil monetary penalty to the governing body of the law enforcement agency provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard of disobedience was not otherwise authorized by law. The amount of such civil monetary penalty shall be $75 for a first violation

5

and $125 for a second or any subsequent violation, in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00…

*Id.* at (b)(1).

15.

Paragraph (b)(2) of the School Zone Electronic Enforcement Statute provides:

A law enforcement agency authorized to enforce the speed limit of a school zone, or an agent working on behalf of a law enforcement agency or governing body, shall send by first class mail addressed to the owner of the motor vehicle within 30 days after obtaining the name and address of the owner of the motor vehicle but no later than 60 days after the date of the alleged violation:

    (A)    A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid;

    (B)    An image taken from the photographically recorded images showing the vehicle involved in the infraction;

    (C)    A website address where photographically recorded images showing the vehicle involved in the infraction and a duplicate of the information provided for in this paragraph may be viewed;

    (D)    A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically record images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

    (E)    A statement of the inference provided by paragraph (4) of this subsection and of the means specified therein by which such inference may be rebutted;

    (F)    Information advising the owner of the motor vehicle of the manner in which liability as alleged in the citation may be contested through an administrative hearing; and,

    (G)    A warning that failure to pay the civil monetary penalty or to contest liability in a timely manner as provided for in subsection (d) of this Code section shall waive any right to contest liability.

*Id.* at b(2)(A)-(G).

6

16.

Paragraph (m) of said statute provides:

**§ 40-14-18. Enforcement; photographically recorded images; civil penalty**

(m) The money collected and remitted to the governing body pursuant to paragraph (1) of subsection (b) of this Code section shall only be used by such governing body to fund local law enforcement or public safety initiatives. This subsection shall not preclude the appropriation of a greater amount than collected and remitted under this subsection.

O.C.G.A. § 40-14-18(m).

17.

Redspeed has prepared and entered into substantially similar contracts with numerous Georgia counties and local governments to perform automated enforcement of the "School Zone Electronic Enforcement Statute". Redspeed owns, possesses, implements, and operates the SPE System including equipment and cameras. Redspeed provides an automated, web-based processing program for all Notices of School Speed Violations on the documents mailed to purported violators.

18.

Redspeed's contracts with counties and cities in Georgia provide in pertinent part the following summarized provisions:

7.      FEES AND PAYMENT:

GOVERNING BODY shall pay for all equipment, services and maintenance based on the fee schedule in Exhibit B, Schedule 1 ("Fees").

.   .   .

10.      OWNERSHIP OF SYSTEM:

It is understood by GOVERNING BODY that the SPE System being installed by REDSPEED is, and shall remain, the sole property of REDSPEED, unless separately procured from REDSPEED through a lease or purchased transaction.

7

The SPE Systems are provided to GOVERNING BODY only under the terms and for the term of this Agreement.         .   .   .

18.    NO AGENCY:

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under the Agreement and acts as an agent of GOVERNING BODY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the GOVERNING BODY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

19.

Redspeed collects and retains 33% of the civil monetary fine and an additional 2% for the license plate reader per paid violation. Schedule 1, Service Fee Schedule, to the Redspeed contracts provides:

GOVERNING BODY agrees to pay REDSPEED the Fee(s) as itemized below:

1.  Description of Pricing

Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations. Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web-based SPE System for Certified Peace Officer review:

33% service fee for each paid violation

2.  Optional Services

License Plate Reader (LPR) module: Additional 2% service fee for each paid violation per approach

Copies of several Redspeed contracts with governmental entities in Georgia are attached as Exhibit "D".

20.

In addition to taking a percentage of the total amount collected for each violation, Redspeed charges each violator who pays by credit card a convenience fee of $4.00. Redspeed retains the credit card convenience fees. There is no statutory authorization for this charge.

21.

Pursuant to its SPE System agreements, Redspeed is not an agent of the City of Wrens nor of the Wrens Police Department.

22.

The Redspeed contracts are void as forbidden gratuities in that the City of Wrens is required to pay in full for equipment owned by Redspeed but Redspeed retains ownership after being paid in full for the equipment by the City of Wrens in violation of Georgia Constitution, Art. 3, Sec. 6, ¶ 6. Redspeed has wrongfully and deceptively, and without authority, collected funds from the named Plaintiff and members of the Class that it has retained and applied to its charges for the cost of Redspeed's equipment that are not authorized by O.C.G.A. § 40-14-18 in violation of O.C.G.A. §16-8-3 and Art. 3, Sec. 6, ¶ 6 of the Georgia Constitution.

23.

The Redspeed contracts are void in that they delegate law enforcement duties to employees of a private, for-profit corporation compensated on a fee system in violation of O.C.G.A. § 40-14-2 and the Due Process Clause of the Georgia Constitution, Act. 1, Sec. 1, ¶ 1. Redspeed has wrongfully and deceptively, and without authority, collected and retained funds from the named Plaintiff and members of the Class.

24.

Substantially similar Speed Photo Enforcement System Agreements provide that Redspeed

9

shall collect and accumulate all payments received under the guise of payments to law enforcement agencies on a monthly basis and provide payment of a portion of the collected funds to the city or county entity on or before the 15th day of the following month. The notices of violations issued and mailed, and the collection of the penalties and fees are standardized and automated. The name of the law enforcement agency in the county or municipality under contract is inserted into the notice of violation by Redspeed.  Although the "City of Wrens" is identified on the notice of violation as the recipient of payment, the mailing address for all payments by check are to Redspeed's Post Office Box in Atlanta, Georgia though such fact is not disclosed by Redspeed. This non-disclosure is deceptive and utilized to extract money from Plaintiff and Class Members that they do not owe to Redspeed, in violation O.C.G.A §§ 16-8-3 and 16-10-23.

25.

As part of the Speed Photo Enforcement System Agreements, Redspeed assumes responsibility for mailing the "Notice of School Speed Violation" to the registered owner of a vehicle that has been deemed in violation of O.C.G.A. § 40-14-18, even though Redspeed is not a law enforcement agency or an agent of a law enforcement agency or an agent of a governing body as required by O.C.GA. § 40-14-18(b)(2).  Included on the "Notice of School Speed Violation" prepared by Redspeed is a penalty amount and payment instructions.  Redspeed does not disclose its name, its involvement or the fact that the solicited payments go to Redspeed and not to the law enforcement agency or local government that is named in the violation as the payee of the solicited civil monetary penalty of $80.00.  Redspeed thus deceptively hides its identity and illegally impersonates itself as a law enforcement officer in violation of O.C.G.A. § 16-10-23.  Redspeed thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiff and Class Members in violation of O.C.G.A. §§ 16-8-3, and 16-10-23.

26.

Each time Redspeed mails a notice of violation to members of the Class in the form of Exhibit "A," it is a separate violation of O.C.G.A. § 16-10-23 and a separate and related act of racketeering activity. O.C.G.A. § 16-14-3(5)(A)(xxiii).  Each use of the U.S. Mails by Redspeed is a part of a pattern of racketeering activity.

27.

Pursuant to the School Zone Electronic Enforcement Statute the "civil monetary penalty [for violation of the School Zone Electronic Enforcement Statute] shall be $75.00 for a first violation and $125.00 for a second or any subsequent violation, *in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00….*" O.C.G.A. § 40-14-18(b)(1) (emphasis added). The statute provides a maximum of $25 for the electronic processing of the *civil monetary penalty.*

28.

The electronic processing fee of the civil monetary penalty assessed to Plaintiff and Class Members exceeds the statutory amount authorized by O.C.G.A. § 40-14-18(b)(1) in that it is an automatic, unsubstantiated charge for services purportedly already reimbursed to Redspeed in the excessive, unauthorized percentages it retains for each paid violation. Redspeed deceptively demanded $80.00 as the violation penalty. Redspeed levies an additional charge for the processing of credit card payments for the violation penalty for which there is no statutory authorization. These facts were not disclosed to Plaintiff or Class Members.  Redspeed thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiff and Class Members in violation of O.C.G.A. §§ 16-8-3, and 16-10-23.

11

29.

Plaintiff Jonathan Dunn's "Notice of School Speed Violation" shows the following:

Notice #: 2124400458864276
PIN: 4030
View Images and submit payment at
https://secure.speedviolation.com
Amount Due: **$80.00** ($75.00 penalty, $5.00 e-processing fee)
Payment or Contest Must Be Received By: **12/27/2023**

30.

The School Zone Electronic Enforcement Statute does not authorize an automatic charge for all citations or notices of violation of an unsubstantiated electronic processing fee regardless of actual electronic processing costs.  Further, the "Notice of School Speed Violation" issued to Plaintiff misstates that the civil monetary penalty is $80.00 even though the statute only allows for a $75 civil monetary penalty.  The five dollar charge for "e-processing" is unsubstantiated for the mailing of a copy of a citation/violation to an alleged violator.

31.

Such facts, as set forth above, were not disclosed to Plaintiff and Class Members, rendering the written statements of Redspeed fraudulent and deceptive.  Redspeed has thereby fraudulently and deceptively, and without authority, collected and retained money from Plaintiff and Class Members not authorized by O.C.G.A. § 40-14-18 and in violation of O.C.G.A. §§ 16-8-3, and 16-10-23.

32.

Redspeed deceptively posed as the "City of Wrens Police Department" and affixed an image of a law enforcement badge to the violations without disclosing Redspeed's true identify

and without disclosing that a substantial portion of the solicited funds were going to a private, for-profit corporation and not to fund local law enforcement or public safety initiatives, in violation of O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clause of the Georgia Constitution.

33.

Redspeed charged and collected $5.00 from Plaintiff Jonathan Dunn as an "electronic processing fee" and an additional $4.00 for electronic processing of his credit/debit card without statutory authority and without disclosing this lack of authority or factual support for it to collect and retain any of the charges.  Redspeed did not disclose that the 33% of the $80 "Civil Monetary Penalty" it collected from Mr. Dunn under the guise of being the "City of Wrens Police Department" was money illegally being retained by Redspeed , a for-profit LLC.  Redspeed used the U.S. Mails in the execution of this fraudulent scheme in violation of  O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clause of the Georgia Constitution.

34.

Redspeed wrongfully, fraudulently and deceptively extracted $84.00 from Mr. Dunn in violation of O.C.G.A. §§ 16-8-3, 16-10-23 and 40-14-18.

35.

Under the Speed Photo Enforcement System, Redspeed determines the locations for the Speed Photo Enforcement equipment.  Upon information and belief, Redspeed does not install the SPE systems in areas with the highest number of school days or the highest number of school hour vehicle crashes.  Instead, SPE systems are installed in school zones with the highest traffic volume. Redspeed's SPE System agreements have a built-in incentive to maximize the issuance of citations while making public safety a less direct consideration.  O.C.G.A. § 40-14-18 specifically provides

that the $25 processing fee is to electronically process the civil monetary penalty. It does not

provide that the $25 processing fee is for costs to process the citation nor collect revenue. O.C.G.A.

§ 40-14-18(b)(1).

## CLASS ACTION ALLEGATIONS

36.

This action is brought by Named Plaintiff as a class action, individually and on behalf of

all prospective Class Members, under the provisions of O.C.G.A. 9-11-23.

37.

Plaintiff seeks certification of the following Class :

All Georgia residents who have been mailed a "Notice of School Speed Violation"
pursuant to the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18
by Redspeed, Georgia LLC from July 1, 2018, to the date of certification of a class.

38.

Excluded from the Class are Defendant; officers, directors and employees of Redspeed;

any entity in which Redspeed has a controlling interest, is a parent or subsidiary, or which is

controlled by Redspeed; and the affiliates, legal representatives, attorneys, heirs, predecessors,

successors, and assigns of Redspeed.

39.

Plaintiff, individually and on behalf of the Class Members, seeks a refund of the excessive

amounts charged and collected as the "electronic processing fee" or "processing fee," all funds

collected that were retained by Redspeed, all credit card processing charges collected and retained

by Redspeed, with all sums retained by Redspeed, trebled, plus exemplary damages and expenses

of litigation, including reasonable attorney fees.

40.

Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using much the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.

The identification of Class Members is readily available because Redspeed has access to the names and addresses for all Class Members to whom it has mailed a Notice of School Speed Violation. The names and addresses of the Georgia vehicle owners who have received a Notice of Violation from Redspeed can be used to provide class notice to Class Members. According to the Redspeed contracts, Redspeed provides an automated, web-based program for all valid violations that it has sent to Class Members, including image processing, mailing addresses, monies collected from each Class Member and money retained by Redspeed.

42.

*Numerosity*. The requirement of numerosity under O.C.G.A. 9-11-23(a)(1) is met because the state-wide Class is so numerous that joinder of all members would be impractical.  Redspeed mails hundreds of notices of violations weekly to registered vehicle owners in Jefferson County and other counties in Georgia.

43.

*Commonality and Predominance*. The requirements of O.C.G.A. § 9-11-23(a)(2) and (b)(3) are met because this case involves common questions of law and fact that predominate over any questions that affect only individual Class Members. Common questions of law and fact include: (1) The validity of Redspeed's form contract; (2) Whether Redspeed employees meet the commands of O.C.G.A. § 40-14-2; (3) Whether Redspeed's class-wide procedures meet the commands of O.C.G.A. § 40-14-2; (4) Whether Redspeed engaged in wrongful conduct in

15

charging, collecting and retaining unsubstantiated and excessive electronic fees from Class Members allegedly under O.C.G.A. § 40-18-14; (5) Whether Redspeed wrongfully retained over one third of penalties it collected; (6) Whether Redspeed wrongfully charged, collected and retained credit card processing fees not authorized by the statute; (7) Whether Redspeed collected processing fees in excess of any electronic processing costs; (8) Whether the fact that Redspeed charges for the entire cost of its camera systems without transferring title upon receiving full payment constitutes a forbidden gratuity; (9)  Whether Redspeed intentionally collected 33-35% and more of the civil monetary penalty in excess of any costs incurred for the SPE System; (10) Whether Redspeed's conduct was unlawful and supports an action for money had and received, and/or theft by taking; (11) Whether Redspeed fraudulently has held itself out as being various law enforcement agencies while deceptively not disclosing that the solicited penalties were going to Redspeed, a private, for-profit corporation that was retaining for itself a large portion of the collected funds; (12) Whether Redspeed is a racketeer-influenced, corrupt organization engaged in acts of mail fraud, impersonation of law enforcement and other public officers and theft by deception; (13) Whether Plaintiff and the Class Members suffered injury including a monetary loss; (14) Whether Plaintiff and Class Members are entitled to recover sums wrongfully collected and retained by Redspeed; (15) whether Plaintiff and Class Members are entitled to recover punitive damages; and (16) Whether Plaintiff and Class Members are entitled to declaratory relief.

44.

***Typicality***. The requirement of O.C.G.A. § 9-11-23(a)(3) is met because the claims of Named Plaintiff are typical of the claims of other Class Members in that Plaintiff was mailed a violation identical in form and that included a flat "Processing Fee" as part of the total civil penalty based upon the same, programmed/automated/computerized conduct of Redspeed in causing to be

mailed notices of violations that all included flat rate "Processing Fees," issuing collection letters and reporting delinquencies for failure to pay that result in a referral to the Department of Revenue. The Plaintiff and all members of the Class were injured through the same misconduct of Redspeed and assert the same claims for relief. There is no conflict between Named Plaintiff and Class Members with respect to this action, or with respect to the claims for relief herein set forth.

45.

*Adequacy*. The requirement of O.C.G.A. § 9-11-23(a)(4) is satisfied because Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Plaintiff is a member of the Class he seeks to represent. Plaintiff is committed to pursuing this matter against Redspeed on a state-wide basis to obtain relief for the Class Members. Plaintiff has no known interests that are antagonistic to or conflict with the interests of other Class Members.

46.

Counsel for Plaintiff and the proposed Class Members are competent and experienced in litigating class actions and complex litigation. Prior class action cases successfully resolved by Plaintiff's Counsel include nationwide class actions with over one hundred thousand class members and numerous class actions for environmental property damage and consumer fraud. Counsel have litigated class actions in both state and federal courts in Georgia, Florida, Pennsylvania, Rhode Island, Massachusetts and Maine. Plaintiff and his Counsel will vigorously prosecute this case and will fairly and adequately protect the Class's interests.

47.

*Superiority*. The requirements of O.C.G.A. § 9-11-23(b)(3) are satisfied because this class action is superior to other available methods for fair and efficient adjudication. Treatment as a class action will resolve common questions of law and fact and is superior to numerous individual

actions or piecemeal litigation. Without a class action, Class Members may be deterred by the cost of litigating their individual claims, and therefore would have no effective remedy in the absence of class treatment.  Plaintiff and Class Members have been harmed by Redspeed's conduct and litigating the relevant issues in a class format will reduce the possibility of repeated litigation regarding Redspeed's conduct.

48.

There are no apparent impediments at this time that would preclude class treatment. Common questions of law and fact predominate over any questions affecting individual Class Members.  Class treatment is superior to the likelihood of piecemeal litigation that would burden the courts.  Class treatment affords the Class Members an opportunity to seek relief collectively when they otherwise would be unable to expend the cost of litigation to obtain relief for Redspeed's widespread wrongful collection of funds from Class Members.

49.

This action is also properly maintained as a class action pursuant to O.C.G.A. §§ 9-11-23(b)(1) and 9-11-23(b)(2). The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying standards of conduct for Redspeed. As a class action, the issues can be resolved in a way that conserves judicial resources, parties' resources and protects the rights of all Class Members. Relief could be ordered including declaratory and injunctive relief among different courts that could result in different standards of conduct for Redspeed within Georgia. The prosecution of separate actions by Class Members would create the risk of adjudications among Class Members that would be dispositive of the interests and rights of others not parties to this action, or that would substantially impair or impede their ability to protect their interests.

50.

There are issues appropriate for certification under O.C.G.A. § 9-11-23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this case and the parties' interests, including the validity of Redspeed's contracts with the City of Wrens and other local governments, whether Redspeed engaged in wrongful conduct in charging and collecting excessive standardized fees from every Class Member; whether such conduct was unlawful under Georgia law, whether such conduct constitutes theft by taking; whether such conduct is fraudulent and deceptive;  and whether Plaintiff and Class Members are entitled to recover refunds and damages.

## COUNT I – MONEY HAD AND RECEIVED

51.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs one through fifty as if set forth herein verbatim.

52.

Redspeed entered into contracts with counties in Georgia to install, operate, monitor, prepare and mail notices of violations, collect or cause the collection of civil penalties for violations of the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18.

53.

This statute provides for a maximum electronic processing fee and specific fines that may be collected by *governmental entities* as a civil monetary penalty for excessive speed in an authorized school zone.

54.

Redspeed overcharged, collected and retained from Plaintiff and Class Members, excessive, unauthorized and illegal penalties, electronic processing fees and credit card fees that were not incurred, authorized or allowed under the School Zone Electronic Enforcement Statute.

55.

Redspeed implemented a standardized billing and collection practice that automatically added a flat rate processing fee to every violation regardless of any actual electronic processing costs incurred by Redspeed or a governmental entity for electronic processing of the civil monetary penalty.  Electronic processing fees of between $5.00 and $25.00 are excessive charges for the services rendered by Redspeed.

56.

Redspeed has no lawful claims to the "electronic processing fees" it collected from Plaintiff and Class Members.

57.

Redspeed wrongfully collected from Plaintiff and Class Members and retained for  itself more than 33% to 35% of funds that were only to be used "to fund local law enforcement or public safety initiatives," as mandated by O.C.G.A. § 40-14-18(m).  Moreover, the 33% to 35% is but an illegal gratuity as the excessive "electronic processing fee" fully compensates Redspeed for its services.

58.

Redspeed wrongfully charged Plaintiff Dunn and other Class Members and retained for itself charges for use of credit cards not authorized by law.

59.

Redspeed has been unjustly enriched at the expense of Plaintiff and Class Members.

60.

The Plaintiff and Class Members are entitled to a refund of all funds wrongfully collected and retained by Redspeed. Demand has been made for same.  Further demand would be futile.

61.

The Plaintiff and Class Members are entitled to expenses of litigation including reasonable attorney fees due to the bad faith conduct of Redspeed. O.C.G.A. § 13-6-11.

62.

Redspeed's actions showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care that would raise a presumption of conscience indifference to consequences. Redspeed is liable to the named Plaintiff and all members of the Class for exemplary damages in an amount sufficient to punish Redspeed and deter Redspeed from further like wrongful conduct.

## <u>COUNT II – GEORGIA RICO</u>

63.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs  one through fifty as if set forth herein verbatim.

64.

This Count is brought under the Georgia Racketeer Influenced and Corrupt Organizations Act. O.C.G.A. § 16-14-1, *et seq*.   This Court has jurisdiction of this claim.    The Plaintiff brings this claim on behalf of himself and all members of the Class.

65.

The conduct of Redspeed as set forth above is in violation of the Georgia Racketeer Influenced and Corrupt Organizations Act in that the Defendant has carried out a pattern of racketeering prohibited by O.C.G.A. § 16-14-3.

66.

Redspeed has engaged in a pattern of racketeering activity by inflating electronic processing fees, retaining percentages of the civil monetary penalty which it is not authorized to retain, causing notices of violations to be mailed to Plaintiff and Class Members as though Redspeed is a law enforcement official.

67.

Redspeed, under its agreement with the City of Wrens, has been engaged in this pattern of conduct since the contract was signed by the parties. Members of the proposed Class residing in other counties and cities in Georgia with Redspeed agreements have been subjected to this pattern of conduct since July 1, 2018.

68.

The Plaintiff and Class Members are the intended victims of this pattern of racketeering activity in that they have been mailed a notice of violation by Redspeed, and have been subjected to collection efforts by Redspeed for civil monetary penalties and excessive fees.

69.

The Plaintiff and Class Members were misled by Redspeed and paid penalties and fees misrepresented on notices of violations as owed to governmental agencies when, in fact, such sums were being collected and retained by Redspeed illegally.

70.

The statute provides for a maximum fee that shall not exceed $25 for the electronic processing of the *civil monetary penalty*. The statute does not expand the meaning and scope of the civil monetary penalty to include Redspeed's costs associated with preparing the notices of violations, mailing the notices and collecting the civil monetary penalty.

71.

The percentages retained by Redspeed from the statutory civil monetary penalty exceed all costs for the SPE Systems and costs associated with processing the violations.

72.

As a result of the racketeering activity, Redspeed has profited millions of dollars by collecting excessive electronic processing fees, retaining unauthorized percentages of the statutory civil monetary penalty and charging additional credit card processing fees on top of the electronic processing fees for the civil monetary penalty.

73.

Redspeed knew its representations as set forth in the violations it mailed to Plaintiff and Class Members were false and would cause Plaintiff and Class Members to pay such penalties and fees.

74.

Redspeed has attempted to collect and has collected monies from the members of the Class under false and misleading representations and omissions and through the wrongful impersonation of law enforcement officers and agencies, all in violation of O.C.G.A. §§ 16-8-3, 16-10-23 and 40-14-18(m).

75.

The theft by taking, mail fraud, and impersonation of law enforcement have been committed by using standardized methods of doing business and standardized solicitations of money from Class Members in the form of notices of school speed violations and related material.

76.

In consequence of the unlawful conduct of Redspeed, the named Plaintiff and members of the Class are entitled to damages in an amount equal to three times their actual damages, together with punitive damages and expenses of litigation, including reasonable attorney fees.

## COUNT III – FRAUD AND DECEIT

77.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs   one through fifty as if set forth herein verbatim.

78.

The Plaintiff and Class Members were misled by Redspeed and paid penalties and fees misrepresented on violations as owed to law enforcement when, in fact, such sums were being collected and retained by Redspeed illegally.  They reasonably relied upon the representations and omissions of Redspeed.

79.

The statute provides for a maximum fee that shall not exceed $25 for the electronic processing of the *civil monetary penalty*. The statute does not expand the meaning and scope of the civil monetary penalty to include Redspeed's costs associated with preparing the citation, mailing the citation and collecting the civil monetary penalty.

80.

The percentages retained by Redspeed from the statutory civil monetary penalty exceed all costs for the SPE Systems and costs associated with processing the notices of violations.

81.

Redspeed has profited fraudulently and deceptively millions of dollars by collecting excessive electronic processing fees, retaining unauthorized percentages of the statutory civil monetary penalty and charging additional credit card processing fees on top of the electronic processing fees for the civil monetary penalty.

82.

Redspeed knew its representations as set forth on the notices of violations it mailed to Plaintiff and Class Members were false and would cause Plaintiff and Class Members to pay such penalties and fees.

83.

Redspeed has fraudulently and deceptively attempted to collect and has collected monies from the Plaintiff and members of the Class under false and misleading representations and omissions and through the wrongful impersonation of law enforcement officers and agencies.

84.

In consequence of the fraudulent and deceptive conduct of Redspeed, the named Plaintiff and members of the Class are entitled to recover their general and special damages, together with punitive damages and expenses of litigation, including reasonable attorney fees.

## COUNT IV -- DECLARATORY RELIEF

85.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs one through fifty as if set forth herein verbatim.

86.

This Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief under O.C.G.A. § 9-4-1, *et seq.*

87.

Redspeed utilizes contracts that contain standard, uniform provisions in its contracts with the City of Wrens and other local governments in Georgia. These provisions include:

7.     FEES AND PAYMENT:

GOVERNING BODY shall pay for all equipment, services and maintenance based on the fee schedule in Exhibit B, Schedule 1 ("Fees").

.   .   .

10.    OWNERSHIP OF SYSTEM:

It is understood by GOVERNING BODY that the SPE System being installed by REDSPEED is, and shall remain, the sole property of REDSPEED, unless separately procured from REDSPEED through a lease or purchased transaction. The SPE Systems are provided to GOVERNING BODY only under the terms and for the term of this Agreement.

.   .   .

18.    NO AGENCY:

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under the Agreement and acts as an agent of GOVERNING BODY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the GOVERNING BODY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

Exhibit A.

## REDSPEED SCOPE OF WORK

3.REDSPEED will  install SPE Systems at several intersections, school zone areas or grade crossing approaches to be agreed upon between REDSPEED and GOVERNING BODY after completion of site analyses.  In addition to any initial locations, the parties may agree from time to time to add to the quantities and locations where SPE Systems are installed and maintained.

.   .   .

14. REDSPEED shall provide the Certified Peace Officer with access to RedCheck, for the purposes of reviewing Violations Data within five (5) days of the gathering of the Registered Vehicle Owner Information.

.   .   .

16. RedCheck shall apply an electronic signature to a Notice of Violation when authorized to do so by an approving Certified Peace Officer.

.   .   .

19. If GOVERNING BODY is unable to or does not desire to integrate REDSPEED data into its adjudication system, REDSPEED shall provide an on-line adjudication processing module, which will enable the adjudication function to review cases, related images, correspondence, and other related information required to adjudicate the disputed Notice of Violation.

.   .   .

21. If required by GOVERNING BODY, REDSPEED shall, at REDSPEED's expense, provide and train GOVERNING BODY with a local expert witness able to testify in administrative proceedings and in court on matters relating to the accuracy, technical operations, and effectiveness of the SPE System until judicial notice is taken.

.   .   .

25. REDSPEED is authorized to charge, collect and retain fees associated with the electronic processing.  Such fees shall not exceed $25.00 per violation. Such fee is paid by the violator.  GOVERNING BODY will not receive any of said fees.  GOVERNING BODY assumes no liability, responsibility, or control for said fee sought by REDSPEED.

SECTION 2.
GOVERNING BODY'S SCOPE OF WORK

.   .   .

28.    Within seven (7) business days of execution of the Agreement, GOVERNING BODY shall provide REDSPEED with the name(s), contact information, and electronic signature(s) of all Certified Peace Officers authorized by GOVERNING BODY's police department to approve and issue Notice of Violation.

.   .   .

35.    GOVERNING BODY's Certified Peace Officer(s) shall process each potential violation in accordance with State Law and/or GOVERNING BODY's Ordinances within five (5) days (excluding Saturday, Sunday and GOVERNING BODY observed holidays) of its appearance in the Law Enforcement Review Queue, using RedCheck to determine which Violations will be issued as Notices of Violation.

.   .   .

37.  Police Department shall provide signatures of all authorized police users who will review events and approve citations on forms provided by REDSPEED.

Exhibit B

SCHEDULE 1
SERVICE FEE SCHEDULE

GOVERNING BODY agrees to pay REDSPEED the Fee(s) as itemized below:

1.  Description of Pricing

Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations.  Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web-based SPE System for Certified Peace Officer review:

33% service fee for each paid violation

2.  Optional Services

License Plate Reader (LPR) module:  Additional 2% service fee for each paid violation per approach

88.

A contract that lacks material terms or that contains material provisions that are void, illegal or otherwise unenforceable is a void and unenforceable contract *in toto*.

89.

Article III, Section VI, paragraph VI(a) of the Georgia Constitution prohibits gratuities made by the State of Georgia or any Georgia governmental entities, including local governments to any private entities.

90.

Contracts that provide for gratuities flowing to private entities are void.

91.

The terms of the Redspeed contract that provide that the City of Wrens must pay Redspeed for the cost of the camera  systems, but that Redspeed would continue to own the systems even after the local government has fully paid Redspeed for the system is a gratuity from the City of Wrens to Redspeed that violates the prohibition of gratuities found in Article III, Section VI, paragraph VI(a) of the Georgia Constitution.

92.

The provisions regarding full payment of the cost of the systems, but with title to such system remaining with Redspeed, is a material provision of the contracts between Redspeed and the City of Wrens and other local governments in Georgia that renders each of these contracts void and unenforceable.  The City of Wrens and other local governments that have fully paid for their camera speed detection systems are entitled to have title to said systems conveyed to the local government.

93.

Judicial proceedings in Georgia must meet the commands of the due process clause of the Georgia Constitution, Article I, Section I, paragraph I.

94.

Judicial proceedings in the State of Georgia in which significant discretionary actions are undertaken by parties compensated in a manner contingent on the outcome of the proceeding violate the due process clause of the Georgia Constitution.

95.

The local governments of Georgia, including counties and municipalities, lack the power to outsource judicial proceedings to private, for-profit corporations compensated based upon the outcome of the proceedings.

96.

The contract between Redspeed and the City of Wrens, being in violation of Article I, Section I, paragraph I of the Georgia Constitution, is void and unenforceable.

97.

The Rules of Professional Conduct of the State Bar of Georgia prohibit employment of expert witnesses that are to be compensated contingent on the outcome of proceedings for which the expert witness services are to be provided. Rule 3.4(b)(3), Georgia Rules of Professional Conduct.

98.

The provision of the contract between Redspeed and the City of Wrens that provides that Redspeed will provide expert witnesses to testify against those charged with violation of speed laws is in violation of Rule 3.4(b)(3) of the Georgia Rules of Professional Conduct and the Due

Process Clause of the Georgia Constitution in that payment to Redspeed for such services are contingent upon the outcome of efforts to enforce alleged violations. This is a material provision of the contract, rendering the contract void and unenforceable.

99.

The right to trial by jury in both civil and criminal cases is guaranteed by the Georgia Constitution. Art. I, Sec. I, para. XI.

100.

The Georgia Constitution further provides:

No person shall be deprived to the right to prosecute or defend either in person or by an attorney that person's own cause in any of the courts of this State.

Art. I, Sec. I, para. 12.

101.

The provisions of the Redspeed form contract, in general and section 19 of such contract in particular, create a judicial system administered by a private, for-profit corporation, thereby depriving persons accused of violations of Georgia law of their constitutional right of access to the courts of Georgia.

102.

The contract between Redspeed and the City of Wrens, as well as the contracts between Redspeed and other local governments of Georgia, that contain the provisions quoted above are each void as constituting deprivations of the rights of Georgia citizens to trial by jury, the presumption of innocence, adjudication of their cause by an unbiased court and their right of access to the courts of Georgia.

103.

The presumption of innocence and the burden of proof on the proponent are guaranteed by the due process clause of the Georgia Constitution. Art. I, Sec. I, para. I.

104.

A copy of a police officer's previously provided electronic signature printed on a notice of violation does not meet the requirements of O.C.G.A. § 40-14-18(b)(2)(D) that provides:

> (D) A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

O.C.G.A. § 40-14-18(b)(2)(D).

105.

The copying of an electronic form signature, accompanied by the words *sworn to* or *affirmed* on the accusation charging Mr. Dunn with excessive speed does not meet the requirements of O.C.G.A. § 40-14-18(b)(2)(D), nor does it meet the requirements for an enforceable affidavit or affirmation as set out in decisions of the Georgia appellate courts. The accusation mailed by Redspeed to Mr. Dunn thus does not meet the dictates of Georgia law and is therefore void. The named Plaintiff and members of the proposed Class are entitled to a declaratory judgment declaring that the form statements "sworn to or affirmed" with a copy of an exemplar signature does not meet the commands of Georgia law and thus renders all accusations and all money collected under such accusations illegally obtained by Redspeed.

106.

As a matter of Georgia law, a governmental entity, including the courts of Georgia, may not extract any fees from citizens of the State of Georgia absent legislative authorization for each fee.

107.

Nowhere in O.C.G.A. § 40-14-18 is any authority for a private, for-profit corporation to extract a fee from alleged violators of speed limit statutes.

108.

A contractual provision cannot create legislative authority for a private, for-profit corporation, such as Redspeed, to extract money from alleged violators of speed limit statutes.

109.

There is no authority under O.C.G.A. § 40-14-18 or elsewhere in Georgia law authorizing a private, for-profit corporation, such as Redspeed, to collect and receive 33% of fines authorized by the statute.  Such fines can only be paid to a governmental entity and must be used for the purposes designated by O.C.G.A. § 40-14-18(m).

110.

There is no legislative authority in O.C.G.A. § 40-14-18 or elsewhere in Georgia law for a private, for-profit corporation to receive a credit card processing fee out of fines imposed and collected from alleged violators of speeding ordinances.

111.

O.C.G.A. § 40-14-18(b)(1) authorizes local government entities to collect electronic processing fees up to $25.00 per violation.  It does not authorize a private, for-profit corporation, such as Redspeed, to collect charges labeled as "electronic processing fees."

33

112.

The form contract purports to authorize Redspeed to collect "electronic processing fees" not to "exceed $25.00 per violation," as consideration to Redspeed for the contract between Redspeed and local government entities, including the City of Wrens, but does not include any method by which the amount of the alleged electronic processing fee can be calculated.  The provision of paragraph 25 quoted above is indeterminate.  The amount of compensation owed to a party to a contract is always a material term of the contract.  Contracts that do not objectively specify the consideration are materially incomplete and void as a matter of law.

113.

The Plaintiff and members of the Plaintiff Class are entitled to a declaration declaring that Redspeed is not and has not been authorized to keep for itself 33% of monies received by Redspeed from alleged violators, the two percent charge for "license reader module," the $25.00 charged for alleged "electronic processing," or a credit card processing fee.

114.

Plaintiff and Class Members have an ongoing, actionable dispute arising out of Redspeed's collection of "electronic processing fees," unauthorized charges for use of credit cards, the two percent "license reader module" fee, and collection and retention of one third of funds owed to governmental bodies and designated to fund local law enforcement or public safety initiatives. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Redspeed's contract with the City of Wrens violates Georgia law and is void and unenforceable.

WHEREFORE, having stated their Complaint, Plaintiff prays as follows:

(a)      That process issue and be served on Defendants in accordance with Georgia law;

(b)      That this Court certify the Class and appoint Plaintiff as Class representatives and appoint Plaintiff's counsel to represent the Class.

(c)      That Plaintiff and members of the Class recover damages, including actual, consequential, and nominal damages, trebled;

(d)      That Plaintiff and members of the Class recover pre-judgment interest and expenses of litigation, including reasonable attorney fees;

(e)      that the Court provide declaratory relief;

(f)      That the Plaintiff and members of the Class have trial by jury;

(g)      That the Plaintiff and members of the Class have such other and further relief as may be deemed just and appropriate by this Court.

Respectfully submitted,

**THE BELL FIRM**

*s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
PO Box 1547
Augusta, GA  30903-1547
(706) 722-2014
john@bellfirm.net; pam@bellfirm.net

**MANLY SHIPLEY, LLP**

*/s/ John B. Manly*
John B. Manly (Ga. Bar No. 194011)
James E. Shipley, Jr. (Ga. Bar No. 116508)
Post Office Box 10840
Savannah, Georgia 31412
(912) 495-5360
john@manlyshipley.com; jim@manlyshipley.com

*Attorneys for Plaintiff*

# Exhibit A



**City of Wrens**
**School Zone Safety Program**
P.O. Box 533507
Atlanta, GA 30353-3507

Notice #: 2124400458864276
PIN: 4030
View Images and submit payment at
https://secure.speedviolation.com
Amount Due: **$80.00** ($75.00 penalty, $5.00 e-processing fee)
Payment or Contest Must Be Received By: **12/27/2023**


* 2 1 2 4 4 0 0 4 5 8 8 6 4 2 7 6 *



02260 1 MB 0.558 T 9
JONATHAN VICTOR DUNN
8 CAPTAIN KIRK LN
SAVANNAH GA 31411-1404

# NOTICE OF SCHOOL SPEED VIOLATION

**OFFENSE IN VIOLATION OF O.C.G.A. Sec. 40-14-18**

A vehicle registered to you and described and pictured herein was detected and recorded by a school speed monitoring system exceeding the posted speed limit within 1,000 feet of the boundary of an elementary or secondary school in excess of 10 MPH in violation of O.C.G.A. Sec. 40-14-18. As the registered owner(s), you are liable for the violation and state-mandated penalty of $75.00 with $5.00 electronic processing fee. These recorded images constitute a prima-facie evidence of the facts contained herein.



| DATE AND TIME | LOCATION |
|---|---|
| 11/17/2023 1:37 PM | 1711 GA Highway 17 SB, Wrens |

| REGISTERED OWNER'S NAME |
|---|
| JONATHAN VICTOR DUNN |

| STREET ADDRESS |
|---|
| 8 CAPTAIN KIRK LN |

| CITY | STATE | ZIP CODE |
|---|---|---|
| SAVANNAH | GA | 31411-1404 |

| DID UNLAWFULLY | ✔ OPERATE / DRIVE |
|---|---|

| POSTED SPEED LIMIT | VEHICLE SPEED |
|---|---|
| 45 MPH | 61 MPH |

**VEHICLE INFORMATION**

| YEAR | MAKE | MODEL | STYLE | COLOR | LIC # | STATE |
|---|---|---|---|---|---|---|
| 2013 | BMW | 328I | 4 Door | | DYC871 | GA |

Certificate: I am a duly authorized certified peace officer employed by City of Wrens to enforce the school limit. Based on the inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit within 1,000 feet of the boundary of an elementary or secondary school and that such disregard or disobedience was not authorized by law.

Sworn to or Affirmed by:

Signature: _____ BADGE #: 1





Payment of the violation penalty will not result in points assessed to your driving record nor shall it be used for any insurance purposes in the provision of motor vehicle insurance coverage.

WARNING: Failure to pay the violation penalty or to contest liability in a timely manner will result in the inability to renew the motor vehicle registration and/or prohibit the title transfer of such vehicle within the State of Georgia until all applicable penalties are settled.

Para pagar su citación, envíe un cheque a la dirección indicada en el sobre de regreso. También puede revisar un video de su violación y pagar su citación, en línea ingrese el número de citación anterior https://secure.speedviolation.com Para asistencia en español, llame al 877-682-1757




* 2 1 2 4 4 0 0 4 5 8 8 6 4 2 7 6 *

| NAME: | JONATHAN VICTOR DUNN | |
|---|---|---|
| NOTICE #: | 2124400458864276 | ISSUED: 11/20/2023 |
| PAYMENT OR CONTEST MUST BE RECEIVED BY: | | 12/27/2023 |

- **DO NOT MAIL CASH**
- DO NOT fold the Notice of Violation stub
- DO NOT staple the check or money order to the Notice of Violation stub
- Make your check or money order payable to **City of Wrens School Zone Safety Program**
- Write the Notice # on the front of your payment
- Pay by phone by calling 877-682-1757 24 hours a day, 7 days a week
- Pay Online at https://secure.speedviolation.com

**City of Wrens**
**School Zone Safety Program**
P.O. Box 533507
Atlanta, GA 30353-3507

PENALTY AMOUNT DUE: **$80.00**

30353072020191212440045886427600000080007

**WARNING:** Failure to pay the civil monetary penalty or to contest liability by the "Payment or Contest Must Be Received By" date indicated on this Notice **shall waive any right to contest liability** and you shall be liable for a civil monetary penalty. Failure to respond within the time allowed will result in this jurisdiction submitting a referral to the Georgia Dept. of Revenue or a collections agency, or both. Such referral shall result in higher processing fees, the nonrenewal of the registration of such motor vehicle, or both and shall prohibit the title transfer of such vehicle within the State of Georgia.

You are the registered owner(s) of the vehicle described and pictured herein, which was detected and recorded by a school speed monitoring system exceeding the posted speed limit in excess of 10 MPH within 1,000 feet of the boundary of an elementary or secondary school in violation of the Official Code of Georgia Article 2 of Chapter 14 of Title 40. These recorded images constitute prima-facie evidence of a violation of the Georgia law prohibiting exceeding the maximum posted speed limit.

This violation carries a civil penalty of $80.00 for the first offense and $130.00 for the second and subsequent offenses. Additional processing fees up to $20.00 may apply. This violation is **not** considered a moving traffic violation for the purpose of points assessment, will not be made part of your driving record and will not be used for any insurance purposes in the provision of motor vehicle insurance coverage.

### Section I: PAY THE CIVIL PENALTY

**NOTE:** The deadline to remit payment or contest the violation is shown on the reverse side of this notice in the "Payment or Contest Must Be Received By" box on the top right corner.

**ONLINE PAYMENT:** Visit https://secure.speedviolation.com

**PAYMENT BY PHONE:** Call 877-682-1757, available 24 hours a day, 7 days a week.

**PAYMENT BY MAIL:** Mail your personal check, cashier's check or money order (payable to: City of Wrens School Zone Safety Program) in the enclosed envelope along with the remittance stub at the bottom of the reverse side of this notice. Print the Notice # on your personal check, cashier's check or money order. Payment mailing address: P.O. Box 533507, Atlanta, GA 30353-3507

Para pagar su citación, envíe un cheque a la dirección indicada en el sobre de regreso. También puede revisar un video de su violación y pagar su citación, en línea ingrese el número de citación anterior https://secure.speedviolation.com Para asistencia en español, llame al 877-682-1757

### Section II: CONTEST THE VIOLATION

You may testify under oath in open court or submit to the court a sworn notarized statement that you were not the operator of the vehicle at the time of the alleged violation. You may download the affidavit at https://secure.speedviolation.com

You may present to the court a certified copy of a police report showing that the vehicle had been reported to the police as stolen prior to the time of the alleged violation.

To request a hearing on the above referenced Notice of Violation, submit the signed and dated coupon below in the envelope provided. Your response must be received on or before the "Payment or Contest Must Be Received By" date indicated on the reverse of this Notice. You will be notified by mail of the assigned hearing date, time and location.

You may also schedule a Court Hearing by phone by calling the City of Wrens School Zone Safety Program Customer Service line at 877-682-1757

**VIEW YOUR IMAGES AND VIDEO:** You may view the images and video of this violation online at https://secure.speedviolation.com. You will need your Notice # and PIN printed on the front of this Notice.

**QUESTIONS:** If you have questions or require assistance, please contact Customer Service at 877-682-1757 between 9:00 AM and 5:00 PM EST.

Detach here and return bottom portion as a request for a Hearing before a Hearing Officer.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

I submit this form as a request to contest this Notice of Violation and acknowledge that it must be postmarked by the "Payment or Contest Must Be Received By" date to be a valid request. I understand that I must attend this hearing in person, unless represented by counsel appearing in person on my behalf. I also understand that I will be notified of the date, time and location of the hearing.



**Please sign and print name using blue or black ink.**

Signature: _____

Printed Name: _____

Phone Number: _____

# Exhibit B

From: <**confirmation@speedviolation.com**>
Date: Mon, Dec 4, 2023 at 1:37 PM
Subject: Payment Confirmation #368311
To: <**Jonathanvictordunn@gmail.com**>


Amount Paid: $84.00
Thank you for using SpeedViolation.com. Here is confirmation of your payment:

Payment is being applied to the following violations: Notice Number: 2124400458864276
License Plate: DYC871
Violation Date: 11/17/23
Respond By Date: 12/27/23
Violation Type: Speed
Amount: $80.00
ePayment Convenience Fee: $4.00
Paid: $84.00
Balance Due: $0.00
Status: Liable & Paid

Note: Please do not respond to this message.




--
Jonathan V. Dunn
8 Captain Kirk Lane
Savannah, GA 31411

Exhibit C

§ 40-14-18. Enforcement; photographically recorded images; civil..., GA ST § 40-14-18

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Code of Georgia Annotated
  Title 40. Motor Vehicles and Traffic
    Chapter 14. Use of Speed Detection and Traffic-Control Signal Monitoring Devices
      Article 2. Speed Detection Devices (Refs & Annos)

Ga. Code Ann., § 40-14-18

§ 40-14-18. Enforcement; photographically recorded images; civil penalty

Effective: July 1, 2018
Currentness

(a)(1) The speed limit within any school zone as provided for in Code Section 40-14-8 and marked pursuant to Code Section 40-14-6 may be enforced by using photographically recorded images for violations which occurred only on a school day during the time in which instructional classes are taking place and one hour before such classes are scheduled to begin and for one hour after such classes have concluded when such violations are in excess of ten miles per hour over the speed limit.

(2) Prior to the placement of a device within a school zone, each school within whose school zone such automated traffic enforcement safety device is to be placed shall first apply for and secure a permit from the Department of Transportation for the use of such automated traffic enforcement safety device. Such permit shall be awarded based upon need. The Department of Transportation shall promulgate rules and regulations for the implementation of this paragraph.

(b) For the purpose of enforcement pursuant to this Code section:

(1) The owner of a motor vehicle shall be liable for a civil monetary penalty to the governing body of the law enforcement agency provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard or disobedience was not otherwise authorized by law. The amount of such civil monetary penalty shall be $75.00 for a first violation and $125.00 for a second or any subsequent violation, in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00; provided, however, that for a period of 30 days after the first automated traffic enforcement safety device is introduced by a law enforcement agency within a school zone, the driver of a motor vehicle shall not be liable for a civil monetary penalty but shall be issued a civil warning for disregard or disobedience of the speed limit within the school zone;

(2) A law enforcement agency authorized to enforce the speed limit of a school zone, or an agent working on behalf of a law enforcement agency or governing body, shall send by first class mail addressed to the owner of the motor vehicle within 30 days after obtaining the name and address of the owner of the motor vehicle but no later than 60 days after the date of the alleged violation:

(A) A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed

applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid;

(B) An image taken from the photographically recorded images showing the vehicle involved in the infraction;

(C) A website address where photographically recorded images showing the vehicle involved in the infraction and a duplicate of the information provided for in this paragraph may be viewed;

(D) A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

(E) A statement of the inference provided by paragraph (4) of this subsection and of the means specified therein by which such inference may be rebutted;

(F) Information advising the owner of the motor vehicle of the manner in which liability as alleged in the citation may be contested through an administrative hearing; and

(G) A warning that failure to pay the civil monetary penalty or to contest liability in a timely manner as provided for in subsection (d) of this Code section shall waive any right to contest liability;

(3) Proof that a motor vehicle was operated in disregard or disobedience of the speed limit of the marked school zone shall be evidenced by photographically recorded images. A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency and stating that, based upon inspection of photographically recorded images, a motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law shall be prima-facie evidence of the facts contained therein; and

(4) Liability under this Code section shall be determined based upon a preponderance of the evidence. Prima-facie evidence that the vehicle described in the citation issued pursuant to this Code section was operated in violation of the speed limit of the school zone, together with proof that the defendant was, at the time of such violation, the registered owner of the vehicle, shall permit the trier of fact in its discretion to infer that such owner of the vehicle was the driver of the vehicle at the time of the alleged violation. Such an inference may be rebutted if the owner of the vehicle:

(A) Testifies under oath in open court or submits to the court a sworn notarized statement that he or she was not the operator of the vehicle at the time of the alleged violation;

(B) Presents to the court a certified copy of a police report showing that the vehicle had been reported to the police as stolen prior to the time of the alleged violation.

(c) A violation for which a civil warning or a civil monetary penalty is imposed pursuant to this Code section shall not be considered a moving traffic violation for the purpose of points assessment under Code Section 40-5-57. Such violation shall be deemed noncriminal, and imposition of a civil warning or civil monetary penalty pursuant to this Code section shall not be deemed a conviction and shall not be made a part of the operating record of the person upon whom such liability is imposed, nor shall it be used for any insurance purposes in the provision of motor vehicle insurance coverage.

(d) If a person issued and mailed a citation pursuant to subsection (b) of this Code section fails to pay the civil monetary penalty for the violation or has not filed a police report or notarized statement pursuant to paragraph (4) of subsection (b) of this Code section in no less than 30 nor more than 60 days after such mailing as determined and noticed by the law enforcement agency, the agent or law enforcement agency shall send to such person by first class mail a second notice of any unpaid civil monetary penalty, except in cases where there is an adjudication that no violation occurred or there is otherwise a lawful determination that no civil monetary penalty shall be imposed. The second notice shall include all information required in paragraph (2) of subsection (b) of this Code section and shall include a new date of return which shall be no less than 30 days after such mailing as determined and noticed by the law enforcement agency. If such person notified by second notice again fails to pay the civil monetary penalty or file a police report or notarized statement pursuant to paragraph (4) of subsection (b) of this Code section by the new date of return, such person shall have waived the right to contest the violation and shall be liable for the civil monetary penalty provided for under this Code section, except in cases where there is an adjudication that no violation occurred or there is otherwise a lawful determination that no civil monetary penalty shall be imposed.

(e) Notices mailed by first class mail pursuant to this Code section shall be adequate notification of the fees and penalties imposed by this Code section. No other notice shall be required for the purposes of this Code section.

(f) Any court having jurisdiction over violations of subsection (a) of this Code section shall have jurisdiction over cases arising under this subsection and shall be authorized to impose the civil monetary penalty provided by this subsection. Except as otherwise provided in this subsection, the provisions of law governing jurisdiction, procedure, defenses, adjudication, appeal, and payment and distribution of penalties otherwise applicable to violations of subsection (a) of this Code section shall apply to enforcement under this Code section except as provided in subsection (b) of this Code section; provided, however, that any appeal from superior or state court shall be by application in the same manner as that provided by Code Section 5-6-35.

(g) If a violation has not been contested and the assessed penalty has not been paid, the agent or governing body shall send to the person who is the registered owner of the motor vehicle a final notice of any unpaid civil monetary penalty authorized by this Code section, except in cases where there is an adjudication that no violation occurred or there is otherwise a lawful determination that no civil monetary penalty shall be imposed. The notice shall inform the registered owner that the agent or governing body shall send a referral to the Department of Revenue if the assessed penalty is not paid within 30 days after the final notice was mailed and such that such referral shall result in the nonrenewal of the registration of such motor vehicle and shall prohibit the title transfer of such motor vehicle within this state.

(h) The agent or governing body shall send a referral to the Department of Revenue not sooner than 30 days after the final notice required under subsection (g) was mailed if a violation of an ordinance or resolution adopted under this article has not been contested and the assessed penalty has not been paid. The referral to the Department of Revenue shall include the following:

(1) Any information known or available to the agent or governing body concerning the license plate number, year of registration, and the name of the owner of the motor vehicle;

§ 40-14-18. Enforcement; photographically recorded images; civil..., GA ST § 40-14-18

(2) The date on which the violation occurred;

(3) The date when the notice required under this Code section was mailed; and

(4) The seal, logo, emblem, or electronic seal of the governing body.

(i) If the Department of Revenue receives a referral under subsection (h) of this Code section, such referral shall be entered into the motor vehicle database within five days of receipt and the Department of Revenue shall refuse to renew the registration of the motor vehicle and shall prohibit the title transfer of such vehicle within this state unless and until the civil monetary penalty plus any late fee is paid to the governing body. The Department of Revenue shall mail a notice to the registered owner:

(1) That the registration of the vehicle involved in the violation will not be permitted to be renewed;

(2) That the title of the vehicle involved in the violation will not be permitted to be transferred in this state;

(3) That the aforementioned penalties are being imposed due to the failure to pay the civil monetary penalty and any late fee for an ordinance violation adopted under the authority of this Code section; and

(4) Of the procedure that the person may follow to remove the penalties.

(j) The Department of Revenue shall remove the penalties on a vehicle if any person presents the Department of Revenue with adequate proof that the penalty and any late fee, if applicable, has been paid.

(k) Recorded images made for purposes of this Code section shall not be a public record for purposes of Article 4 of Chapter 18 of Title 50.

(l) A civil warning or civil monetary penalty under this Code section on the owner of a motor vehicle shall not be imposed if the operator of the vehicle was arrested or issued a citation and notice to appear by a certified peace officer for the same violation.

(m) The money collected and remitted to the governing body pursuant to paragraph (1) of subsection (b) of this Code section shall only be used by such governing body to fund local law enforcement or public safety initiatives. This subsection shall not preclude the appropriation of a greater amount than collected and remitted under this subsection.

**Credits**
Laws 2018, Act 545, § 9, eff. July 1, 2018.

Ga. Code Ann., § 40-14-18, GA ST § 40-14-18

§ 40-14-18. Enforcement; photographically recorded images; civil..., GA ST § 40-14-18

The statutes and Constitution are current through legislation passed at the 2022 Regular Session of the Georgia General Assembly. Some sections may be more current, see credits for details. The statutes are subject to changes by the Georgia Code Commission.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit D

**RedSpeed®**

PROFESSIONAL SERVICES AGREEMENT

March 7, 2019

This AGREEMENT (the "Agreement") made this 1st Day of March, 2019, (herein the "Commencement Date"), between RedSpeed Georgia, LLC, a Georgia Limited Liability Company (herein "REDSPEED"), with its principal place of business at 400 Eisenhower Lane North, Lombard, IL 60148, and City of Forest Park, a political subdivision authorized and created by the State of Georgia (herein "GOVERNING BODY"), with principal offices at 745 Forest Pkwy, Forest Park, GA 30297.

WITNESSETH:

WHEREAS, REDSPEED has the exclusive knowledge, possession, and ownership of certain equipment, licenses, and processes referred to collectively as the "Speed Photo Enforcement System" (herein "SPE System"); and

WHEREAS, GOVERNING BODY desires to use the SPE System to monitor and enforce school zone speed, and may, in the future, desire to monitor and enforce red light violations or other traffic movements and to issue citations for traffic violations; and

WHEREAS, on or about May 8, 2018, the Governor of the State of Georgia signed 2017 6a. HB 978 into law, resulting in Section 40-14-18 of the Official Code of Georgia Annotated taking effect on July 1, 2018; and

WHEREAS, Section 40-14-18 of the Official Code of Georgia Annotated expressly authorizes municipalities to use traffic infraction detectors to enforce certain provisions of Section 40-14-8 of the Official Code of Georgia Annotated, subject to certain requirements; and

WHEREAS, GOVERNING BODY's City Council has adopted an ordinance, which authorizes GOVERNING BODY's Traffic Safety Camera Program ("TSCP") and provides for the implementation and operation of such program by REDSPEED, as agent of GOVERNING BODY.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, REDSPEED and GOVERNING BODY agree that the Agreement shall be as provided herein:

TERMS AND CONDITIONS

1.    DEFINITIONS:

As used in this Agreement, the following words and terms shall, unless the context otherwise requires, have the respective meanings provided below:

**"Motor Vehicle"** means any self-propelled vehicle not operated upon rails or guide-way, but not including any bicycle or electric personal assisted mobility device.

RedSpeed®

**"Notice of Violation"** means a citation or equivalent instrument issued by a competent state or municipal law enforcement agent or agency or by a court of competent jurisdiction relating to a violation documented or evidenced by SPE System or REDSPEED as an agent of such law enforcement agent, agency or court.

**"Motor Vehicle Owner"** means the person or entity identified by the Georgia Department of Motor Vehicles, or other state vehicle registration office, as the registered owner of a vehicle. Such term shall also mean a lessee of a motor vehicle pursuant to a motor vehicle lease or rental agreement.

**"Recorded Images"** means photographic, electronic, digital or video images of a Motor Vehicle recorded by a SPE System and establishing a time sequence of the Motor Vehicle entering the intersection or speed zone and its speed.

**"RedCheck"** means web-based violation processing system used by Certified Peace Officer.

**"Speed Photo Enforcement System"** (herein "SPE System") means an electronic system that captures recorded images of Motor Vehicles speeding in designated school zone and consisting of, at a minimum one radar, IR panel, and up to seven (7) individual video cameras capable of monitoring up to seven (7) lanes of enforcement.

**"Certified Peace Officer"** means an employee of GOVERNING BODY's police department who meets the qualifications of Section 40-14-1(1) of the Official Code of Georgia Annotated.

**"Unamortized Costs"** means the historical cost of a fixed asset less the total depreciation shown against that asset up to a specified date. Unamortized costs for this Agreement may include, but are not limited to, design/engineering plans, camera foundation construction and installation, restoration of camera location to its original condition and cost of equipment.

**"Violation"** means a violation of Section 40-14-8 or Section 40-14-18 of the Official Code of Georgia Annotated or a violation of GOVERNING BODY's Code of Ordinances, as may be amended from time to time.

2.   REDSPEED AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 1".

3.   GOVERNING BODY AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 2".

4.   SERVICE FEES:

The service fee schedule identified in "Exhibit B".

**RedSpeed®**

5.    TERM AND TERMINATION:

This Agreement shall be effective on the Commencement Date. The term of this Agreement shall be for sixty (60) months beginning on the first day of the month following the first issued Notice of Violation (the "Start Date") and shall be automatically extended for up to five (5) additional one (1) year periods. However, GOVERNING BODY may terminate this Agreement at the expiration of any term by providing written notice of its intent not to extend the Agreement sixty (60) days prior to the expiration of the current term.

REDSPEED's services may be terminated:

a.    By mutual written consent of the parties.

b.    For cause, by either party where the other party fails in any material way to perform its obligations under this Agreement and the defaulting party fails to cure the default within thirty (30) days after receiving written notice. The terminating party must provide written notice to the other party of its intent to terminate and state with reasonable specificity the grounds for termination.

c.    For convenience, by either party in the event that state legislation or a decision by a court of competent jurisdiction prohibits the deployment of the SPE Systems that is the subject of this Agreement, but only following the exhaustion of any legal challenges that may occur challenging such state legislation or judicial determination.  To the extent it becomes necessary, the Parties to this Agreement acknowledge that this agreement shall be tolled during the time it takes to determine legal challenges.

d.    For convenience of GOVERNING BODY. GOVERNING BODY reserves the right to terminate by giving written notice to REDSPEED sixty (60) days prior to the effective date of such termination. If GOVERNING BODY elects to terminate the agreement under this subsection during the first twelve (12) months of the initial contract term, GOVERNING BODY shall pay termination costs related to unamortized costs.

Upon termination of this Agreement, either for breach or because it has reached the end of its term or as a result of giving an early termination notice, the parties recognize that GOVERNING BODY will have to process traffic law violations that occur prior to the notice of termination of the Agreement and that REDSPEED must assist GOVERNING BODY in this regard. Accordingly, the parties shall take the following actions, and shall have the following obligations, which survive termination during the winddown period: GOVERNING BODY shall cease using the SPE System, shall return or allow REDSPEED to recover all provided equipment within a reasonable time not to exceed ninety (90) days, and shall not generate further images to be processed. Unless directed by GOVERNING BODY not to do so, REDSPEED shall continue to process all images taken by GOVERNING BODY before termination and provide all services associated with processing in accordance with this Agreement and shall be entitled to all Fees specified in

**RedSpeed®**

the Agreement as if the Agreement were still in effect. REDSPEED shall provide GOVERNING BODY with all revenues owed to GOVERNING BODY accruing prior to the date of termination and REDSPEED shall be entitled to its fees pursuant to this Agreement, from said accrued revenues provided to GOVERNING BODY.

6.   ASSIGNMENT:

Neither party may assign all or any portion of this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed. Provided, however, that GOVERNING BODY hereby acknowledges and agrees that delivery and performance of REDSPEED's rights pursuant to this Agreement shall require a significant investment by REDSPEED, and that in order to finance such investment, REDSPEED may be required to enter into certain agreements or arrangements including, but not limited to, acknowledgments and/or consents with equipment lessors, banks, financial institutions or other similar persons or entities. GOVERNING BODY hereby agrees that REDSPEED shall have the right to assign, pledge, hypothecate or otherwise transfer its rights to the equipment but not the service provided under this Agreement, to any of the aforesaid financial institutions without GOVERNING BODY's prior written approval. GOVERNING BODY further acknowledges and agrees that in the event that REDSPEED provides any such acknowledgment or consent to GOVERNING BODY for execution, and in the event that GOVERNING BODY fails to execute and deliver such acknowledgment or consent back to REDSPEED within ten (10) calendar days after its receipt of such request from REDSPEED to execute such acknowledgment or consent, GOVERNING BODY shall be deemed to have consented to and approved such acknowledgment or consent and REDSPEED is granted a limited power of attorney, coupled with an interest, to execute the acknowledgment and/or consent on behalf of GOVERNING BODY and deliver such document to its financial institution.

7.   FEES AND PAYMENT:

GOVERNING BODY shall pay for all equipment, services and maintenance based on the fee schedule indicated in Exhibit B, Schedule 1 ("Fees").

8.   COMMUNICATION OF INFORMATION:

REDSPEED agrees that all information obtained by REDSPEED through operation of the SPE System shall be made available to the GOVERNING BODY at any time during REDSPEED's normal working hours excluding trade secrets as defined by Georgia law and other information that is confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law and not reasonably necessary for the prosecution of citations or the fulfillment of GOVERNING BODY's obligation under this Agreement. REDSPEED reserves the right to charge GOVERNING BODY for sizable information requests that will incur substantial resource allocation to compile.

9.   CONFIDENTIAL INFORMATION:

No information given by REDSPEED to GOVERNING BODY will be of a confidential nature, unless specifically designated in writing as proprietary and confidential by

RedSpeed®

REDSPEED and either confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law. Nothing in this paragraph shall be construed contrary to the terms and provisions of any Georgia law governing public records or similar laws, insofar as they may be applicable. REDSPEED shall not use any information acquired by this program with respect to any violations or GOVERNING BODY's law enforcement activities for any purpose other than the program encompassed by this Agreement.

10.     OWNERSHIP OF SYSTEM:

It is understood by GOVERNING BODY that the SPE System being installed by REDSPEED is, and shall remain, the sole property of REDSPEED, unless separately procured from REDSPEED through a lease or purchase transaction. The SPE Systems are provided to GOVERNING BODY only under the terms and for the term of this Agreement.

11.     RECORDS AND AUDIT:

REDSPEED shall maintain during the term of the Agreement all books of account, reports and records in accordance with generally accepted accounting practices and standards for records directly related to this Agreement. REDSPEED agrees to make available to GOVERNING BODY's Internal Auditor, during normal business hours and in City of Forest Park, Georgia all books of account, reports and records relating to this Agreement for the duration of the Agreement and retain them for a minimum period of three (3) years beyond the last day of the Agreement term or such other period required by the Georgia public records law and Georgia public records retention schedules, whichever is longer.

12.     INDEMNIFICATION AND INSURANCE:

REDSPEED shall comply with all laws, ordinances and regulations governing the use of photo enforcement systems applicable to this Agreement and shall comply with the maintenance procedures and manufacturer recommendations for operation of SPE System equipment which affect this Agreement, and shall indemnify and save harmless the GOVERNING BODY against claims arising from the violations of the maintenance procedures and manufacturer recommendations for operation of the equipment as a result of the gross negligence, recklessness, or willful or intentional misconduct of REDSPEED, its officers and directors, agents, attorneys, and employees, but excluding any employees or agents of GOVERNING BODY.

REDSPEED agrees to protect, defend, indemnify, and hold harmless GOVERNING BODY and GOVERNING BODY's officers, employees, and agents from and against any and all losses, penalties, damages, settlements, fines, claims, costs, charges for other expenses, or liabilities of every and any kind including any award of attorney fees and any award of costs in connection with or arising from any gross negligence, intentional or reckless act or omission by REDSPEED or any of REDSPEED's officers, employees, agents, contractors, or subcontractors in performing the work agreed to or performed by REDSPEED under the terms of this Agreement. Without limiting the foregoing, any and all claims, suits or other actions relating to personal injury, death, damage to property, defects in materials or workmanship, violations of any decree of any court in connection

**RedSpeed®**

with or arising from any gross negligence, intentional or reckless act or omission by REDSPEED shall be included in this indemnity.

REDSPEED shall maintain the following minimum scope and limits of insurance:

a.   Commercial General Liability Insurance including coverage for bodily injury, property damage, premises and operations, products/completed operations, personal and advertising injury, and contractual liability with a combined single limit of $1,000,000 per occurrence. Such insurance shall name GOVERNING BODY and GOVERNING BODY's officers, employees, volunteers and elected officials as additional insured for liability arising from REDSPEED's operation.

b.   Workers' Compensation, as required by applicable state law, and Employers Liability Insurance with limits of not less than $500,000 each accident. REDSPEED shall always maintain Workers' Compensation insurance coverage in the amounts required by law, but shall not be required to provide such coverage for any actual or statutory employee of GOVERNING BODY.

c.   Comprehensive Business Automobile Liability Insurance for all owned, non-owned and hired automobiles and other vehicles used by REDSPEED with a minimum $1,000,000 per occurrence combined single limit bodily injury and property damage.

REDSPEED shall require any subcontractors doing work under this Agreement to provide and maintain the same insurance, which insurance shall also name GOVERNING BODY and GOVERNING BODY's officers, employees and elected officials as additional insureds.

Certificates showing REDSPEED is carrying the above described insurance, and evidencing the additional insured status specified above, shall be furnished to GOVERNING BODY within thirty (30) calendar days after the date on which this Agreement is made. Such certificates shall show that GOVERNING BODY shall be notified at least thirty (30) days in advance of all cancellations of such insurance policies. REDSPEED shall forthwith obtain substitute insurance in the event of a cancellation.

Inasmuch as GOVERNING BODY is a body politic and corporate, the laws from which GOVERNING BODY derives its powers, insofar as the same law regulates the objects for which, or manner in which, or the concerns under which, GOVERNING BODY may enter into this Agreement, shall be controlling and shall be incorporated by reference into this Agreement. GOVERNING BODY shall be responsible for vehicle insurance coverage on any vehicles driven by GOVERNING BODY employees. Coverage will include liability and collision damage.

REDSPEED will require all its subcontractors to provide the aforementioned coverage as well as any other coverage that REDSPEED may consider necessary, and any deficiency in the coverage or policy limits of said subcontractors shall be the sole responsibility of REDSPEED.

**RedSpeed®**

13.    STATE LAW TO APPLY:

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties waive the privilege of venue and agree that all litigation between them in the state courts shall take place in Clayton County, Georgia and that all litigation between them in the federal courts shall take place in the State of Georgia.

14.    DISPUTE RESOLUTION:

All disputes arising out of or in connection with the Agreement shall be attempted to be settled through good-faith efforts between senior management of both Parties.  Following thirty (30) days of unsuccessful negotiation, a dispute may be submitted to professionally-assisted mediation.   Before a demand for mediation may be filed by either Party, the management of both Parties shall have met at least two times in face-to-face meetings in an effort to resolve any dispute or controversy through normal business management practices.   Any mediator so designated must be acceptable to each Party.  The mediation will be conducted as specified by the mediator and agreed upon by the Parties. The Parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.  The mediation will be treated as a settlement discussion and therefore will be confidential.  The mediator may not testify for either Party in any later proceeding relating to the dispute.  Each Party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the Parties.

Failing resolution through negotiation or mediation, any remaining dispute shall be submitted to binding arbitration in accordance with the Arbitration Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association ("AAA Rules") before a single arbitrator.  The place of arbitration will be mutually agreed upon within fourteen (14) days of a decision to seek arbitration.  Limited discovery will be permitted in connection with the arbitration upon agreement of the Parties and only upon a showing of substantial need by the Party seeking discovery.

The arbitrator will have no power to award damages inconsistent with the Agreement; or punitive damages or any other damages not measured by the prevailing Party's actual damages, and the Parties expressly waive their right to obtain such damages in arbitration or in any other proceeding.  All aspects of the arbitration will be confidential.  Neither the Parties nor the arbitrator may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.

15.    AMENDMENTS TO THE AGREEMENT:

GOVERNING BODY may from time to time consider it in its best interest to change, modify or extend term, conditions or covenants of this Agreement or require changes in the scope of the Services to be performed by REDSPEED, or request REDSPEED to perform additional services regardless of and without invalidating the process that was used to procure the services enumerated under this Agreement. Any such change, addition, deletion, extension or modification, including any increase or decrease in the amount of

# RedSpeed®

REDSPEED's compensation, which are mutually agreed upon by and between GOVERNING BODY and REDSPEED, shall be incorporated in written amendments (herein called "Amendments") to this Agreement that are duly executed by both parties. Such Amendments shall not invalidate the procurement process or this Agreement nor relieve or release REDSPEED or GOVERNING BODY of any of its obligations under this Agreement unless stated therein.

16.  **EFFECT OF AMENDMENT(S) ON AGREEMENT:**

Except as expressly amended or modified by the terms of an Amendment, all terms of the Agreement shall remain in full force and effect. Unless a different meaning is specified in an Amendment, all capitalized terms used herein shall have the meaning described in the Agreement. In the event of a conflict between the terms of the Amendment and this Agreement, the Amendment shall prevail and control.

17.  **LEGAL CONSTRUCTION AND REQUIREMENTS:**

In case any one or more of the provisions contained in this Agreement shall for any reason, by a court of competent jurisdiction, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein.

18.  **NO AGENCY:**

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under this Agreement and acts an agent of GOVERNING BODY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the GOVERNING BODY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

19.  **FORCE MAJEURE:**

GOVERNING BODY and REDSPEED will be excused from the performance of their respective obligations under this Agreement when and to the extent that their performance is delayed or prevented by any circumstances beyond their control including, fire, flood, explosion, strikes or other labor disputes, act of God or public emergency, war, rioting, malicious damage, act or omission of any governmental authority, delay or failure or shortage of any type of transportation, equipment, or service from a public utility needed for their performance provided that:

the non-performing party gives the other party prompt written notice describing the particulars of the Force Majeure including, but not limited to, the nature of the

**RedSpeed®**

occurrence and its expected duration, and continues to furnish timely reports with respect thereto during the period of the Force Majeure;

the excuse of performance is of no greater scope and no longer duration than is required by the Force Majeure;

no obligations of either party that arose before the Force Majeure causing the excuse of performance are excused as a result of the Force Majeure; and,

the non-performing party uses its best efforts to remedy its inability to perform.

Notwithstanding the above, performance shall not be excused under this Section for a period in excess of two (2) months, provided that in extenuating circumstances, GOVERNING BODY may excuse performance for a longer term. Economic hardship of REDSPEED will not constitute Force Majeure. The term of the Agreement shall be extended by a period equal to that during which either party's performance is suspended under this Section.

20.  PERMITS, FEES, AND LICENSES:

REDSPEED shall, at its own expense, obtain all necessary permits and pay all licenses and fees required to comply with all local ordinances, state and federal laws, rules and regulations applicable to business to be carried out under this Agreement.

21.  NON-DISCRIMINATION:

There shall be no discrimination as to race, sex, color, creed, age, sexual orientation, disability, marital status, or national origin in the operations conducted under this Agreement.

22.  SUBCONTRACTORS:

REDSPEED must be capable of performing all the services contained within this Agreement. If REDSPEED uses a subcontractor in the performance of these services, REDSPEED shall submit complete information on any/all proposed subcontractors. The same qualifications requirements, and all other terms and conditions of the Agreement shall also apply to the subcontractor. GOVERNING BODY reserves the right to approve or disapprove of any subcontractor proposed.

REDSPEED shall ensure that all of REDSPEED's subcontractors perform in accordance with the terms and conditions of this Agreement. REDSPEED shall be fully responsible for all of REDSPEED's subcontractors' performance, and liable for any of REDSPEED's subcontractors' non-performance and all of REDSPEED's subcontractors' negligent, intentional or reckless acts and omissions. REDSPEED shall defend, counsel being subject to GOVERNING BODY's approval or disapproval, and indemnify and hold harmless GOVERNING BODY and GOVERNING BODY's officers, employees, and agents from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, by or in favor of any of REDSPEED's

**RedSpeed®**

intentional or reckless acts and omissions. REDSPEED shall defend, counsel being subject to GOVERNING BODY's approval or disapproval, and indemnify and hold harmless GOVERNING BODY and GOVERNING BODY's officers, employees, and agents from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, by or in favor of any of REDSPEED's subcontractors for payment for work performed for GOVERNING BODY by any of such subcontractors, and from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, occasioned by or arising out of any negligent, intentional or reckless act or omission by any of REDSPEED's subcontractors.

23.  **ENTIRE AGREEMENT:**

The provisions of this Agreement, including the recitals, comprise all of the terms, conditions, agreements, and representations of the parties with respect to the subject matter hereof. All representations and promises made by any party to another, whether in writing or orally, concerning the subject matter of this Agreement, are merged into this Amendment. Except as amended by an Amendment, the terms of the Agreement shall continue in full force and effect.

24.  **NOTICES:**

Any notice or demand which under the terms of this Agreement or under any statute must or may be given or made by REDSPEED or GOVERNING BODY shall be in writing and shall be given or made by personal service, first class mail, overnight delivery, or by certified or registered mail to the parties at the following respective addresses:

City of Forest Park                              RedSpeed Georgia, LLC
745 Forest Pkwy,                                400 Eisenhower Lane North
Forest Park, GA 30297                           Lombard, Illinois 60148
Attn: City Manager                              Attn: Robert Liberman, Manager

25.  **EXCLUSIVITY:**

GOVERNING BODY agrees that upon execution of this Agreement, GOVERNING BODY may not utilize another vendor, other than REDSPEED, for the same or similar services as contemplated herein, within the jurisdiction of the GOVERNING BODY without prior written consent from REDSPEED.

IN WITNESS THEREOF, the parties have duly executed this Agreement on the day and year first written above.

**City of Forest Park, Georgia**                **RedSpeed Georgia, LLC**

By: _____ 2019, July 4th             By: _____, 5/20/2019
Name  Angelyne Butler                           Robert Liberman
Title  Mayor                                     Manager

pg. 10 of 17

**RedSpeed®**

Exhibit A

<u>SECTION 1.</u>

## REDSPEED SCOPE OF WORK

1.  REDSPEED agrees to provide a turnkey solution for SPE Systems to GOVERNING BODY wherein all reasonably necessary elements required to implement and operate the solution are the responsibility of REDSPEED, except for those items identified in Section 2 titled "GOVERNING BODY Scope of Work". REDSPEED and GOVERNING BODY understand and agree that new or previously unforeseen requirements may, from time to time, be identified and that the parties shall negotiate in good faith to assign to the proper party the responsibility and cost for such items. In general, if work is to be performed by GOVERNING BODY, unless otherwise specified, GOVERNING BODY shall not charge REDSPEED for the cost. All other in-scope work, external to GOVERNING BODY, is the responsibility of REDSPEED.

2.  REDSPEED agrees to make every effort to adhere to the Project Time Line agreed upon between the parties and based on the Best and Final Offer.

3.  REDSPEED will install SPE Systems at several intersections, school zone areas or grade crossing approaches to be agreed upon between REDSPEED and GOVERNING BODY after completion of site analyses. In addition to any initial locations, the parties may agree from time to time to add to the quantities and locations where SPE Systems are installed and maintained.

4.  REDSPEED will operate each SPE System on a 24-hour basis, barring downtime for maintenance and normal servicing activities.

5.  REDSPEED agrees to provide a secure website (www.SpeedViolations.com) accessible to recipients who have received Notices of Violation by means of a Notice #, which will allow violation image and video viewing.

6.  REDSPEED shall provide technician site visits to each SPE System once per month to perform preventive maintenance checks consisting of: camera enclosure lens cleaning, camera, strobe, and controller enclosure cleaning, inspection of exposed wires, and general system inspection and maintenance.

7.  REDSPEED shall use best efforts to endeavor to repair a non-functional SPE System within forty-eight (48) business hours of determination of a malfunction.

8.  REDSPEED shall use best efforts to endeavor to repair the SPE System within one (1) business day from the time of the outage. Outages of GOVERNING BODY internet connections or infrastructure are excluded from this service level.

9.  REDSPEED will establish a demand deposit account bearing the title, "RedSpeed Georgia LLC as agent for City of Forest Park at CIBC Bank." All funds collected on behalf of GOVERNING BODY, excluding REDSPEED's monthly fees and any fees associated with electronic processing of violations, will be deposited in this account and transferred by wire

**RedSpeed®**

on or about the 15th calendar day of the month to GOVERNING BODY's primary deposit bank. GOVERNING BODY will identify the account to receive funds wired from First Midwest Bank. GOVERNING BODY shall sign a W-9 and blocked account agreement, to be completed by GOVERNING BODY, to ensure GOVERNING BODY's financial interest in said bank account is preserved.

10.    REDSPEED will design, fabricate, install, obtain permits, and maintain one speed warning sign for each monitored approach.

11.    REDSPEED or subcontractors will be responsible for any costs associated with building, construction, electrical, street use, and/or pole attachment permits.

12.    REDSPEED shall assign a project manager who will be the liaison between GOVERNING BODY and REDSPEED and will be responsible for project activities such as development of a project plan and tracking of deliverables. GOVERNING BODY shall reserve the right to request a new project manager.

13.    REDSPEED shall provide GOVERNING BODY with RedCheck, an automated web-based citation processing system that includes image processing, color printing and mailing of a Notice of Violation per chargeable event. Each Notice of Violation shall be delivered by first class mail to the Motor Vehicle Owner within the statutory period. Mailings to Motor Vehicle Owners responding to Notices of Violation identifying drivers in affidavits of non-liability or by rental car companies are also included.

14.    REDSPEED shall provide the Certified Peace Officer with access to RedCheck, for the purposes of reviewing Violations Data within five (5) days of the gathering of the Registered Vehicle Owner Information.

15.    The decision to issue Notice of Violation shall be the sole, unilateral and exclusive decision of the Certified Peace Officer consistent with State Law.

16.    RedCheck shall apply an electronic signature to a Notice of Violation when authorized to do so by an approving Certified Peace Officer.

17.    REDSPEED shall obtain in-state vehicle registration information necessary to issue citations if it is named as GOVERNING BODY's agent.

18.    REDSPEED shall seek records from out-of-state vehicle registration databases and apply records found by RedCheck to issue citations for GOVERNING BODY.

19.    If GOVERNING BODY is unable to or does not desire to integrate REDSPEED data into its adjudication system, REDSPEED shall provide an on-line adjudication processing module, which will enable the adjudication function to review cases, related images, correspondence, and other related information required to adjudicate the disputed Notice of Violation.

20.    REDSPEED shall provide to GOVERNING BODY access to RedCheck system, which provides GOVERNING BODY with ability to run and print all standard system reports.

**RedSpeed®**

Item # 2.

21.     If required by GOVERNING BODY, REDSPEED shall, at REDSPEED's expense, provide and train GOVERNING BODY with a local expert witness able to testify in administrative proceedings and in court on matters relating to the accuracy, technical operations, and effectiveness of the SPE System until judicial notice is taken.

22.     In those instances where damage to an SPE System is caused by negligence on the part of GOVERNING BODY or its authorized agent(s), REDSPEED will provide GOVERNING BODY an estimate of the cost of repair. Upon authorization to proceed with the repairs or replacement, REDSPEED shall replace or repair any damaged equipment and invoice for the pre-approved repair cost. REDSPEED shall bear the cost to replace or repair equipment damaged in all other circumstances.

23.     REDSPEED shall provide a toll-free, GOVERNING BODY-specific help line to help GOVERNING BODY resolve any problems encountered regarding its SPE System and/or citation processing. The help line shall function during normal business hours. Call Center hours for violators is Monday-Friday 9:00 AM to 5 PM EST.

24.     REDSPEED shall provide Motor Vehicle Owners with the ability to view Recorded Images of Violations involving their motor vehicles online. This online viewing system shall include a link to the REDSPEED payment website(s).

25.     REDSPEED is authorized to charge, collect and retain fees associated with the electronic processing.  Such fees shall not exceed $25.00 per violation. Such fee is paid by the violator. GOVERNING BODY will not receive any of said fees. GOVERNING BODY assumes no liability, responsibility, or control for said fee sought by REDSPEED.

26.     REDSPEED shall provide GOVERNING BODY with a warning period consistent with State law.

**RedSpeed®**

## SECTION 2.
## GOVERNING BODY'S SCOPE OF WORK

26. Within seven (7) business days of execution of the Agreement, GOVERNING BODY shall provide REDSPEED with the name and contact information for a project manager with authority to coordinate GOVERNING BODY responsibilities under the Agreement.

27. Within seven (7) business days of the Agreement, GOVERNING BODY shall provide REDSPEED with the name and contact information for an Appeals Coordinator or staff responsible for oversight of all related program requirements.

28. Within seven (7) business days of execution of the Agreement, GOVERNING BODY shall provide REDSPEED with the name(s), contact information, and electronic signature(s) of all Certified Peace Officers authorized by GOVERNING BODY's police department to approve and issue Notices of Violation.

29. GOVERNING BODY shall establish a method by which a Motor Vehicle Owner who has received a Notice of Violation may review the images and video evidencing the Violation at www.SpeedViolation.com free of charge. This may be at a publicly available terminal at GOVERNING BODY's facility or by appointment with the Police Department.

30. REDSPEED will relocate an SPE System at no cost to a new enforcement location once it has been mutually agreed upon between REDSPEED and GOVERNING BODY.

31. GOVERNING BODY shall endeavor to approve or reject REDSPEED submitted plans within seven (7) business days of receipt. REDSPEED and GOVERNING BODY will endeavor to approve the plans in a timely manner.

32. GOVERNING BODY will endeavor to issue all needed permits to REDSPEED and its subcontractors in an expedited fashion for plan approval.

33. If use of private property right of way is needed, GOVERNING BODY shall assist REDSPEED in acquiring permission to build in existing utility easements as necessary. Any additional cost for private property right of way lease/rental costs shall be borne by REDSPEED. REDSPEED reserves the right to not install on private property if the costs are unreasonable.

34. GOVERNING BODY may allow REDSPEED to build needed infrastructure in existing GOVERNING BODY owned easement as necessary and only after required permits have been approved.

35. GOVERNING BODY's Certified Peace Officer(s) shall process each potential violation in accordance with State Law and/or GOVERNING BODY's Ordinances within five (5) days (excluding Saturday, Sunday and GOVERNING BODY observed holidays) of its appearance in the Law Enforcement Review Queue, using RedCheck to determine which Violations will be issued as Notices of Violation.

**RedSpeed®**

Item # 2.

36.   Police Department workstation computer monitors for citation review and approval should provide a minimum resolution of 1280 x 1024.

37.   Police Department shall provide signatures of all authorized police users who will review events and approve citations on forms provided by REDSPEED.

38.   GOVERNING BODY shall handle inbound and outbound phone calls and correspondence from defendants who have questions about disputes, and other issues relating to citation adjudication. GOVERNING BODY may refer citizens with questions regarding REDSPEED or SPE System technology and processes to websites and/or toll-free telephone numbers provided by REDSPEED for that purpose.

39.   If remote access to a REDSPEED SPE System is blocked by GOVERNING BODY's network security infrastructure, GOVERNING BODY's Technology Consultant shall coordinate with REDSPEED to facilitate appropriate communications while maintaining required security measures.

**RedSpeed®**

Exhibit B

SCHEDULE 1
SERVICE FEE SCHEDULE

GOVERNING BODY agrees to pay REDSPEED the Fee(s) as itemized below:

1.  Description of Pricing

    Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations. Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web-based SPE System for Certified Peace Officer review:

    33% service fee for each paid violation

2.  Optional Services

    License Plate Reader (LPR) module:  Additional 2% service fee for each paid violation per approach

**RedSpeed®**

## PROFESSIONAL SERVICES AGREEMENT

May _____, 2019

This AGREEMENT (the "Agreement") made this _____ day of April, 2019, (herein the "Commencement Date"), between RedSpeed Georgia, LLC, a Georgia Limited Liability Company (herein "REDSPEED"), with its principal place of business at 400 Eisenhower Lane North, Lombard, IL 60148, and County of Henry, a political subdivision authorized and created by the State of Georgia (herein "COUNTY"), with principal offices at 140 Henry Parkway, McDonough, GA 30253.

### WITNESSETH:

WHEREAS, REDSPEED has the exclusive knowledge, possession, and ownership of certain equipment, licenses, and processes referred to collectively as the "Speed Photo Enforcement System" (herein "SPE System"); and

WHEREAS, COUNTY desires to use the SPE System to monitor and enforce school zone speed, and may, in the future, desire to monitor and enforce red light violations or other traffic movements and to issue citations for traffic violations; and

WHEREAS, on or about May 8, 2018, the Governor of the State of Georgia signed 2017 6a. HB 978 into law, resulting in Section 40-14-18 of the Official Code of Georgia Annotated taking effect on July 1, 2018; and

WHEREAS, Section 40-14-18 of the Official Code of Georgia Annotated expressly authorizes local governing bodies to use traffic infraction detectors to enforce certain provisions of Section 40-14-8 of the Official Code of Georgia Annotated, subject to certain requirements; and

WHEREAS, COUNTY COMMISSION plans to adopt an ordinance, which authorizes COUNTY's Traffic Safety Camera Program ("TSCP") and provides for the implementation and operation of such program by REDSPEED, as agent of COUNTY.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, REDSPEED and COUNTY agree that the Agreement shall be as provided herein:

### TERMS AND CONDITIONS

1.   DEFINITIONS:

As used in this Agreement, the following words and terms shall, unless the context otherwise requires, have the respective meanings provided below:

**"Motor Vehicle"** means any self-propelled vehicle not operated upon rails or guide-way, but not including any bicycle or electric personal assisted mobility device.

RedSpeed®

**"Notice of Violation"** means a citation or equivalent instrument issued by a competent state or local law enforcement agent or agency or by a court of competent jurisdiction relating to a violation documented or evidenced by SPE System or REDSPEED as an agent of such law enforcement agent, agency or court.

**"Motor Vehicle Owner"** means the person or entity identified by the Georgia Department of Motor Vehicles, or other state vehicle registration office, as the registered owner of a vehicle. Such term shall also mean a lessee of a motor vehicle pursuant to a motor vehicle lease or rental agreement.

**"Recorded Images"** means photographic, electronic, digital or video images of a Motor Vehicle recorded by a SPE System and establishing a time sequence of the Motor Vehicle entering the intersection or speed zone and its speed.

**"RedCheck"** means web-based violation processing system used by Certified Peace Officer.

**"Speed Photo Enforcement System"** (herein "SPE System") means an electronic system that captures recorded images of Motor Vehicles speeding in designated school zone and consisting of, at a minimum one radar, IR panel, and up to seven (7) individual video cameras capable of monitoring up to seven (7) lanes of enforcement.

**"Certified Peace Officer"** means an employee of COUNTY's Police department who meets the qualifications of Section 40-14-1(1) of the Official Code of Georgia Annotated.

**"Unamortized Costs"** means the historical cost of a fixed asset less the total depreciation shown against that asset up to a specified date. Unamortized costs for this Agreement may include, but are not limited to, design/engineering plans, camera foundation construction and installation, restoration of camera location to its original condition and cost of equipment.

**"Violation"** means a violation of Section 40-14-8 or Section 40-14-18 of the Official Code of Georgia Annotated or a violation of COUNTY's Code of Ordinances, as may be amended from time to time.

2.    REDSPEED AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 1".

3.    COUNTY AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 2".

5.    TERM AND TERMINATION:

# RedSpeed®

This Agreement shall be effective on the Commencement Date. The term of this Agreement shall be for sixty (60) months beginning on the first day of the month following the first issued Notice of Violation (the "Start Date") and shall be automatically extended for up to five (5) additional one (1) year periods. However, COUNTY may terminate this Agreement at the expiration of any term by providing written notice of its intent not to extend the Agreement sixty (60) days prior to the expiration of the current term.

REDSPEED's services may be terminated:

a.   By mutual written consent of the parties.

b.   For cause, by either party where the other party fails in any material way to perform its obligations under this Agreement and the defaulting party fails to cure the default within thirty (30) days after receiving written notice. The terminating party must provide written notice to the other party of its intent to terminate and state with reasonable specificity the grounds for termination.

c.   For convenience, by either party in the event that state legislation or a decision by a court of competent jurisdiction prohibits the deployment of the SPE Systems that is the subject of this Agreement, but only following the exhaustion of any legal challenges that may occur challenging such state legislation or judicial determination.  To the extent it becomes necessary, the Parties to this Agreement acknowledge that this agreement shall be tolled during the time it takes to determine legal challenges.

d.   For convenience of COUNTY. COUNTY reserves the right to terminate by giving written notice to REDSPEED sixty (60) days prior to the effective date of such termination. If COUNTY elects to terminate the agreement under this subsection during the first twelve (12) months of the initial contract term, COUNTY shall pay termination costs related to unamortized costs.

Upon termination of this Agreement, either for breach or because it has reached the end of its term or as a result of giving an early termination notice, the parties recognize that COUNTY will have to process traffic law violations that occur prior to the notice of termination of the Agreement and that REDSPEED must assist COUNTY in this regard. Accordingly, the parties shall take the following actions, and shall have the following obligations, which survive termination during the windown period: COUNTY shall cease using the SPE System, shall return or allow REDSPEED to recover all provided equipment within a reasonable time not to exceed ninety (90) days, and shall not generate further images to be processed. Unless directed by COUNTY not to do so, REDSPEED shall continue to process all images taken by COUNTY before termination and provide all services associated with processing in accordance with this Agreement and shall be entitled to all Fees specified in the Agreement as if the Agreement were still in effect. REDSPEED shall provide COUNTY with all revenues owed to COUNTY accruing prior to the date of termination and REDSPEED shall be entitled to its fees pursuant to this Agreement, from said accrued revenues provided to COUNTY.

**RedSpeed®**

6.   ASSIGNMENT:

Neither party may assign all or any portion of this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed. Provided, however, that COUNTY hereby acknowledges and agrees that delivery and performance of REDSPEED's rights pursuant to this Agreement shall require a significant investment by REDSPEED, and that in order to finance such investment, REDSPEED may be required to enter into certain agreements or arrangements including, but not limited to, acknowledgments and/or consents with equipment lessors, banks, financial institutions or other similar persons or entities. COUNTY hereby agrees that REDSPEED shall have the right to assign, pledge, hypothecate or otherwise transfer its rights to the equipment but not the service provided under this Agreement, to any of the aforesaid financial institutions without COUNTY's prior written approval. COUNTY further acknowledges and agrees that in the event that REDSPEED provides any such acknowledgment or consent to COUNTY for execution, and in the event that COUNTY fails to execute and deliver such acknowledgment or consent back to REDSPEED within ten (10) calendar days after its receipt of such request from REDSPEED to execute such acknowledgment or consent, COUNTY shall be deemed to have consented to and approved such acknowledgment or consent and REDSPEED is granted a limited power of attorney, coupled with an interest, to execute the acknowledgment and/or consent on behalf of COUNTY and deliver such document to its financial institution.

7.   FEES AND PAYMENT:

COUNTY shall pay for all equipment, services and maintenance based on the fee schedule indicated in Exhibit B, Schedule 1 ("Fees"). Fees shall only be due as a percentage of collected fines (as stated in Schedule 1).

8.   COMMUNICATION OF INFORMATION:

REDSPEED agrees that all information obtained by REDSPEED through operation of the SPE System shall be made available to the COUNTY at any time during REDSPEED's normal working hours excluding trade secrets as defined by Georgia law and other information that is confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law and not reasonably necessary for the prosecution of citations or the fulfillment of COUNTY's obligation under this Agreement. REDSPEED reserves the right to charge COUNTY for sizable information requests that will incur substantial resource allocation to compile.

9.   CONFIDENTIAL INFORMATION:

No information given by REDSPEED to COUNTY will be of a confidential nature, unless specifically designated in writing as proprietary and confidential by REDSPEED and either confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law. Nothing in this paragraph shall be construed contrary to the terms and provisions of any Georgia law governing public records or similar laws, insofar as they may be applicable. REDSPEED shall not use any information acquired by this program with respect to any

RedSpeed®

violations or COUNTY's law enforcement activities for any purpose other than the program encompassed by this Agreement.

10.   OWNERSHIP OF SYSTEM:

It is understood by COUNTY that the SPE System being installed by REDSPEED is, and shall remain, the sole property of REDSPEED, unless separately procured from REDSPEED through a lease or purchase transaction. The SPE Systems are provided to COUNTY only under the terms and for the term of this Agreement.

11.   RECORDS AND AUDIT:

REDSPEED shall maintain during the term of the Agreement all books of account, reports and records in accordance with generally accepted accounting practices and standards for records directly related to this Agreement. REDSPEED agrees to make available to COUNTY's Internal Auditor, during normal business hours and in McDonough, Georgia all books of account, reports and records relating to this Agreement for the duration of the Agreement and retain them for a minimum period of three (3) years beyond the last day of the Agreement term or such other period required by the Georgia public records law and Georgia public records retention schedules, whichever is longer.

12.   INDEMNIFICATION AND INSURANCE:

REDSPEED shall comply with all laws, ordinances and regulations governing the use of photo enforcement systems applicable to this Agreement and shall comply with the maintenance procedures and manufacturer recommendations for operation of SPE System equipment which affect this Agreement, and shall indemnify and save harmless the COUNTY against claims arising from the violations of the maintenance procedures and manufacturer recommendations for operation of the equipment as a result of the gross negligence, recklessness, or willful or intentional misconduct of REDSPEED, its officers and directors, agents, attorneys, and employees, but excluding any employees or agents of COUNTY.

REDSPEED agrees to protect, defend, indemnify, and hold harmless COUNTY and COUNTY's officers, employees, and agents from and against any and all losses, penalties, damages, settlements, fines, claims, costs, charges for other expenses, or liabilities of every and any kind including any award of attorney fees and any award of costs in connection with or arising from any gross negligence, intentional or reckless act or omission by REDSPEED or any of REDSPEED's officers, employees, agents, contractors, or subcontractors in performing the work agreed to or performed by REDSPEED under the terms of this Agreement. Without limiting the foregoing, any and all claims, suits or other actions relating to personal injury, death, damage to property, defects in materials or workmanship, violations of any decree of any court in connection with or arising from any gross negligence, intentional or reckless act or omission by REDSPEED shall be included in this indemnity.

REDSPEED shall maintain the following minimum scope and limits of insurance:

RedSpeed®

    a.    Commercial General Liability Insurance including coverage for bodily injury, property damage, premises and operations, products/completed operations, personal and advertising injury, and contractual liability with a combined single limit of $1,000,000 per occurrence. Such insurance shall name COUNTY and COUNTY's officers, employees, volunteers and elected officials as additional insured for liability arising from REDSPEED's operation.

    b.    Workers' Compensation, as required by applicable state law, and Employers Liability Insurance with limits of not less than $500,000 each accident. REDSPEED shall always maintain Workers' Compensation insurance coverage in the amounts required by law, but shall not be required to provide such coverage for any actual or statutory employee of COUNTY.

    c.    Comprehensive Business Automobile Liability Insurance for all owned, non-owned and hired automobiles and other vehicles used by REDSPEED with a minimum $1,000,000 per occurrence combined single limit bodily injury and property damage.

REDSPEED shall require any subcontractors doing work under this Agreement to provide and maintain the same insurance, which insurance shall also name COUNTY and COUNTY's officers, employees and elected officials as additional insureds.

Certificates showing REDSPEED is carrying the above described insurance, and evidencing the additional insured status specified above, shall be furnished to COUNTY within thirty (30) calendar days after the date on which this Agreement is made. Such certificates shall show that COUNTY shall be notified at least thirty (30) days in advance of all cancellations of such insurance policies. REDSPEED shall forthwith obtain substitute insurance in the event of a cancellation.

Inasmuch as COUNTY is a body politic and corporate, the laws from which COUNTY derives its powers, insofar as the same law regulates the objects for which, or manner in which, or the concerns under which, COUNTY may enter into this Agreement, shall be controlling and shall be incorporated by reference into this Agreement. COUNTY shall be responsible for vehicle insurance coverage on any vehicles driven by COUNTY employees. Coverage will include liability and collision damage.

REDSPEED will require all its subcontractors to provide the aforementioned coverage as well as any other coverage that REDSPEED may consider necessary, and any deficiency in the coverage or policy limits of said subcontractors shall be the sole responsibility of REDSPEED.

13.    STATE LAW TO APPLY:

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties waive the privilege of venue and agree that all litigation between them in the state courts shall take place in Henry County, Georgia and that all litigation between them in the federal courts shall take place in the State of Georgia.

**RedSpeed®**

14.     DISPUTE RESOLUTION:

All disputes arising out of or in connection with the Agreement shall be attempted to be settled through good-faith efforts between senior management of both Parties. Following thirty (30) days of unsuccessful negotiation, a dispute may be submitted to professionally-assisted mediation. Before a demand for mediation may be filed by either Party, the management of both Parties shall have met at least two times in face-to-face meetings in an effort to resolve any dispute or controversy through normal business management practices. Any mediator so designated must be acceptable to each Party. The mediation will be conducted as specified by the mediator and agreed upon by the Parties. The Parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute. The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either Party in any later proceeding relating to the dispute. Each Party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the Parties.

Failing resolution through negotiation or mediation, any remaining dispute shall be submitted to binding arbitration in accordance with the Arbitration Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association ("AAA Rules") before a single arbitrator. The place of arbitration will be mutually agreed upon within fourteen (14) days of a decision to seek arbitration. Limited discovery will be permitted in connection with the arbitration upon agreement of the Parties and only upon a showing of substantial need by the Party seeking discovery.

The arbitrator will have no power to award damages inconsistent with the Agreement; or punitive damages or any other damages not measured by the prevailing Party's actual damages, and the Parties expressly waive their right to obtain such damages in arbitration or in any other proceeding. All aspects of the arbitration will be confidential. Neither the Parties nor the arbitrator may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.

15.     AMENDMENTS TO THE AGREEMENT:

COUNTY may from time to time consider it in its best interest to change, modify or extend term, conditions or covenants of this Agreement or require changes in the scope of the Services to be performed by REDSPEED, or request REDSPEED to perform additional services regardless of and without invalidating the process that was used to procure the services enumerated under this Agreement. Any such change, addition, deletion, extension or modification, including any increase or decrease in the amount of REDSPEED's compensation, which are mutually agreed upon by and between COUNTY and REDSPEED, shall be incorporated in written amendments (herein called "Amendments") to this Agreement that are duly executed by both parties. Such Amendments shall not invalidate the procurement process or this Agreement nor relieve or release REDSPEED or COUNTY of any of its obligations under this Agreement unless stated therein.

16.     EFFECT OF AMENDMENT(S) ON AGREEMENT:

RedSpeed®

Except as expressly amended or modified by the terms of an Amendment, all terms of the Agreement shall remain in full force and effect. Unless a different meaning is specified in an Amendment, all capitalized terms used herein shall have the meaning described in the Agreement. In the event of a conflict between the terms of the Amendment and this Agreement, the Amendment shall prevail and control.

17. LEGAL CONSTRUCTION AND REQUIREMENTS:

In case any one or more of the provisions contained in this Agreement shall for any reason, by a court of competent jurisdiction, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein.

18. NO AGENCY:

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under this Agreement and acts an agent of COUNTY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the COUNTY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

19. FORCE MAJEURE:

COUNTY and REDSPEED will be excused from the performance of their respective obligations under this Agreement when and to the extent that their performance is delayed or prevented by any circumstances beyond their control including, fire, flood, explosion, strikes or other labor disputes, act of God or public emergency, war, rioting, malicious damage, act or omission of any governmental authority, delay or failure or shortage of any type of transportation, equipment, or service from a public utility needed for their performance provided that:

the non-performing party gives the other party prompt written notice describing the particulars of the Force Majeure including, but not limited to, the nature of the occurrence and its expected duration, and continues to furnish timely reports with respect thereto during the period of the Force Majeure;

the excuse of performance is of no greater scope and no longer duration than is required by the Force Majeure;

no obligations of either party that arose before the Force Majeure causing the excuse of performance are excused as a result of the Force Majeure; and,

the non-performing party uses its best efforts to remedy its inability to perform.

**RedSpeed®**

Notwithstanding the above, performance shall not be excused under this Section for a period in excess of two (2) months, provided that in extenuating circumstances, COUNTY may excuse performance for a longer term. Economic hardship of REDSPEED will not constitute Force Majeure. The term of the Agreement shall be extended by a period equal to that during which either party's performance is suspended under this Section.

20.  **PERMITS, FEES, AND LICENSES:**

REDSPEED shall, at its own expense, obtain all necessary permits and pay all licenses and fees required to comply with all local ordinances, state and federal laws, rules and regulations applicable to business to be carried out under this Agreement.

21.  **NON-DISCRIMINATION:**

There shall be no discrimination as to race, sex, color, creed, age, sexual orientation, disability, marital status, or national origin in the operations conducted under this Agreement.

22.  **SUBCONTRACTORS:**

REDSPEED must be capable of performing all the services contained within this Agreement. If REDSPEED uses a subcontractor in the performance of these services, REDSPEED shall submit complete information on any/all proposed subcontractors. The same qualifications requirements, and all other terms and conditions of the Agreement shall also apply to the subcontractor. COUNTY reserves the right to approve or disapprove of any subcontractor proposed.

REDSPEED shall ensure that all of REDSPEED's subcontractors perform in accordance with the terms and conditions of this Agreement. REDSPEED shall be fully responsible for all of REDSPEED's subcontractors' performance, and liable for any of REDSPEED's subcontractors' non-performance and all of REDSPEED's subcontractors' negligent, intentional or reckless acts and omissions. REDSPEED shall defend, counsel being subject to COUNTY's approval or disapproval, and indemnify and hold harmless COUNTY and COUNTY's officers, employees, and agents from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, by or in favor of any of REDSPEED's subcontractors for payment for work performed for COUNTY by any of such subcontractors, and from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, occasioned by or arising out of any negligent, intentional or reckless act or omission by any of REDSPEED's subcontractors.

23.  **ENTIRE AGREEMENT:**

The provisions of this Agreement, including the recitals, comprise all of the terms, conditions, agreements, and representations of the parties with respect to the subject matter hereof. All representations and promises made by any party to another, whether in writing or orally, concerning the subject matter of this Agreement, are merged into this

RedSpeed®

Amendment. Except as amended by an Amendment, the terms of the Agreement shall continue in full force and effect.

24. NOTICES:

Any notice or demand which under the terms of this Agreement or under any statute must or may be given or made by REDSPEED or COUNTY shall be in writing and shall be given or made by personal service, first class mail, overnight delivery, or by certified or registered mail to the parties at the following respective addresses:

Henry County
Attn: County Manager
140 Henry Parkway
McDonough, GA 30253

RedSpeed Georgia, LLC
400 Eisenhower Lane North
Lombard, Illinois 60148
Attn: Robert Liberman, Manager

25. EXCLUSIVITY:

COUNTY agrees that upon execution of this Agreement, COUNTY may not utilize another vendor, other than REDSPEED, for the same or similar services as contemplated herein, within the jurisdiction of the COUNTY without prior written consent from REDSPEED.

IN WITNESS THEREOF, the parties have duly executed this Agreement on the day and year first written above.

**Henry County, Georgia**

By:_____,____/___/_____
   _____

Attest:_____,____/___/_____
   _____

**RedSpeed Georgia, LLC**

By:_____,____/___/_____
Robert Liberman
Manager

**RedSpeed®**

Exhibit A
## SECTION 1.

### REDSPEED SCOPE OF WORK

1. REDSPEED agrees to provide a turnkey solution for SPE Systems to COUNTY wherein all reasonably necessary elements required to implement and operate the solution are the responsibility of REDSPEED, except for those items identified in Section 2 titled "COUNTY Scope of Work". REDSPEED and COUNTY understand and agree that new or previously unforeseen requirements may, from time to time, be identified and that the parties shall negotiate in good faith to assign to the proper party the responsibility and cost for such items. In general, if work is to be performed by COUNTY, unless otherwise specified, COUNTY shall not charge REDSPEED for the cost. All other in-scope work, external to COUNTY, is the responsibility of REDSPEED.

2. REDSPEED agrees to make every effort to adhere to the Project Time Line agreed upon between the parties and based on the Best and Final Offer.

3. REDSPEED will install SPE Systems at several intersections, school zone areas or grade crossing approaches to be agreed upon between REDSPEED and COUNTY after completion of site analyses. In addition to any initial locations, the parties may agree from time to time to add to the quantities and locations where SPE Systems are installed and maintained.

4. REDSPEED will operate each SPE System on a 24-hour basis, barring downtime for maintenance and normal servicing activities.

5. REDSPEED agrees to provide a secure website (www.SpeedViolations.com) accessible to recipients who have received Notices of Violation by means of a Notice #, which will allow violation image and video viewing.

6. REDSPEED shall provide technician site visits to each SPE System once per month to perform preventive maintenance checks consisting of: camera enclosure lens cleaning, camera, strobe, and controller enclosure cleaning, inspection of exposed wires, and general system inspection and maintenance, calibration, etc.

7. REDSPEED shall use best efforts to endeavor to repair a non-functional SPE System within forty-eight (48) business hours of determination of a malfunction.

8. REDSPEED shall use best efforts to endeavor to repair the SPE System within one (1) business day from the time of the outage. Outages of COUNTY internet connections or infrastructure are excluded from this service level.

9. REDSPEED will establish a demand deposit account bearing the title, "RedSpeed Georgia LLC as agent for Henry County at CIBC Bank." All funds collected on behalf of COUNTY, excluding REDSPEED's monthly fees and any fees associated with electronic processing of violations, will be deposited in this account and transferred by wire on or about the 15th calendar day of the month to COUNTY's primary deposit bank. COUNTY

**RedSpeed®**

will identify the account to receive funds wired from First Midwest Bank. COUNTY shall sign a W-9 and blocked account agreement, to be completed by COUNTY, to ensure COUNTY's financial interest in said bank account is preserved.

10. REDSPEED will design, fabricate, install, obtain permits, and maintain one speed warning sign for each monitored approach.

11. REDSPEED or subcontractors will be responsible for any costs associated with building, construction, electrical, street use, and/or pole attachment permits.

12. REDSPEED shall assign a project manager who will be the liaison between COUNTY and REDSPEED and will be responsible for project activities such as development of a project plan and tracking of deliverables. COUNTY shall reserve the right to request a new project manager.

13. REDSPEED shall provide COUNTY with RedCheck, an automated web-based citation processing system that includes image processing, color printing and mailing of a Notice of Violation per chargeable event. Each Notice of Violation shall be delivered by first class mail to the Motor Vehicle Owner within the statutory period. Mailings to Motor Vehicle Owners responding to Notices of Violation identifying drivers in affidavits of non-liability or by rental car companies are also included.

14. REDSPEED shall provide the Certified Peace Officer with access to RedCheck, for the purposes of reviewing Violations Data within five (5) days of the gathering of the Registered Vehicle Owner Information.

15. The decision to issue Notice of Violation shall be the sole, unilateral and exclusive decision of the Certified Peace Officer consistent with State Law.

16. RedCheck shall apply an electronic signature to a Notice of Violation when authorized to do so by an approving Certified Peace Officer.

17. REDSPEED shall obtain in-state vehicle registration information necessary to issue citations if it is named as COUNTY's agent.

18. REDSPEED shall seek records from out-of-state vehicle registration databases and apply records found by RedCheck to issue citations for COUNTY.

19. If COUNTY is unable to or does not desire to integrate REDSPEED data into its adjudication system, REDSPEED shall provide an on-line adjudication processing module, which will enable the adjudication function to review cases, related images, correspondence, and other related information required to adjudicate the disputed Notice of Violation.

20. REDSPEED shall provide to COUNTY access to RedCheck system, which provides COUNTY with ability to run and print all standard system reports.

**RedSpeed®**

21.   If required by COUNTY, REDSPEED shall, at REDSPEED's expense, provide and train COUNTY with a local expert witness able to testify in administrative proceedings and in court on matters relating to the accuracy, technical operations, and effectiveness of the SPE System until judicial notice is taken.

22.   In those instances where damage to an SPE System is caused by negligence on the part of COUNTY or its authorized agent(s), REDSPEED will provide COUNTY an estimate of the cost of repair. Upon authorization to proceed with the repairs or replacement, REDSPEED shall replace or repair any damaged equipment and invoice for the pre-approved repair cost. REDSPEED shall bear the cost to replace or repair equipment damaged in all other circumstances.

23.   REDSPEED shall provide a toll-free, COUNTY-specific help line to help COUNTY resolve any problems encountered regarding its SPE System and/or citation processing. The help line shall function during normal business hours. Call Center hours for violators is Monday-Friday 9:00 AM to 5 PM EST.

24.   REDSPEED shall provide Motor Vehicle Owners with the ability to view Recorded Images of Violations involving their motor vehicles online. This online viewing system shall include a link to the REDSPEED payment website(s).

25.   REDSPEED is authorized to charge, collect and retain fees associated with the electronic processing.  Such fees shall not exceed $25.00 per violation. Such fee is paid by the violator. COUNTY will not receive any of said fees. COUNTY assumes no liability, responsibility, or control for said fee sought by REDSPEED.

26.   REDSPEED shall provide COUNTY with a warning period consistent with state law.

RedSpeed®

## SECTION 2.
## COUNTY'S SCOPE OF WORK

26. Within seven (7) business days of execution of the Agreement, COUNTY shall provide REDSPEED with the name and contact information for a project manager with authority to coordinate COUNTY responsibilities under the Agreement.

27. Within seven (7) business days of the Agreement, COUNTY shall provide REDSPEED with the name and contact information for an Appeals Coordinator or staff responsible for oversight of all related program requirements.

28. Within seven (7) business days of execution of the Agreement, COUNTY shall provide REDSPEED with the name(s), contact information, and electronic signature(s) of all Certified Peace Officers authorized by COUNTY's Police department to approve and issue Notices of Violation.

29. REDSPEED will relocate an SPE System at no cost to a new enforcement location once it has been mutually agreed upon between REDSPEED and COUNTY.

30. COUNTY shall endeavor to approve or reject REDSPEED submitted plans within seven (7) business days of receipt. REDSPEED and COUNTY will endeavor to approve the plans in a timely manner.

31. COUNTY will endeavor to issue all needed permits to REDSPEED and its subcontractors in an expedited fashion for plan approval.

32. If use of private property right of way is needed, COUNTY shall assist REDSPEED in acquiring permission to build in existing utility easements as necessary. Any additional cost for private property right of way lease/rental costs shall be borne by REDSPEED. REDSPEED reserves the right to not install on private property if the costs are unreasonable.

33. COUNTY may allow REDSPEED to build needed infrastructure in existing COUNTY owned easement as necessary and only after required permits have been approved.

34. COUNTY's Certified Peace Officer(s) shall process each potential violation in accordance with State Law and/or COUNTY's Ordinances within five (5) days (excluding Saturday, Sunday and COUNTY observed holidays) of its appearance in the Law Enforcement Review Queue, using RedCheck to determine which Violations will be issued as Notices of Violation.

35. Police Department workstation computer monitors for citation review and approval should provide a minimum resolution of 1280 x 1024.

36. Police Department shall provide signatures of all authorized Police department users who will review events and approve citations on forms provided by REDSPEED.

**RedSpeed®**

37.     COUNTY shall handle inbound and outbound phone calls and correspondence from defendants who have questions about disputes, and other issues relating to citation adjudication. COUNTY may refer citizens with questions regarding REDSPEED or SPE System technology and processes to websites and/or toll-free telephone numbers provided by REDSPEED for that purpose.

38.     If remote access to a REDSPEED SPE System is blocked by COUNTY's network security infrastructure, COUNTY's Technology Consultant shall coordinate with REDSPEED to facilitate appropriate communications while maintaining required security measures.

**RedSpeed®**

**Exhibit B**

**SCHEDULE 1**
**SERVICE FEE SCHEDULE**

COUNTY agrees to pay REDSPEED the Fee(s) as itemized below:

1.  Description of Pricing

    Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations. Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web-based SPE System for Certified Peace Officer review:

    33% service fee for each paid violation

2.  Optional Services

    License Plate Reader (LPR) module:  Additional 2% service fee for each paid violation per approach

RedSpeed®

## PROFESSIONAL SERVICES AGREEMENT

April 30, 2019

This AGREEMENT (the "Agreement") made this 1st day of May, 2019, (herein the "Commencement Date"), between RedSpeed Georgia, LLC, a Georgia Limited Liability Company (herein "REDSPEED"), with its principal place of business at 400 Eisenhower Lane North, Lombard, IL 60148, and City of Milledgeville, a political subdivision authorized and created by the State of Georgia (herein "GOVERNING BODY"), with principal offices at 119 E Hancock St, Milledgeville, GA 31061.

### WITNESSETH:

WHEREAS, REDSPEED has the exclusive knowledge, possession, and ownership of certain equipment, licenses, and processes referred to collectively as the "Speed Photo Enforcement System" (herein "SPE System"); and

WHEREAS, GOVERNING BODY desires to use the SPE System to monitor and enforce school zone speed, and may, in the future, desire to monitor and enforce red light violations or other traffic movements and to issue citations for traffic violations; and

WHEREAS, on or about May 8, 2018, the Governor of the State of Georgia signed 2017 6a. HB 978 into law, resulting in Section 40-14-18 of the Official Code of Georgia Annotated taking effect on July 1, 2018; and

WHEREAS, Section 40-14-18 of the Official Code of Georgia Annotated expressly authorizes municipalities to use traffic infraction detectors to enforce certain provisions of Section 40-14-8 of the Official Code of Georgia Annotated, subject to certain requirements; and

WHEREAS, GOVERNING BODY's City Council has adopted an ordinance, which authorizes GOVERNING BODY's Traffic Safety Camera Program ("TSCP") and provides for the implementation and operation of such program by REDSPEED, as agent of GOVERNING BODY.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, REDSPEED and GOVERNING BODY agree that the Agreement shall be as provided herein:

### TERMS AND CONDITIONS

1.    DEFINITIONS:

As used in this Agreement, the following words and terms shall, unless the context otherwise requires, have the respective meanings provided below:

RedSpeed®

"**Motor Vehicle**" means any self-propelled vehicle not operated upon rails or guide-way, but not including any bicycle or electric personal assisted mobility device.

"**Notice of Violation**" means a citation or equivalent instrument issued by a competent state or municipal law enforcement agent or agency or by a court of competent jurisdiction relating to a violation documented or evidenced by SPE System or REDSPEED as an agent of such law enforcement agent, agency or court.

"**Motor Vehicle Owner**" means the person or entity identified by the Georgia Department of Motor Vehicles, or other state vehicle registration office, as the registered owner of a vehicle. Such term shall also mean a lessee of a motor vehicle pursuant to a motor vehicle lease or rental agreement.

"**Recorded Images**" means photographic, electronic, digital or video images of a Motor Vehicle recorded by a SPE System and establishing a time sequence of the Motor Vehicle entering the intersection or speed zone and its speed.

"**RedCheck**" means web-based violation processing system used by Certified Peace Officer.

"**Speed Photo Enforcement System**" (herein "SPE System") means an electronic system that captures recorded images of Motor Vehicles speeding in designated school zone and consisting of, at a minimum one radar, IR panel, and up to seven (7) individual video cameras capable of monitoring up to seven (7) lanes of enforcement.

"**Certified Peace Officer**" means an employee of GOVERNING BODY's police department who meets the qualifications of Section 40-14-1(1) of the Official Code of Georgia Annotated.

"**Unamortized Costs**" means the historical cost of a fixed asset less the total depreciation shown against that asset up to a specified date. Unamortized costs for this Agreement may include, but are not limited to, design/engineering plans, camera foundation construction and installation, restoration of camera location to its original condition and cost of equipment.

"**Violation**" means a violation of Section 40-14-8 or Section 40-14-18 of the Official Code of Georgia Annotated or a violation of GOVERNING BODY's Code of Ordinances, as may be amended from time to time.

2.    REDSPEED AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 1".

3.    GOVERNING BODY AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 2".

# RedSpeed®

4.    SERVICE FEES:

The service fee schedule identified in "Exhibit B".

5.    TERM AND TERMINATION:

This Agreement shall be effective on the Commencement Date. The term of this Agreement shall be for sixty (60) months beginning on the first day of the month following the first issued Notice of Violation (the "Start Date") and shall be automatically extended for up to five (5) additional one (1) year periods. However, GOVERNING BODY may terminate this Agreement at the expiration of any term by providing written notice of its intent not to extend the Agreement sixty (60) days prior to the expiration of the current term.

REDSPEED's services may be terminated:

a.    By mutual written consent of the parties.

b.    For cause, by either party where the other party fails in any material way to perform its obligations under this Agreement and the defaulting party fails to cure the default within thirty (30) days after receiving written notice. The terminating party must provide written notice to the other party of its intent to terminate and state with reasonable specificity the grounds for termination.

c.    For convenience, by either party in the event that state legislation or a decision by a court of competent jurisdiction prohibits the deployment of the SPE Systems that is the subject of this Agreement, but only following the exhaustion of any legal challenges that may occur challenging such state legislation or judicial determination. To the extent it becomes necessary, the Parties to this Agreement acknowledge that this agreement shall be tolled during the time it takes to determine legal challenges.

d.    For convenience of GOVERNING BODY. GOVERNING BODY reserves the right to terminate by giving written notice to REDSPEED sixty (60) days prior to the effective date of such termination. If GOVERNING BODY elects to terminate the agreement under this subsection during the first twelve (12) months of the initial contract term, GOVERNING BODY shall pay termination costs related to unamortized costs.

Upon termination of this Agreement, either for breach or because it has reached the end of its term or as a result of giving an early termination notice, the parties recognize that GOVERNING BODY will have to process traffic law violations that occur prior to the notice of termination of the Agreement and that REDSPEED must assist GOVERNING BODY in this regard. Accordingly, the parties shall take the following actions, and shall have the following obligations, which survive termination during the winddown period: GOVERNING BODY shall cease using the SPE System, shall return or allow REDSPEED to recover all provided equipment within a reasonable time not to exceed ninety (90) days, and shall not generate further images to be processed. Unless directed

## RedSpeed®

by GOVERNING BODY not to do so, REDSPEED shall continue to process all images taken by GOVERNING BODY before termination and provide all services associated with processing in accordance with this Agreement and shall be entitled to all Fees specified in the Agreement as if the Agreement were still in effect. REDSPEED shall provide GOVERNING BODY with all revenues owed to GOVERNING BODY accruing prior to the date of termination and REDSPEED shall be entitled to its fees pursuant to this Agreement, from said accrued revenues provided to GOVERNING BODY.

6.  ASSIGNMENT:

Neither party may assign all or any portion of this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed. Provided, however, that GOVERNING BODY hereby acknowledges and agrees that delivery and performance of REDSPEED's rights pursuant to this Agreement shall require a significant investment by REDSPEED, and that in order to finance such investment, REDSPEED may be required to enter into certain agreements or arrangements including, but not limited to, acknowledgments and/or consents with equipment lessors, banks, financial institutions or other similar persons or entities. GOVERNING BODY hereby agrees that REDSPEED shall have the right to assign, pledge, hypothecate or otherwise transfer its rights to the equipment but not the service provided under this Agreement, to any of the aforesaid financial institutions without GOVERNING BODY's prior written approval. GOVERNING BODY further acknowledges and agrees that in the event that REDSPEED provides any such acknowledgment or consent to GOVERNING BODY for execution, and in the event that GOVERNING BODY fails to execute and deliver such acknowledgment or consent back to REDSPEED within ten (10) calendar days after its receipt of such request from REDSPEED to execute such acknowledgment or consent, GOVERNING BODY shall be deemed to have consented to and approved such acknowledgment or consent and REDSPEED is granted a limited power of attorney, coupled with an interest, to execute the acknowledgment and/or consent on behalf of GOVERNING BODY and deliver such document to its financial institution.

7.  FEES AND PAYMENT:

GOVERNING BODY shall pay for all equipment, services and maintenance based on the fee schedule indicated in Exhibit B, Schedule 1 ("Fees").

8.  COMMUNICATION OF INFORMATION:

REDSPEED agrees that all information obtained by REDSPEED through operation of the SPE System shall be made available to the GOVERNING BODY at any time during REDSPEED's normal working hours excluding trade secrets as defined by Georgia law and other information that is confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law and not reasonably necessary for the prosecution of citations or the fulfillment of GOVERNING BODY's obligation under this Agreement. REDSPEED reserves the right to charge GOVERNING BODY for sizable information requests that will incur substantial resource allocation to compile.

## RedSpeed®

9.   CONFIDENTIAL INFORMATION:

No information given by REDSPEED to GOVERNING BODY will be of a confidential
nature, unless specifically designated in writing as proprietary and confidential by
REDSPEED and either confidential pursuant to Georgia law or exempt from disclosure
pursuant to Georgia law. Nothing in this paragraph shall be construed contrary to the
terms and provisions of any Georgia law governing public records or similar laws, insofar
as they may be applicable. REDSPEED shall not use any information acquired by this
program with respect to any violations or GOVERNING BODY's law enforcement
activities for any purpose other than the program encompassed by this Agreement.

10.   OWNERSHIP OF SYSTEM:

It is understood by GOVERNING BODY that the SPE System being installed by
REDSPEED is, and shall remain, the sole property of REDSPEED, unless separately
procured from REDSPEED through a lease or purchase transaction. The SPE Systems are
provided to GOVERNING BODY only under the terms and for the term of this
Agreement.

11.   RECORDS AND AUDIT:

REDSPEED shall maintain during the term of the Agreement all books of account,
reports and records in accordance with generally accepted accounting practices and
standards for records directly related to this Agreement. REDSPEED agrees to make
available to GOVERNING BODY's Internal Auditor, during normal business hours and
in City of Milledgeville, Georgia all books of account, reports and records relating to this
Agreement for the duration of the Agreement and retain them for a minimum period of
three (3) years beyond the last day of the Agreement term or such other period required
by the Georgia public records law and Georgia public records retention schedules,
whichever is longer.

12.   INDEMNIFICATION AND INSURANCE:

REDSPEED shall comply with all laws, ordinances and regulations governing the use of
photo enforcement systems applicable to this Agreement and shall comply with the
maintenance procedures and manufacturer recommendations for operation of SPE
System equipment which affect this Agreement, and shall indemnify and save harmless
the GOVERNING BODY against claims arising from the violations of the maintenance
procedures and manufacturer recommendations for operation of the equipment as a result
of the gross negligence, recklessness, or willful or intentional misconduct of
REDSPEED, its officers and directors, agents, attorneys, and employees, but excluding
any employees or agents of GOVERNING BODY.

REDSPEED agrees to protect, defend, indemnify, and hold harmless GOVERNING
BODY and GOVERNING BODY's officers, employees, and agents from and against
any and all losses, penalties, damages, settlements, fines, claims, costs, charges for other
expenses, or liabilities of every and any kind including any award of attorney fees and
any award of costs in connection with or arising from any gross negligence, intentional or

## RedSpeed®

reckless act or omission by REDSPEED or any of REDSPEED's officers, employees, agents, contractors, or subcontractors in performing the work agreed to or performed by REDSPEED under the terms of this Agreement. Without limiting the foregoing, any and all claims, suits or other actions relating to personal injury, death, damage to property, defects in materials or workmanship, violations of any decree of any court in connection with or arising from any gross negligence, intentional or reckless act or omission by REDSPEED shall be included in this indemnity.

REDSPEED shall maintain the following minimum scope and limits of insurance:

a. Commercial General Liability Insurance including coverage for bodily injury, property damage, premises and operations, products/completed operations, personal and advertising injury, and contractual liability with a combined single limit of $1,000,000 per occurrence. Such insurance shall name GOVERNING BODY and GOVERNING BODY's officers, employees, volunteers and elected officials as additional insured for liability arising from REDSPEED's operation.

b. Workers' Compensation, as required by applicable state law, and Employers Liability Insurance with limits of not less than $500,000 each accident. REDSPEED shall always maintain Workers' Compensation insurance coverage in the amounts required by law, but shall not be required to provide such coverage for any actual or statutory employee of GOVERNING BODY.

c. Comprehensive Business Automobile Liability Insurance for all owned, non-owned and hired automobiles and other vehicles used by REDSPEED with a minimum $1,000,000 per occurrence combined single limit bodily injury and property damage.

REDSPEED shall require any subcontractors doing work under this Agreement to provide and maintain the same insurance, which insurance shall also name GOVERNING BODY and GOVERNING BODY's officers, employees and elected officials as additional insureds.

Certificates showing REDSPEED is carrying the above described insurance, and evidencing the additional insured status specified above, shall be furnished to GOVERNING BODY within thirty (30) calendar days after the date on which this Agreement is made. Such certificates shall show that GOVERNING BODY shall be notified at least thirty (30) days in advance of all cancellations of such insurance policies. REDSPEED shall forthwith obtain substitute insurance in the event of a cancellation.

Inasmuch as GOVERNING BODY is a body politic and corporate, the laws from which GOVERNING BODY derives its powers, insofar as the same law regulates the objects for which, or manner in which, or the concerns under which, GOVERNING BODY may enter into this Agreement, shall be controlling and shall be incorporated by reference into this Agreement. GOVERNING BODY shall be responsible for vehicle insurance coverage on any vehicles driven by GOVERNING BODY employees. Coverage will include liability and collision damage.

## RedSpeed®

REDSPEED will require all its subcontractors to provide the aforementioned coverage as well as any other coverage that REDSPEED may consider necessary, and any deficiency in the coverage or policy limits of said subcontractors shall be the sole responsibility of REDSPEED.

13.   STATE LAW TO APPLY:

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties waive the privilege of venue and agree that all litigation between them in the state courts shall take place in Baldwin County, Georgia and that all litigation between them in the federal courts shall take place in the State of Georgia.

14.   DISPUTE RESOLUTION:

All disputes arising out of or in connection with the Agreement shall be attempted to be settled through good-faith efforts between senior management of both Parties. Following thirty (30) days of unsuccessful negotiation, a dispute may be submitted to professionally-assisted mediation. Before a demand for mediation may be filed by either Party, the management of both Parties shall have met at least two times in face-to-face meetings in an effort to resolve any dispute or controversy through normal business management practices. Any mediator so designated must be acceptable to each Party. The mediation will be conducted as specified by the mediator and agreed upon by the Parties. The Parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute. The mediation will be treated as a settlement discussion and therefore will be confidential. The mediator may not testify for either Party in any later proceeding relating to the dispute. Each Party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the Parties.

Failing resolution through negotiation or mediation, any remaining dispute shall be submitted to binding arbitration in accordance with the Arbitration Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association ("AAA Rules") before a single arbitrator. The place of arbitration will be mutually agreed upon within fourteen (14) days of a decision to seek arbitration. Limited discovery will be permitted in connection with the arbitration upon agreement of the Parties and only upon a showing of substantial need by the Party seeking discovery.

The arbitrator will have no power to award damages inconsistent with the Agreement; or punitive damages or any other damages not measured by the prevailing Party's actual damages, and the Parties expressly waive their right to obtain such damages in arbitration or in any other proceeding. All aspects of the arbitration will be confidential. Neither the Parties nor the arbitrator may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.

15.   AMENDMENTS TO THE AGREEMENT:

GOVERNING BODY may from time to time consider it in its best interest to change, modify or extend term, conditions or covenants of this Agreement or require changes in

## RedSpeed®

the scope of the Services to be performed by REDSPEED, or request REDSPEED to perform additional services regardless of and without invalidating the process that was used to procure the services enumerated under this Agreement. Any such change, addition, deletion, extension or modification, including any increase or decrease in the amount of REDSPEED's compensation, which are mutually agreed upon by and between GOVERNING BODY and REDSPEED, shall be incorporated in written amendments (herein called "Amendments") to this Agreement that are duly executed by both parties. Such Amendments shall not invalidate the procurement process or this Agreement nor relieve or release REDSPEED or GOVERNING BODY of any of its obligations under this Agreement unless stated therein.

16.   EFFECT OF AMENDMENT(S) ON AGREEMENT:

Except as expressly amended or modified by the terms of an Amendment, all terms of the Agreement shall remain in full force and effect. Unless a different meaning is specified in an Amendment, all capitalized terms used herein shall have the meaning described in the Agreement. In the event of a conflict between the terms of the Amendment and this Agreement, the Amendment shall prevail and control.

17.   LEGAL CONSTRUCTION AND REQUIREMENTS:

In case any one or more of the provisions contained in this Agreement shall for any reason, by a court of competent jurisdiction, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein.

18.   NO AGENCY:

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under this Agreement and acts an agent of GOVERNING BODY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the GOVERNING BODY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

19.   FORCE MAJEURE:

GOVERNING BODY and REDSPEED will be excused from the performance of their respective obligations under this Agreement when and to the extent that their performance is delayed or prevented by any circumstances beyond their control including, fire, flood, explosion, strikes or other labor disputes, act of God or public emergency, war, rioting, malicious damage, act or omission of any governmental

RedSpeed®

intentional or reckless acts and omissions. REDSPEED shall defend, counsel being subject to GOVERNING BODY's approval or disapproval, and indemnify and hold harmless GOVERNING BODY and GOVERNING BODY's officers, employees, and agents from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, by or in favor of any of REDSPEED's subcontractors for payment for work performed for GOVERNING BODY by any of such subcontractors, and from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, occasioned by or arising out of any negligent, intentional or reckless act or omission by any of REDSPEED's subcontractors.

23.   ENTIRE AGREEMENT:

The provisions of this Agreement, including the recitals, comprise all of the terms, conditions, agreements, and representations of the parties with respect to the subject matter hereof. All representations and promises made by any party to another, whether in writing or orally, concerning the subject matter of this Agreement, are merged into this Amendment. Except as amended by an Amendment, the terms of the Agreement shall continue in full force and effect.

24.   NOTICES:

Any notice or demand which under the terms of this Agreement or under any statute must or may be given or made by REDSPEED or GOVERNING BODY shall be in writing and shall be given or made by personal service, first class mail, overnight delivery, or by certified or registered mail to the parties at the following respective addresses:

City of Milledgeville                                    RedSpeed Georgia, LLC
119 E Hancock Street                                 400 Eisenhower Lane North
Milledgeville, GA 31061                             Lombard, Illinois 60148
Attn: City Manager                                     Attn: Robert Liberman, Manager

25.   EXCLUSIVITY:

GOVERNING BODY agrees that upon execution of this Agreement, GOVERNING BODY may not utilize another vendor, other than REDSPEED, for the same or similar services as contemplated herein, within the jurisdiction of the GOVERNING BODY without prior written consent from REDSPEED.

IN WITNESS THEREOF, the parties have duly executed this Agreement on the day and year first written above.

City of Milledgeville, Georgia                      RedSpeed Georgia, LLC

By: Mary Parham Copelan 5/30/2019        By: Robert Liberman  5/30/2019
Name Mary Parham-Copelan                     Robert Liberman
Title Mayor                                              Manager

RedSpeed®

Attest:_____,_____/_____/_____
Milledgeville City Clerk / Authorized Attestor

RedSpeed®

SECTION 1.

## REDSPEED SCOPE OF WORK

1. REDSPEED agrees to provide a turnkey solution for SPE Systems to GOVERNING BODY wherein all reasonably necessary elements required to implement and operate the solution are the responsibility of REDSPEED, except for those items identified in Section 2 titled "GOVERNING BODY Scope of Work". REDSPEED and GOVERNING BODY understand and agree that new or previously unforeseen requirements may, from time to time, be identified and that the parties shall negotiate in good faith to assign to the proper party the responsibility and cost for such items. In general, if work is to be performed by GOVERNING BODY, unless otherwise specified, GOVERNING BODY shall not charge REDSPEED for the cost. All other in-scope work, external to GOVERNING BODY, is the responsibility of REDSPEED.

2. REDSPEED agrees to make every effort to adhere to the Project Time Line agreed upon between the parties and based on the Best and Final Offer.

3. REDSPEED will install SPE Systems at several intersections, school zone areas or grade crossing approaches to be agreed upon between REDSPEED and GOVERNING BODY after completion of site analyses. In addition to any initial locations, the parties may agree from time to time to add to the quantities and locations where SPE Systems are installed and maintained.

4. REDSPEED will operate each SPE System on a 24-hour basis, barring downtime for maintenance and normal servicing activities.

5. REDSPEED agrees to provide a secure website (www.SpeedViolations.com) accessible to recipients who have received Notices of Violation by means of a Notice #, which will allow violation image and video viewing.

6. REDSPEED shall provide technician site visits to each SPE System once per month to perform preventive maintenance checks consisting of: camera enclosure lens cleaning, camera, strobe, and controller enclosure cleaning, inspection of exposed wires, and general system inspection and maintenance.

7. REDSPEED shall use best efforts to endeavor to repair a non-functional SPE System within forty-eight (48) business hours of determination of a malfunction.

8. REDSPEED shall use best efforts to endeavor to repair the SPE System within one (1) business day from the time of the outage. Outages of GOVERNING BODY internet connections or infrastructure are excluded from this service level.

9. REDSPEED will establish a demand deposit account bearing the title, "RedSpeed Georgia LLC as agent for City of Milledgeville at CIBC Bank." All funds collected on behalf of GOVERNING BODY, excluding REDSPEED's monthly fees and any fees associated with electronic processing of violations, will be deposited in this account and

## RedSpeed®

21. If required by GOVERNING BODY, REDSPEED shall, at REDSPEED's expense, provide and train GOVERNING BODY with a local expert witness able to testify in administrative proceedings and in court on matters relating to the accuracy, technical operations, and effectiveness of the SPE System until judicial notice is taken.

22. In those instances where damage to an SPE System is caused by negligence on the part of GOVERNING BODY or its authorized agent(s), REDSPEED will provide GOVERNING BODY an estimate of the cost of repair. Upon authorization to proceed with the repairs or replacement, REDSPEED shall replace or repair any damaged equipment and invoice for the pre-approved repair cost. REDSPEED shall bear the cost to replace or repair equipment damaged in all other circumstances.

23. REDSPEED shall provide a toll-free, GOVERNING BODY-specific help line to help GOVERNING BODY resolve any problems encountered regarding its SPE System and/or citation processing. The help line shall function during normal business hours. Call Center hours for violators is Monday-Friday 9:00 AM to 5 PM EST.

24. REDSPEED shall provide Motor Vehicle Owners with the ability to view Recorded Images of Violations involving their motor vehicles online. This online viewing system shall include a link to the REDSPEED payment website(s).

25. REDSPEED is authorized to charge, collect and retain fees associated with the electronic processing. Such fees shall not exceed $25.00 per violation. Such fee is paid by the violator. GOVERNING BODY will not receive any of said fees. GOVERNING BODY assumes no liability, responsibility, or control for said fee sought by REDSPEED.

26. REDSPEED shall provide GOVERNING BODY with a warning period consistent with State law.

## RedSpeed®

36. Police Department workstation computer monitors for citation review and approval should provide a minimum resolution of 1280 x 1024.

37. Police Department shall provide signatures of all authorized police users who will review events and approve citations on forms provided by REDSPEED.

38. GOVERNING BODY shall handle inbound and outbound phone calls and correspondence from defendants who have questions about disputes, and other issues relating to citation adjudication. GOVERNING BODY may refer citizens with questions regarding REDSPEED or SPE System technology and processes to websites and/or toll-free telephone numbers provided by REDSPEED for that purpose.

39. If remote access to a REDSPEED SPE System is blocked by GOVERNING BODY's network security infrastructure, GOVERNING BODY's Technology Consultant shall coordinate with REDSPEED to facilitate appropriate communications while maintaining required security measures.

RedSpeed®

### Exhibit B

### SCHEDULE 1
### SERVICE FEE SCHEDULE

GOVERNING BODY agrees to pay REDSPEED the Fee(s) as itemized below:

1.   Description of Pricing

Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations. Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web-based SPE System for Certified Peace Officer review:

33% service fee for each paid violation

2.   Optional Services

License Plate Reader (LPR) module:   Additional 2% service fee for each paid violation per approach

**RedSpeed®**

PROFESSIONAL SERVICES AGREEMENT

April 6, 2019

This AGREEMENT (the "Agreement") made this 6th Day of April, 2019, (herein the "Commencement Date"), between RedSpeed Georgia, LLC, a Georgia Limited Liability Company (herein "REDSPEED"), with its principal place of business at 400 Eisenhower Lane North, Lombard, IL 60148, and City of Duluth, a political subdivision authorized and created by the State of Georgia (herein "GOVERNING BODY"), with principal offices at 3167 Main St, Duluth, GA 30096.

WITNESSETH:

WHEREAS, REDSPEED has the exclusive knowledge, possession, and ownership of certain equipment, licenses, and processes referred to collectively as the "Speed Photo Enforcement System" (herein "SPE System"); and

WHEREAS, GOVERNING BODY desires to use the SPE System to monitor and enforce school zone speed, and may, in the future, desire to monitor and enforce red light violations or other traffic movements and to issue citations for traffic violations; and

WHEREAS, on or about May 8, 2018, the Governor of the State of Georgia signed 2017 6a. HB 978 into law, resulting in Section 40-14-18 of the Official Code of Georgia Annotated taking effect on July 1, 2018; and

WHEREAS, Section 40-14-18 of the Official Code of Georgia Annotated expressly authorizes municipalities to use traffic infraction detectors to enforce certain provisions of Section 40-14-8 of the Official Code of Georgia Annotated, subject to certain requirements; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, REDSPEED and GOVERNING BODY agree that the Agreement shall be as provided herein:

TERMS AND CONDITIONS

1.    DEFINITIONS:

As used in this Agreement, the following words and terms shall, unless the context otherwise requires, have the respective meanings provided below:

**"Motor Vehicle"** means any self-propelled vehicle not operated upon rails or guide-way, but not including any bicycle or electric personal assisted mobility device.

**"Notice of Violation"** means a citation or equivalent instrument issued by a competent state or municipal law enforcement agent or agency or by a court of competent jurisdiction relating to a violation documented or evidenced by SPE System or REDSPEED as an agent of such law enforcement agent, agency or court.

**RedSpeed®**

**"Motor Vehicle Owner"** means the person or entity identified by the Georgia Department of Motor Vehicles, or other state vehicle registration office, as the registered owner of a vehicle. Such term shall also mean a lessee of a motor vehicle pursuant to a motor vehicle lease or rental agreement.

**"Recorded Images"** means photographic, electronic, digital or video images of a Motor Vehicle recorded by a SPE System and establishing a time sequence of the Motor Vehicle entering the intersection or speed zone and its speed.

**"RedCheck"** means web-based violation processing system used by Certified Peace Officer.

**"Speed Photo Enforcement System"** (herein "SPE System") means an electronic system that captures recorded images of Motor Vehicles speeding in designated school zone and consisting of, at a minimum one radar, IR panel, and up to seven (7) individual video cameras capable of monitoring up to seven (7) lanes of enforcement.

**"Certified Peace Officer"** means an employee of GOVERNING BODY's police department who meets the qualifications of Section 40-14-1(1) of the Official Code of Georgia Annotated.

**"Unamortized Costs"** means the historical cost of a fixed asset less the total depreciation shown against that asset up to a specified date. Unamortized costs for this Agreement may include, but are not limited to, design/engineering plans, camera foundation construction and installation, restoration of camera location to its original condition and cost of equipment.

**"Violation"** means a violation of Section 40-14-8 or Section 40-14-18 of the Official Code of Georgia Annotated or a violation of GOVERNING BODY's Code of Ordinances, as may be amended from time to time.

2.    REDSPEED AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 1".

3.    GOVERNING BODY AGREES TO PROVIDE:

The scope of work identified in "Exhibit A, Section 2".

4.    SERVICE FEES:

The service fee schedule identified in "Exhibit B".

5.    TERM AND TERMINATION:

This Agreement shall be effective on the Commencement Date. The term of this Agreement shall be for one year beginning on the first day of the month following the first

**RedSpeed®**

issued Notice of Violation (the "Start Date").  The Agreement may be  be automatically extended for up to four (4) additional one (1) year periods. However, GOVERNING BODY may terminate this Agreement at the expiration of any term by providing written notice of its intent not to extend the Agreement sixty (60) days prior to the expiration of the current term.

REDSPEED's services may be terminated:

a.      By mutual written consent of the parties.

b.      For cause, by either party where the other party fails in any material way to perform its obligations under this Agreement and the defaulting party fails to cure the default within thirty (30) days after receiving written notice. The terminating party must provide written notice to the other party of its intent to terminate and state with reasonable specificity the grounds for termination.

c.      For convenience, by either party in the event that state legislation or a decision by a court of competent jurisdiction prohibits the deployment of the SPE Systems that is the subject of this Agreement, but only following the exhaustion of any legal challenges that may occur challenging such state legislation or judicial determination.  To the extent it becomes necessary, the Parties to this Agreement acknowledge that this agreement shall be tolled during the time it takes to determine legal challenges.

d.      For convenience of GOVERNING BODY. GOVERNING BODY reserves the right to terminate by giving written notice to REDSPEED sixty (60) days prior to the effective date of such termination. If GOVERNING BODY elects to terminate the agreement under this subsection during the first twelve (12) months of the initial contract term, GOVERNING BODY shall pay termination costs not to exceed $10,000.00 per location  related to unamortized costs.

Upon termination of this Agreement, either for breach or because it has reached the end of its term or as a result of giving an early termination notice, the parties recognize that GOVERNING BODY will have to process traffic law violations that occur prior to the notice of termination of the Agreement and that REDSPEED must assist GOVERNING BODY in this regard. Accordingly, the parties shall take the following actions, and shall have the following obligations, which survive termination during the winddown period: GOVERNING BODY shall cease using the SPE System, shall return or allow REDSPEED to recover all provided equipment within a reasonable time not to exceed ninety (90) days, and shall not generate further images to be processed. Unless directed by GOVERNING BODY not to do so, REDSPEED shall continue to process all images taken by GOVERNING BODY before termination and provide all services associated with processing in accordance with this Agreement and shall be entitled to all Fees specified in the Agreement as if the Agreement were still in effect. REDSPEED shall provide GOVERNING BODY with all revenues owed to GOVERNING BODY accruing prior to the date of termination and REDSPEED shall be entitled to its fees pursuant to this Agreement, from said accrued revenues provided to GOVERNING BODY.

**RedSpeed®**

6.  **ASSIGNMENT:**

    Neither party may assign all or any portion of this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld or delayed. Provided, however, that GOVERNING BODY hereby acknowledges and agrees that delivery and performance of REDSPEED's rights pursuant to this Agreement shall require a significant investment by REDSPEED, and that in order to finance such investment, REDSPEED may be required to enter into certain agreements or arrangements including, but not limited to, acknowledgments and/or consents with equipment lessors, banks, financial institutions or other similar persons or entities. GOVERNING BODY hereby agrees that REDSPEED shall have the right to assign, pledge, hypothecate or otherwise transfer its rights to the equipment but not the service provided under this Agreement, to any of the aforesaid financial institutions without GOVERNING BODY's prior written approval. GOVERNING BODY further acknowledges and agrees that in the event that REDSPEED provides any such acknowledgment or consent to GOVERNING BODY for execution, and in the event that GOVERNING BODY fails to execute and deliver such acknowledgment or consent back to REDSPEED within ten (10) calendar days after its receipt of such request from REDSPEED to execute such acknowledgment or consent, GOVERNING BODY shall be deemed to have consented to and approved such acknowledgment or consent and REDSPEED is granted a limited power of attorney, coupled with an interest, to execute the acknowledgment and/or consent on behalf of GOVERNING BODY and deliver such document to its financial institution.

7.  **FEES AND PAYMENT:**

    GOVERNING BODY shall pay for all equipment, services and maintenance based on the fee schedule indicated in Exhibit B, Schedule 1 ("Fees"). Fees shall only be due as a percentage of collected fines.

8.  **COMMUNICATION OF INFORMATION:**

    REDSPEED agrees that all information obtained by REDSPEED through operation of the SPE System shall be made available to the GOVERNING BODY at any time during REDSPEED's normal working hours excluding trade secrets as defined by Georgia law and other information that is confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law and not reasonably necessary for the prosecution of citations or the fulfillment of GOVERNING BODY's obligation under this Agreement. REDSPEED reserves the right to charge GOVERNING BODY for sizable information requests that will incur substantial resource allocation to compile.

9.  **CONFIDENTIAL INFORMATION:**

    No information given by REDSPEED to GOVERNING BODY will be of a confidential nature, unless specifically designated in writing as proprietary and confidential by REDSPEED and either confidential pursuant to Georgia law or exempt from disclosure pursuant to Georgia law. Nothing in this paragraph shall be construed contrary to the terms and provisions of any Georgia law governing public records or similar laws, insofar as they

**RedSpeed®**

may be applicable. REDSPEED shall not use any information acquired by this program with respect to any violations or GOVERNING BODY's law enforcement activities for any purpose other than the program encompassed by this Agreement.

10.   OWNERSHIP OF SYSTEM:

It is understood by GOVERNING BODY that the SPE System being installed by REDSPEED is, and shall remain, the sole property of REDSPEED, unless separately procured from REDSPEED through a lease or purchase transaction. The SPE Systems are provided to GOVERNING BODY only under the terms and for the term of this Agreement.

11.   RECORDS AND AUDIT:

REDSPEED shall maintain during the term of the Agreement all books of account, reports and records in accordance with generally accepted accounting practices and standards for records directly related to this Agreement. REDSPEED agrees to make available to GOVERNING BODY's Internal Auditor, during normal business hours and in City of Duluth, Georgia all books of account, reports and records relating to this Agreement for the duration of the Agreement and retain them for a minimum period of three (3) years beyond the last day of the Agreement term or such other period required by the Georgia public records law and Georgia public records retention schedules, whichever is longer.

12.   INDEMNIFICATION AND INSURANCE:

REDSPEED shall comply with all laws, ordinances and regulations governing the use of photo enforcement systems applicable to this Agreement and shall comply with the maintenance procedures and manufacturer recommendations for operation of SPE System equipment which affect this Agreement, and shall indemnify and save harmless the GOVERNING BODY against claims arising from the violations of the maintenance procedures and manufacturer recommendations for operation of the equipment as a result of the negligence, recklessness, or willful or intentional misconduct of REDSPEED, its officers and directors, agents, attorneys, and employees, but excluding any employees or agents of GOVERNING BODY.

REDSPEED agrees to protect, defend, indemnify, and hold harmless GOVERNING BODY and GOVERNING BODY's officers, employees, and agents from and against any and all losses, penalties, damages, settlements, fines, claims, costs, charges for other expenses, or liabilities of every and any kind including any award of attorney fees and any award of costs in connection with or arising from any negligence, intentional or reckless act or omission by REDSPEED or any of REDSPEED's officers, employees, agents, contractors, or subcontractors in performing the work agreed to or performed by REDSPEED under the terms of this Agreement. Without limiting the foregoing, any and all claims, suits or other actions relating to personal injury, death, damage to property, defects in materials or workmanship, violations of any decree of any court in connection with or arising from any negligence, intentional or reckless act or omission by REDSPEED shall be included in this indemnity.

REDSPEED shall maintain the following minimum scope and limits of insurance:

**RedSpeed®**

a.   Commercial General Liability Insurance including coverage for bodily injury, property damage, premises and operations, products/completed operations, personal and advertising injury, and contractual liability with a combined single limit of $1,000,000 per occurrence. Such insurance shall name GOVERNING BODY and GOVERNING BODY's officers, employees, volunteers and elected officials as additional insured for liability arising from REDSPEED's operation.

b.   Workers' Compensation, as required by applicable state law, and Employers Liability Insurance with limits of not less than $500,000 each accident. REDSPEED shall always maintain Workers' Compensation insurance coverage in the amounts required by law, but shall not be required to provide such coverage for any actual or statutory employee of GOVERNING BODY.

c.   Comprehensive Business Automobile Liability Insurance for all owned, non-owned and hired automobiles and other vehicles used by REDSPEED with a minimum $1,000,000 per occurrence combined single limit bodily injury and property damage.

REDSPEED shall require any subcontractors doing work under this Agreement to provide and maintain the same insurance, which insurance shall also name GOVERNING BODY and GOVERNING BODY's officers, employees and elected officials as additional insureds.

Certificates showing REDSPEED is carrying the above described insurance, and evidencing the additional insured status specified above, shall be furnished to GOVERNING BODY within thirty (30) calendar days after the date on which this Agreement is made. Such certificates shall show that GOVERNING BODY shall be notified at least thirty (30) days in advance of all cancellations of such insurance policies. REDSPEED shall forthwith obtain substitute insurance in the event of a cancellation.

Inasmuch as GOVERNING BODY is a body politic and corporate, the laws from which GOVERNING BODY derives its powers, insofar as the same law regulates the objects for which, or manner in which, or the concerns under which, GOVERNING BODY may enter into this Agreement, shall be controlling and shall be incorporated by reference into this Agreement. GOVERNING BODY shall be responsible for vehicle insurance coverage on any vehicles driven by GOVERNING BODY employees. Coverage will include liability and collision damage.

REDSPEED will require all its subcontractors to provide the aforementioned coverage as well as any other coverage that REDSPEED may consider necessary, and any deficiency in the coverage or policy limits of said subcontractors shall be the sole responsibility of REDSPEED.

13.   **STATE LAW TO APPLY:**

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties waive the privilege of venue and agree that all litigation

**RedSpeed®**

between them in the state courts shall take place in Gwinnett County, Georgia and that all litigation between them in the federal courts shall take place in the State of Georgia.

**14. Compliance with Immigration Laws & Regulations**

14.1 The Contractor shall be responsible for complying with the GA Security and Immigration Compliance Act of 2006 (O.C.G.A. §13-10-90 & §13-10-91) and the Rules of the GA Department of Labor implementing the GA Security and Immigration Compliance Act of 2006 (Rules 300-10-1-.01 through 300-10-1-.09). In accordance with these provisions, the Contractor shall complete attached Exhibits C

14.2 The Contractor affirms and agrees that it is currently registered and participates in the federal work authorization program to verify information of all new employees pursuant to O.C.G.A. §13-10-91(b).

14.3      The Contractor affirms and agrees that any and all subcontractors that it will use on the above-described project are registered and participate in the federal work authorization program to verify information of all new employees.

14.4      Pursuant to O.C.G.A. §50-36-1, Proposer shall provide information regarding citizenship status and shall complete and file with the City the Citizenship Status Affidavit, which is attached hereto as Exhibit C.

14.5      The failure to abide by the provisions and agreements set forth in this Subsection shall constitute a breach and default of this contract.

15.      AMENDMENTS TO THE AGREEMENT:

GOVERNING BODY may from time to time consider it in its best interest to change, modify or extend term, conditions or covenants of this Agreement or require changes in the scope of the Services to be performed by REDSPEED, or request REDSPEED to perform additional services regardless of and without invalidating the process that was used to procure the services enumerated under this Agreement. Any such change, addition, deletion, extension or modification, including any increase or decrease in the amount of REDSPEED's compensation, which are mutually agreed upon by and between GOVERNING BODY and REDSPEED, shall be incorporated in written amendments (herein called "Amendments") to this Agreement that are duly executed by both parties. Such Amendments shall not invalidate the procurement process or this Agreement nor relieve or release REDSPEED or GOVERNING BODY of any of its obligations under this Agreement unless stated therein.

16.      EFFECT OF AMENDMENT(S) ON AGREEMENT:

Except as expressly amended or modified by the terms of an Amendment, all terms of the Agreement shall remain in full force and effect. Unless a different meaning is specified in an Amendment, all capitalized terms used herein shall have the meaning described in the Agreement. In the event of a conflict between the terms of the Amendment and this Agreement, the Amendment shall prevail and control.

**RedSpeed®**

17.   LEGAL CONSTRUCTION AND REQUIREMENTS:

In case any one or more of the provisions contained in this Agreement shall for any reason, by a court of competent jurisdiction, be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein.

18.   NO AGENCY:

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under this Agreement and acts an agent of GOVERNING BODY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the GOVERNING BODY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

19.   FORCE MAJEURE:

GOVERNING BODY and REDSPEED will be excused from the performance of their respective obligations under this Agreement when and to the extent that their performance is delayed or prevented by any circumstances beyond their control including, fire, flood, explosion, strikes or other labor disputes, act of God or public emergency, war, rioting, malicious damage, act or omission of any governmental authority, delay or failure or shortage of any type of transportation, equipment, or service from a public utility needed for their performance provided that:

the non-performing party gives the other party prompt written notice describing the particulars of the Force Majeure including, but not limited to, the nature of the occurrence and its expected duration, and continues to furnish timely reports with respect thereto during the period of the Force Majeure;

the excuse of performance is of no greater scope and no longer duration than is required by the Force Majeure;

no obligations of either party that arose before the Force Majeure causing the excuse of performance are excused as a result of the Force Majeure; and,

the non-performing party uses its best efforts to remedy its inability to perform.

Notwithstanding the above, performance shall not be excused under this Section for a period in excess of two (2) months, provided that in extenuating circumstances, GOVERNING BODY may excuse performance for a longer term. Economic hardship of REDSPEED will not constitute Force Majeure. The term of the Agreement shall be

**RedSpeed®**

extended by a period equal to that during which either party's performance is suspended under this Section.

20.   PERMITS, FEES, AND LICENSES:

REDSPEED shall, at its own expense, obtain all necessary permits and pay all licenses and fees required to comply with all local ordinances, state and federal laws, rules and regulations applicable to business to be carried out under this Agreement.

21.   NON-DISCRIMINATION:

There shall be no discrimination as to race, sex, color, creed, age, sexual orientation, disability, marital status, or national origin in the operations conducted under this Agreement.

22.   SUBCONTRACTORS:

REDSPEED must be capable of performing all the services contained within this Agreement. If REDSPEED uses a subcontractor in the performance of these services, REDSPEED shall submit complete information on any/all proposed subcontractors. The same qualifications requirements, and all other terms and conditions of the Agreement shall also apply to the subcontractor. GOVERNING BODY reserves the right to approve or disapprove of any subcontractor proposed.

REDSPEED shall ensure that all of REDSPEED's subcontractors perform in accordance with the terms and conditions of this Agreement. REDSPEED shall be fully responsible for all of REDSPEED's subcontractors' performance, and liable for any of REDSPEED's subcontractors' non-performance and all of REDSPEED's subcontractors' negligent, intentional or reckless acts and omissions. REDSPEED shall defend, counsel being subject to GOVERNING BODY's approval or disapproval, and indemnify and hold harmless GOVERNING BODY and GOVERNING BODY's officers, employees, and agents from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, by or in favor of any of REDSPEED's subcontractors for payment for work performed for GOVERNING BODY by any of such subcontractors, and from and against any claim, lawsuit, third party action, settlement, or judgment, including any award of attorney fees and any award of costs, occasioned by or arising out of any negligent, intentional or reckless act or omission by any of REDSPEED's subcontractors.

23.   ENTIRE AGREEMENT:

The provisions of this Agreement, including the recitals, comprise all of the terms, conditions, agreements, and representations of the parties with respect to the subject matter hereof. All representations and promises made by any party to another, whether in writing or orally, concerning the subject matter of this Agreement, are merged into this Amendment. Except as amended by an Amendment, the terms of the Agreement shall continue in full force and effect.

**RedSpeed®**

24.   NOTICES:

Any notice or demand which under the terms of this Agreement or under any statute must or may be given or made by REDSPEED or GOVERNING BODY shall be in writing and shall be given or made by personal service, first class mail, overnight delivery, or by certified or registered mail to the parties at the following respective addresses:

City of Duluth
3167 Main St,
Duluth, GA 30096
Attn: City Manager

RedSpeed Georgia, LLC
400 Eisenhower Lane North
Lombard, Illinois 60148
Attn: Robert Liberman, Manager

25.   EXCLUSIVITY:

GOVERNING BODY agrees that upon execution of this Agreement, GOVERNING BODY may not utilize another vendor, other than REDSPEED, for the same or similar services as contemplated herein, within the jurisdiction of the GOVERNING BODY without prior written consent from REDSPEED.

IN WITNESS THEREOF, the parties have duly executed this Agreement on the day and year first written above.

**City of Duluth, Georgia**

By: _____, 6/10/19
Name NANCY HARRIS
Title Mayor

**RedSpeed Georgia, LLC**

By: _See Attached_, /  /
Robert Liberman
Manager

Attest _____, 6/10/19
Duluth City Clerk / Authorized Attestor

**RedSpeed®**

24.   NOTICES:

Any notice or demand which under the terms of this Agreement or under any statute must or may be given or made by REDSPEED or GOVERNING BODY shall be in writing and shall be given or made by personal service, first class mail, overnight delivery, or by certified or registered mail to the parties at the following respective addresses:

City of Duluth                     RedSpeed Georgia, LLC
3167 Main St,                      400 Eisenhower Lane North
Duluth, GA 30096                   Lombard, Illinois 60148
Attn: City Manager                 Attn: Robert Liberman, Manager

25.   EXCLUSIVITY:

GOVERNING BODY agrees that upon execution of this Agreement, GOVERNING BODY may not utilize another vendor, other than REDSPEED, for the same or similar services as contemplated herein, within the jurisdiction of the GOVERNING BODY without prior written consent from REDSPEED.

IN WITNESS THEREOF, the parties have duly executed this Agreement on the day and year first written above.

**City of Duluth, Georgia**              **RedSpeed Georgia, LLC**

By:_____,___/___/___          By: _Robert Liberman, 6/19/19_
Name                                     Robert Liberman
Title                                    Manager


Attest:_____,___/___/_____
Duluth City Clerk / Authorized Attestor

**RedSpeed®**

Exhibit A

SECTION 1.

## REDSPEED SCOPE OF WORK

1.  REDSPEED agrees to provide a turnkey solution for SPE Systems to GOVERNING BODY wherein all reasonably necessary elements required to implement and operate the solution are the responsibility of REDSPEED, except for those items identified in Section 2 titled "GOVERNING BODY Scope of Work". REDSPEED and GOVERNING BODY understand and agree that new or previously unforeseen requirements may, from time to time, be identified and that the parties shall negotiate in good faith to assign to the proper party the responsibility and cost for such items. In general, if work is to be performed by GOVERNING BODY, unless otherwise specified, GOVERNING BODY shall not charge REDSPEED for the cost. All other in-scope work, external to GOVERNING BODY, is the responsibility of REDSPEED.

2.  REDSPEED agrees to make every effort to adhere to the Project Time Line agreed upon between the parties. (NEED TO BETTER DEFINE TIME LINE)

3.  REDSPEED will install SPE Systems at several intersections, school zone areas or grade crossing approaches designated by the GOVERNING BODY after completion of site analyses. In addition to any initial locations, the parties may agree from time to time to add to the quantities and locations where SPE Systems are installed and maintained.

4.  REDSPEED will operate each SPE System on a 24-hour basis, barring downtime for maintenance and normal servicing activities. GOVERNING BODY shall retain the authority to determine enforcement periods and scope of enforcement, i.e. miles over speed limit resulting in a citation.

5.  REDSPEED agrees to provide a secure website (www.SpeedViolations.com) accessible to recipients who have received Notices of Violation by means of a Notice #, which will allow violation image and video viewing.

6.  REDSPEED shall provide technician site visits to each SPE System once per month to perform preventive maintenance checks consisting of: camera enclosure lens cleaning, camera, strobe, and controller enclosure cleaning, inspection of exposed wires, and general system inspection and maintenance.

7.  REDSPEED shall use best efforts to endeavor to repair a non-functional SPE System within forty-eight (48) business hours of determination of a malfunction.

8.  REDSPEED shall use best efforts to endeavor to repair the SPE System within one (1) business day from the time of the outage. Outages of GOVERNING BODY internet connections or infrastructure are excluded from this service level.

9.  REDSPEED will establish a demand deposit account bearing the title, "RedSpeed Georgia LLC as agent for City of Duluth at CIBC Bank." All funds collected on behalf of GOVERNING BODY, excluding REDSPEED's monthly fees and any fees associated with

**RedSpeed®**

electronic processing of violations, will be deposited in this account and transferred by wire on or about the 15th calendar day of the month to GOVERNING BODY's primary deposit bank. GOVERNING BODY will identify the account to receive funds wired from First Midwest Bank. GOVERNING BODY shall sign a W-9 and blocked account agreement, to be completed by GOVERNING BODY, to ensure GOVERNING BODY's financial interest in said bank account is preserved.

10. REDSPEED will design, fabricate, install, obtain permits, and maintain one speed warning sign for each monitored approach.

11. REDSPEED or subcontractors will be responsible for any costs associated with building, construction, electrical, street use, and/or pole attachment permits.

12. REDSPEED shall assign a project manager who will be the liaison between GOVERNING BODY and REDSPEED and will be responsible for project activities such as development of a project plan and tracking of deliverables. GOVERNING BODY shall reserve the right to request a new project manager.

13. REDSPEED shall provide GOVERNING BODY with RedCheck, an automated web-based citation processing system that includes image processing, color printing and mailing of a Notice of Violation per chargeable event. Each Notice of Violation shall be delivered by first class mail to the Motor Vehicle Owner within the statutory period. Mailings to Motor Vehicle Owners responding to Notices of Violation identifying drivers in affidavits of non-liability or by rental car companies are also included.

14. REDSPEED shall provide the Certified Peace Officer with access to RedCheck, for the purposes of reviewing Violations Data within five (5) days of the gathering of the Registered Vehicle Owner Information.

15. The decision to issue Notice of Violation shall be the sole, unilateral and exclusive decision of the Certified Peace Officer consistent with State Law.

16. RedCheck shall apply an electronic signature to a Notice of Violation when authorized to do so by an approving Certified Peace Officer.

17. REDSPEED shall obtain in-state vehicle registration information necessary to issue citations if it is named as GOVERNING BODY's agent.

18. REDSPEED shall seek records from out-of-state vehicle registration databases and apply records found by RedCheck to issue citations for GOVERNING BODY.

19. If GOVERNING BODY is unable to or does not desire to integrate REDSPEED data into its adjudication system, REDSPEED shall provide an on-line adjudication processing module, which will enable the adjudication function to review cases, related images, correspondence, and other related information required to adjudicate the disputed Notice of Violation.

**RedSpeed®**

20.  REDSPEED shall provide to GOVERNING BODY access to RedCheck system, which provides GOVERNING BODY with ability to run and print all standard system reports.

21.  If required by GOVERNING BODY, REDSPEED shall, at REDSPEED's expense, provide and train GOVERNING BODY with a local expert witness able to testify in administrative proceedings and in court on matters relating to the accuracy, technical operations, and effectiveness of the SPE System until judicial notice is taken.

22.  In those instances where damage to an SPE System is caused by negligence on the part of GOVERNING BODY or its authorized agent(s), REDSPEED will provide GOVERNING BODY an estimate of the cost of repair. Upon authorization to proceed with the repairs or replacement, REDSPEED shall replace or repair any damaged equipment and invoice for the pre-approved repair cost. REDSPEED shall bear the cost to replace or repair equipment damaged in all other circumstances.

23.  REDSPEED shall provide a toll-free, GOVERNING BODY-specific help line to help GOVERNING BODY resolve any problems encountered regarding its SPE System and/or citation processing. The help line shall function during normal business hours. Call Center hours for violators is Monday-Friday 9:00 AM to 5 PM EST.

24.  REDSPEED shall provide Motor Vehicle Owners with the ability to view Recorded Images of Violations involving their motor vehicles online. This online viewing system shall include a link to the REDSPEED payment website(s).

25.  REDSPEED is authorized to charge, collect and retain fees associated with the electronic processing.  Such fees shall not exceed $25.00 per violation. Such fee is paid by the violator. GOVERNING BODY will not receive any of said fees. GOVERNING BODY assumes no liability, responsibility, or control for said fee sought by REDSPEED.

26.  REDSPEED shall provide GOVERNING BODY with a warning period consistent with State law.

27.  REDSPEED will serve as the point of contact with the Georgia Department of Revenue and will provide timely information to the Georgia Department of Revenue with regard to referral of non-payment of civil penalties as set forth in O.C.G.A. § 40-14-18 (h)-(j).

**RedSpeed®**

## SECTION 2.
## GOVERNING BODY'S SCOPE OF WORK

26.   Within seven (7) business days of execution of the Agreement, GOVERNING BODY shall provide REDSPEED with the name and contact information for a project manager with authority to coordinate GOVERNING BODY responsibilities under the Agreement.

27.   Within seven (7) business days of the Agreement, GOVERNING BODY shall provide REDSPEED with the name and contact information for an Appeals Coordinator or staff responsible for oversight of all related program requirements.

28.   Within seven (7) business days of execution of the Agreement, GOVERNING BODY shall provide REDSPEED with the name(s), contact information, and electronic signature(s) of all Certified Peace Officers authorized by GOVERNING BODY's police department to approve and issue Notices of Violation.

29.   GOVERNING BODY shall establish a method by which a Motor Vehicle Owner who has received a Notice of Violation may review the images and video evidencing the Violation at www.SpeedViolation.com free of charge. This may be at a publicly available terminal at GOVERNING BODY's facility or by appointment with the Police Department.

30.   REDSPEED will relocate an SPE System at no cost to a new enforcement location once it has been directed to do so by the GOVERNING BODY.

31.   GOVERNING BODY shall endeavor to approve or reject REDSPEED submitted plans within seven (7) business days of receipt. REDSPEED and GOVERNING BODY will endeavor to approve the plans in a timely manner.

32.   GOVERNING BODY will endeavor to issue all needed permits to REDSPEED and its subcontractors in an expedited fashion for plan approval.

33.   If use of private property right of way is needed, GOVERNING BODY shall assist REDSPEED in acquiring permission to build in existing utility easements as necessary. Any additional cost for private property right of way lease/rental costs shall be borne by REDSPEED. REDSPEED reserves the right to not install on private property if the costs are unreasonable.

34.   GOVERNING BODY may allow REDSPEED to build needed infrastructure in existing GOVERNING BODY owned easement as necessary and only after required permits have been approved.

35.   GOVERNING BODY's Certified Peace Officer(s) shall process each potential violation in accordance with State Law and/or GOVERNING BODY's Ordinances within five (5) days (excluding Saturday, Sunday and GOVERNING BODY observed holidays) of its appearance in the Law Enforcement Review Queue, using RedCheck to determine which Violations will be issued as Notices of Violation.

**RedSpeed®**

36.   Police Department workstation computer monitors for citation review and approval should provide a minimum resolution of 1280 x 1024.

37.   Police Department shall provide signatures of all authorized police users who will review events and approve citations on forms provided by REDSPEED.

38.   GOVERNING BODY shall handle inbound and outbound phone calls and correspondence from defendants who have questions about disputes, and other issues relating to citation adjudication. GOVERNING BODY may refer citizens with questions regarding REDSPEED or SPE System technology and processes to websites and/or toll-free telephone numbers provided by REDSPEED for that purpose.

39.   If remote access to a REDSPEED SPE System is blocked by GOVERNING BODY's network security infrastructure, GOVERNING BODY's Technology Consultant shall coordinate with REDSPEED to facilitate appropriate communications while maintaining required security measures.

**RedSpeed®**

Exhibit B

<u>SCHEDULE 1</u>
<u>SERVICE FEE SCHEDULE</u>

GOVERNING BODY agrees to pay REDSPEED the Fee(s) as itemized below:

1.   <u>Description of Pricing</u>

Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations. Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web-based SPE System for Certified Peace Officer review:

<u>33%</u> service fee for each paid violation

2.   <u>Optional Services</u>

License Plate Reader (LPR) module:  Additional <u>2%</u> service fee for each paid violation per approach

# SUPERIOR COURT OF JEFFERSON COUNTY
## STATE OF GEORGIA

**✪ EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
JEFFERSON COUNTY, GEORGIA

## 23CV00138

**DEC 12, 2023 04:06 PM**

*Anne L. Durden*
Anne L. Durden, Clerk
Jefferson County, Georgia

CIVIL ACTION NUMBER  23CV00138

Dunn, Jonathan
_____

**PLAINTIFF**

**VS.**

Redspeed Georgia LLC
City of Wrens
_____

**DEFENDANTS**

## SUMMONS

TO: REDSPEED GEORGIA LLC

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **John C Bell, Jr.**
> **The Bell Firm**
> **PO Box 1547**
> **Augusta, Georgia 30903-1547**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of December, 2023.**

Clerk of Superior Court

*Anne L. Durden*

Anne L. Durden, Clerk
Jefferson County, Georgia

Page 1 of 1

# SHERIFF'S ENTRY OF SERVICE

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
JEFFERSON COUNTY, GEORGIA

23CV00138

JAN 12, 2024 09:35 AM

Anne L. Durden, Clerk
Jefferson County, Georgia

Civil Action No. _____23CV00138_____

Date Filed _____12/12/23 04:06 PM_____

Attorney's Address   Bell, John C Jr
The Bell Firm
PO Box 1547
Augusta, GEORGIA 30903-1547

|  | Superior Court | ☒ | Magistrate Court | ☐ |
| --- | --- | --- | --- | --- |
|  | State Court | ☐ | Probate Court | ☐ |
|  | Juvenile Court | ☐ |  |  |

Georgia,   **JEFFERSON**   COUNTY

Dunn, Jonathan

_____
Plaintiff

VS.

Redspeed Georgia LLC; City of Wrens

Name and Address of Party to be Served.
Redspeed Georgia LLC

c/o CT Corporation System, 289 S. Culver Street

Lawrenceville, GEORGIA 30046 3004

_____
Defendant

_____
Garnishee

SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant_____personally with a copy
of the within action and summons.

**NOTORIOUS**
☐ I have this day served the defendant_____by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☒ Served the defendant   *Redspeed  Georgia  LLC*   a corporation
by leaving a copy of the within action and summons with   *Jane  Richardson*
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the
door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of the
same in the United States Mail, first class in an envelope property address to the defendant(s) at the address shown in said
summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST**
☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this court.

This _27_ day of _Dec_, 20_23_

_____ Deputy
50300

⚖ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
JEFFERSON COUNTY, GEORGIA

**23CV00138**

**MAR 11, 2024 04:59 PM**

*Anne L. Durden*
Anne L. Durden, Clerk
Jefferson County, Georgia

## IN THE SUPERIOR COURT OF JEFFERSON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **JONATHAN DUNN, individually and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action File No.** |
| **REDSPEED GEORGIA LLC and CITY OF WRENS, GEORGIA,** | ) ) ) ) | **23CV00138** |
| **Defendants.** | ) ) ) | |

## <u>DEFENDANT REDSPEED USA CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Defendant RedSpeed USA CORPORATION ("RedSpeed" or "Defendant") hereby answers Plaintiff's Class Action Complaint as follows:

### DEFENSES

### <u>FIRST DEFENSE</u>

Defendant denies that it is liable to Plaintiff for any sum or in any manner.

### <u>SECOND DEFENSE</u>

No alleged act or omission on the part of Defendant caused or contributed to any of Plaintiff's claimed damages.

### <u>THIRD DEFENSE</u>

Some or all of the Counts in the Complaints fail to state a claim upon which relief may be granted.

### <u>FOURTH DEFENSE</u>

Some or all of Plaintiff's and putative class members' claims and/or damages are barred by the statute of limitations.

### FIFTH DEFENSE

Some or all of the relief sought by Plaintiff may be barred by the doctrines of waiver, estoppel, laches or other equitable defenses.

### SIXTH DEFENSE

Some or all of Plaintiff's claims are barred because Plaintiff has failed to join one or more necessary parties.

### SEVENTH DEFENSE

Some or all of Plaintiff's claims are barred because Plaintiff fraudulently joined one or more parties to defeat federal diversity jurisdiction.

### EIGHTH DEFENSE

Some or all of Plaintiff's claims are barred by sovereign immunity or other governmental immunities.

### NINTH DEFENSE

Some or all of Plaintiff's claims should be dismissed due to the lack of subject matter jurisdiction.

### TENTH DEFENSE

Plaintiff lacks standing to bring one or more of his claims, which should consequently be dismissed.

### ELEVENTH DEFENSE

Some or all of Plaintiff's claims are barred because Plaintiff failed to exhaust the available administrative remedies.

### TWELFTH DEFENSE

Plaintiff comes before the Court with unclean hands. Plaintiff admittedly sped through an active school zone at 61 miles per hour, endangering children and others in the school zone. It would be unfair and inequitable for the Court to afford Plaintiff the relief he seeks in light of his own unlawful conduct giving rise to the allegations of his Complaint.

<u>THIRTEENTH DEFENSE</u>

Plaintiff's claims are barred by the voluntary payment doctrine codified at O.C.G.A. § 13-1-13.

<u>FOURTEENTH DEFENSE</u>

Plaintiff was afforded a due process right to a hearing to contest liability and the associated civil monetary penalty and processing fee, but waived that right by foregoing the hearing, failing to contest liability or the associated civil monetary penalty and processing fee, and voluntarily paying the civil monetary penalty and processing fee.

<u>FIFTEENTH DEFENSE</u>

Plaintiff cannot show justifiable reliance upon any act or omission of RedSpeed, or of anyone for whom RedSpeed would bear liability.

<u>SIXTEENTH DEFENSE</u>

Plaintiff has failed to properly plead his request for declaratory relief, and same is barred by the Georgia Constitution.

<u>SEVENTEETH DEFENSE</u>

Defendant reserves the right to assert any and all additional defenses as may be determined to be applicable during the course of this action.

Defendant responds to Plaintiff's allegations as follows:

3

To the extent the unnumbered introductory paragraph of the Complaint contains any allegation of fact to which a response is required, such allegations are denied.

## NATURE OF THE ACTION

1.

This is a class action for refund of unauthorized and excessive fees levied and collected by Defendant Redspeed Georgia, LLC (Redspeed) not permitted by O.C.G.A. § 40-14-18 (the "School Zone Electronic Enforcement Statute") and to challenge the validity of the contract between the City of Wrens and Redspeed. The School Zone Electronic Enforcement Statute provides for maximum electronic processing fees and specific fines that may be collected as civil monetary penalties for excessive speed in an authorized school zone by governing bodies and further directs how the funds must be spent. Redspeed is a private, for-profit LLC. It is not a governing body, nor is it an agent of a governing body nor an agent of a law enforcement agency. Redspeed has disregarded the statute, and is collecting unauthorized revenue, wrongfully retaining revenue, imposing unsubstantiated "electronic processing fees," "license reader module" fees and unauthorized credit card usage fees against named Plaintiff and the prospective Class Members in violation of Georgia law.

**Response: RedSpeed admits that it is a for-profit business entity, not a governmental entity, and that Plaintiff seeks to bring a class action by individuals driving at excessive speeds in school zones but otherwise denies the allegations set forth in this Paragraph.**

2.

Georgia law does not allow private, for-profit corporations to share on a percentage-basis fines and penalties imposed upon its citizens for violations of criminal statutes, nor does it authorize a private, for-profit LLC to masquerade as a law enforcement agency and thereby deceptively hide the fact that a large portion of the solicited monies are being retained by the undisclosed private, for-profit LLC. Such conduct is illegal, fraudulent, and actionable under the Georgia RICO statute.

**Response: Paragraph 2 states a legal conclusion to which no responses is required.  To the extent a response is needed, RedSpeed denies Plaintiff's characterization of both the facts and law as asserted in this Paragraph.**

## PARTIES JURISDICTION AND VENUE

3.

Plaintiff is a resident and citizen of Chatham County, Georgia, and was issued a "Notice of School Speed Violation" under the "School Zone Electronic Enforcement Statute" on November 17, 2023, in Wrens, Jefferson County, Georgia.

**Response: RedSpeed admits Plaintiff received a citation for speeding in a school zone in Wrens, Georgia on November 17, 2023.  Redspeed lacks sufficient knowledge or information to admit or deny the remaining allegations in this Paragraph and therefore denies same.**

4.

Defendant Redspeed Georgia, LLC (Redspeed) is a Georgia Limited Liability Company. It is a citizen of the State of Georgia within the meaning of 28 U.S.C. § 1332(c)(1). Redspeed may be served through its registered agent, CT Corporation, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805. Redspeed operates a Speed Photo Enforcement System (SPE) within school zones in numerous Georgia counties, including Jefferson County. As such, it has elected to be subject to the general jurisdiction of the courts of Georgia, including this Court.

**Response: RedSpeed admits that it is a Georgia Limited Liability Company in the State of Georgia and may be served through its registered agent, CT Corporation, 289 S. Culver Street, Lawrenceville, Georgia 30046-4805. RedSpeed further admits that it operates a Speed Photo Enforcement System (SPE) within school zones in numerous Georgia counties, including Jefferson County.  RedSpeed denies the remaining allegations of this Paragraph.**

**5.**

Defendant City of Wrens, Georgia is a municipal [sic] in Jefferson County, Georgia. Defendant City of Wrens has a contract with Defendant Redspeed for the operation of a Speed Photo Enforcement System in Wrens, Georgia. This action challenges the validity of that contract. The

City of Wrens is therefore a necessary party. Pursuant to O.C.G.A. § 9-l 1-4(e)(5), the City of Wrens

may be served by service upon its City Administrator, Arty Thrift, at his office at 401 East Broad

Street, Wrens, Georgia 30833.

**Response:  RedSpeed admits that Defendant City of Wrens, Georgia is a municipality in
Jefferson County, Georgia. RedSpeed further admits that Defendant City of Wrens has a
contract with Defendant RedSpeed for the operation of a Speed Photo Enforcement System in
Wrens, Georgia.  The remaining allegations state legal conclusions to which no response is
required.  To the extent a response is needed, RedSpeed denies all remaining allegations.**

**6.**

Venue is proper in Jefferson County. The events or omissions giving rise to Plaintiffs claims

occurred in this County including wrongfully extracting $84 from Plaintiff Dunn not authorized by

the School Zone Electronic Enforcement Statute through fraudulent and deceptive conduct as set

forth herein.

**Response:  RedSpeed admits venue is proper and that Plaintiff unlawfully drove at an
excessive speed in a school zone in Jefferson County, Georgia.  RedSpeed denies the remaining
allegations in this Paragraph.**

## FACTUAL BACKGROUND

### Overview

**7.**

On or about November 17, 2023, Plaintiff Jonathan Dunn received a "Notice of School Speed

Violation" that purports to be from the City of Wrens Police Department. The violation states that a

vehicle registered to Jonathan Dunn was issued a notice of violation of O.C.G.A. § 40-14-18 for

excessive speed in a school zone. More specifically, the notice of violation states that a camera took

photographs of Plaintiffs vehicle traveling 61 miles per hour in a school zone with a speed limit of

45 miles per hour. A copy of the "Notice of School Speed Violation" is attached hereto as Exhibit "A".

**Response: RedSpeed answers that the notice referenced in Paragraph 7 and attached to Plaintiff's complaint speaks for itself. RedSpeed denies any characterization of the notice and and any remaining allegations of this Paragraph.**

8.

The "Notice of School Speed Violation" states a 2013 BMW registered to Jonathan Dunn was photographed violating the "School Zone Electronic Enforcement Statute" and as the registered owner of the vehicle, Plaintiff Dunn was responsible for a civil monetary penalty. The civil monetary penalty set forth on the violation was $80.00 even though the statute only authorizes a civil penalty of $75.00 for the first offense. O.C.G.A. § 40-14-18(b)(l). Redspeed included its "electronic processing fee" as part of the "civil penalty."

**Response: RedSpeed states that the notice referenced in Paragraph 8 of Plaintiff's complaint speaks for itself. RedSpeed denies Plaintiff's characterization of the notice and any remaining allegations of this Paragraph.**

9.

Redspeed did not send to Plaintiff "a copy of a certificate sworn to or affirmed by a certified peace officer" that complies with Georgia law and the mandate of O.C.G.A. § 40-14-18(b)(2)(D). On information and belief, no officer was administered an oath by a person authorized to administer oaths verifying the violation asserted and mailed by Redspeed to Plaintiff Dunn, a requirement of Georgia law. The statement to the contrary in the citation that Redspeed mailed to Plaintiff Dunn was materially false and deceptive, and was used to extract money from the Plaintiff in violation of Georgia law, including O.C.G.A. § 16-8-3. On information and belief, other solicitations for money sent by Redspeed were similarly deficient and deceptive.

**Response: Denied.**

10.

Plaintiff Dunn paid the $80.00 penalty set forth on the Notice of School Speed Violation solicited by Redspeed on December 4, 2024, and was charged and paid an additional $4.00 for the use of a credit card for payment. Plaintiff's total payment was $84.00. The payment was processed and retained by Redspeed at its home office in Lombard, Illinois through Redspeed's payment website "www.SpeedViolations.com." This website is accessible to recipients who received Notices of Violation. A true and correct copy of the receipt indicating payment is attached hereto. as Exhibit "B".

**Response:  RedSpeed admits that Plaintiff voluntarily paid $84, which included electronic processing fees.  RedSpeed further admits that it provides and maintains a website for electronically processing payments of citations.  RedSpeed denies the remaining allegations of this Paragraph.**

11.

The payment was not voluntary. All the facts were not known by Mr. Dunn. Plaintiff Dunn had the misplaced confidence that the violation was from the City of Wrens Police Department. Redspeed used deception of Mr. Dunn and others to collect unauthorized revenue. The payment was compelled under threat of a lien on the title to Mr. Dunn's automobile and deprivation of the use of his automobile and his rights as owner of his automobile.

**Response: RedSpeed denies that Plaintiff's payment was not voluntary.  Redspeed lacks sufficient knowledge or information to admit or deny the allegations in this Paragraph about Plaintiff's state of mind at the time of payment and therefore denies same.  RedSpeed further denies any remaining allegations in this Paragraph.**

## The School Zone Electronic Enforcement Statute

12.

The School Zone Electronic Enforcement Statute became effective on July 1, 2018. A true and correct copy of the School Zone Electronic Enforcement Statute is attached as Exhibit "C".

**Response:  RedSpeed admits that the effective date of the School Zone Electronic Enforcement Statute is July 1, 2018 and states that the statute speaks for itself.  The Paragraph contains no other factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the remaining allegations in this Paragraph.**

13.

The School Zone Electronic Enforcement Statute provides:

[T]he speed limit within any school zone as provided for in Code Section 40-14-8 and marked pursuant to Code Section 40-14-6 may be enforced by using photographically recorded images for violations which occurred only on a school day during the time in which instructional classes are taking place and one hour before such classes are scheduled to begin and for one hour after such classes have concluded when such violations are in excess of ten miles per hour over the speed limit.

O.C.G.A. § 40-14-18(a)(l).

**Response: RedSpeed states that the statute speaks for itself.  This Paragraph contains no other factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the remaining allegations in this Paragraph.**

14.

The School Zone Electronic Enforcement Statute further provides:

The owner of a motor vehicle shall be liable for a civil monetary penalty to the governing body of the law enforcement agency provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard of disobedience was not otherwise authorized by law. The amount of such civil monetary penalty shall be $75 for a first violation and $125 for a second or any subsequent violation, in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00...

*Id*. at (b)(l).

**Response: RedSpeed states that the statute speaks for itself.  This Paragraph contains no other factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the remaining allegations in this Paragraph.**

15.

Paragraph (b)(2) of the School Zone Electronic Enforcement Statute provides:

A law enforcement agency authorized to enforce the speed limit of a school zone, or an agent working on behalf of a law enforcement agency or governing body, shall send by first class mail addressed to the owner of the motor vehicle within 30 days after obtaining the name and address of the owner of the motor vehicle but no later than 60 days after the date of the alleged violation:

(A)     A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid;

(B)     An image taken from the photographically recorded images showing the vehicle involved in the infraction;

(C)     A website address where photographically recorded images showing the vehicle involved in the infraction and a duplicate of the information provided for in this paragraph may be viewed;

(D)     A copy of a ce1iificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically record images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

(E)     A statement of the inference provided by paragraph (4) of this subsection and of the means specified therein by which such inference may be rebutted;

(F)     Information advising the owner of the motor vehicle of the manner in which liability as alleged in the citation may be contested through an administrative hearing; and,

(G)     A warning that failure to pay the civil monetary penalty or to contest liability in a timely manner as provided for in subsection (d) of this Code section shall waive any right to contest liability.

*Id.* at b(2)(A)-(G)

**Response: RedSpeed states that the statute speaks for itself.  This Paragraph contains no other factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the remaining allegations in this Paragraph.**

16.

Paragraph (m) of said statute provides:

§ 40-14-18. Enforcement; photographically recorded images; civil penalty

(m) The money collected and remitted to the governing body pursuant to paragraph (1) of subsection (b) of this Code section shall only be used by such governing body to fund local law enforcement or public safety initiatives. This subsection shall not preclude the appropriation of a greater amount than collected and remitted under this subsection.

O.C.G.A. § 40-14-18(111).

**Response: RedSpeed states that the statute speaks for itself.  This Paragraph contains no other factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the remaining allegations in this Paragraph.**

17.

Redspeed has prepared and entered into substantially similar contracts with numerous Georgia counties and local governments to perform automated enforcement of the "School Zone Electronic Enforcement Statute". Redspeed owns, possesses, implements, and operates the SPE System including equipment and cameras. Redspeed provides an automated, web-based processing program for all Notices of School Speed Violations on the documents mailed to purported violators.

**Response: RedSpeed admits to preparing and entering into a contract with the City of Wrens, as with other local governments.  RedSpeed further admits that it owns and implements the SPE System and that it facilitates a web-based system for electronically processing payments of citations.  RedSpeed denies the remaining allegations set forth in this Paragraph.**

18.

Redspeed's contracts with counties and cities in Georgia provide in pertinent part the following summarized provisions:

7.  FEES AND PAYMENT:

GOVERNING BODY shall pay for all equipment, services and maintenance based on the fee schedule in Exhibit B, Schedule 1 ("Fees").
.  .  .

10.  OWNERSHIP OF SYSTEM:

11

It is understood by GOVERNING BODY that the SPE System being installed by REDSPEED is, and shall remain, the sole prope1iy of REDSPEED, unless separately procured from REDSPEED through a lease or purchased transaction.

The SPE Systems are provided to GOVERNING BODY only under the terms and for the term of this Agreement.

. . .

18.    NO AGENCY:

Except as specifically provided otherwise herein, REDSPEED is an independent contractor under the Agreement and acts as an agent of GOVERNING BODY. Personal services shall be provided by employees of REDSPEED who shall be subject to supervision by REDSPEED, and not as officers, employees or agents of the GOVERNING BODY. Personnel policies, tax responsibilities, social security, health insurance, employee benefits, purchasing policies and other similar administrative procedures applicable to services rendered under this Agreement shall be those of REDSPEED.

**Response: RedSpeed admits having contracts with local governments in Georgia containing the same or similar provisions as those in Paragraph 18 but denies Plaintiff's characterization of those provisions.  RedSpeed further denies any remaining allegations in this Paragraph.**

19.

Redspeed collects and retains 33% of the civil monetary fine and an additional 2% for the license plate reader per paid violation. Schedule 1, Service Fee Schedule, to the Redspeed contracts provides:

GOVERNING BODY agrees to pay REDSPEED the Fee(s) as itemized below:

1.   Description of Pricing

Fee includes all costs required and associated with SPE system installation, maintenance and ongoing field and back-office operations. Includes camera equipment, installation, maintenance, violation processing services, DMV records access, mailing of required documents, lockbox and credit card processing services, call center support for general program questions, public awareness program support, and access to web based SPE System for Ce1iified Peace Officer review:

33% service fee for each paid violation

2.   Optional Services

License Plate Reader (LPR) module: Additional 2% service fee for each paid violation per approach

Copies of several Redspeed contracts with governmental entities in Georgia are attached as Exhibit "D" .

**Response: RedSpeed admits having contracts with local governments in Georgia containing the same or similar provisions as those in Paragraph 19 and states that the contracts referenced in Paragraph 19 speak for themselves.  RedSpeed denies the remaining allegations in this Paragraph.**

20.

In addition to taking a percentage of the total amount collected for each violation, Redspeed charges each violator who pays by credit card a convenience fee of $4.00. Redspeed retains the credit card convenience fees. There is no statutory authorization for this charge.

**Response: RedSpeed admits to charging additional electronic processing fees for violators who choose to pay their citation by credit card.  RedSpeed denies the remaining allegations set forth in this Paragraph.**

21.

Pursuant to its SPE System agreements, Redspeed is not an agent of the City of Wrens nor of the Wrens Police Department.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

22.

The Redspeed contracts are void as forbidden gratuities in that the City of Wrens is required to pay in full for equipment owned by Redspeed but Redspeed retains ownership after being paid in full for the equipment by the City of Wrens in violation of Georgia Constitution, Art. 3, Sec. 6, 6. Redspeed has wrongfully and deceptively, and without authority, collected funds from the named Plaintiff and members of the Class that it has retained and applied to its charges for the cost of Redspeed's equipment that are not authorized by O.C.G.A. § 40-14-18 in violation of O.C.G.A. §16-8-3 and Art. 3, Sec. 6, 6 of the Georgia Constitution.

13

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

23.

The Redspeed contracts are void in that they delegate law enforcement duties to employees of a private, for-profit corporation compensated on a fee system in violation of O.C.G.A. § 40-14- 2 and the Due Process Clause of the Georgia Constitution, Act. 1, Sec. 1, 1. Redspeed has wrongfully and deceptively, and without authority, collected and retained funds from the named Plaintiff and members of the Class.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

24.

Substantially similar Speed Photo Enforcement System Agreements provide that Redspeed shall collect and accumulate all payments received under the guise of payments to law enforcement agencies on a monthly basis and provide payment of a portion of the collected funds to the city or county entity on or before the 15th day of the following month. The notices of violations issued and mailed, and the collection of the penalties and fees are standardized and automated. The name of the law enforcement agency in the county or municipality under contract is inserted into the notice of violation by Redspeed. Although the "City of Wrens" is identified on the notice of violation as the recipient of payment, the mailing address for all payments by check are to Redspeed's Post Office Box in Atlanta, Georgia though such fact is not disclosed by Redspeed. This non-disclosure is deceptive and utilized to extract money from Plaintiff and Class Members that they do not owe to Redspeed, in violation O.C.G.A §§ 16-8-3 and 16-10-23.

**Response: RedSpeed admits having entered into substantially similar Speed Photo Enforcement System Agreements with local governments pursuant to O.C.G.A. § 40-14-18. RedSpeed denies Plaintiff's characterization of those agreements and denies any remaining allegations set forth in this Paragraph.**

**25.**

14

As part of the Speed Photo Enforcement System Agreements, Redspeed assumes responsibility for mailing the "Notice of School Speed Violation" to the registered owner of a vehicle that has been deemed in violation of O.C.G.A. § 40-14-18, even though Redspeed is not a law enforcement agency or an agent of a law enforcement agency or an agent of a governing body as required by O.C.GA. § 40-14-18(b)(2). Included on the "Notice of School Speed Violation" prepared by Redspeed is a penalty amount and payment instructions. Redspeed does not disclose its name, its involvement or the fact that the solicited payments go to Redspeed and not to the law enforcement agency or local government that is named in the violation as the payee of the solicited civil monetary penalty of $80.00. Redspeed thus deceptively hides its identity and illegally impersonates itself as a law enforcement officer in violation of O.C.G.A. § 16-10-23. Redspeed thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiff and Class Members in violation of O.C.G.A. §§ 16-8-3, and 16-10-23.

**Response: RedSpeed admits that the notices of violations state the penalty amount and provide payment instructed.  RedSpeed denies as stated the remaining allegations.**

26.

Each time Redspeed mails a notice of violation to members of the Class in the form of Exhibit "A," it is a separate violation of O.C.G.A. § 16-10-23 and a separate and related act of racketeering activity. O.C.G.A. § 16-14-3(5)(A)(xxiii). Each use of the U.S. Mails by Redspeed is a part of a pattern of racketeering activity.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

27.

Pursuant to the School Zone Electronic Enforcement Statute the "civil monetary penalty [for violation of the School Zone Electronic Enforcement Statute] shall be $75.00 for a first violation and $125.00 for a second or any subsequent violation, in addition to fees associated with the electronic

15

processing of such civil monetary penalty which shall not exceed $25.00 O.C.G.A. § 40-14-18(b)(l) (emphasis added). The statute provides a maximum of $25 for the electronic processing of the civil monetary penalty.

**Response: In response to Paragraph 27, RedSpeed states that the statute speaks for itself. Paragraph 27 also states a legal conclusion to which no response is required.  To the extent a response is needed to any allegations in this Paragraph, RedSpeed denies the allegations.**

28.

The electronic processing fee of the civil monetary penalty assessed to Plaintiff and Class Members exceeds the statutory amount authorized by O.C.G.A. § 40-14-18(b)(l) in that it is an automatic, unsubstantiated charge for services purportedly already reimbursed to Redspeed in the excessive, unauthorized percentages it retains for each paid violation. Redspeed deceptively demanded $80.00 as the violation penalty. Redspeed levies an additional charge for the processing of credit card payments for the violation penalty for which there is no statutory authorization. These facts were not disclosed to Plaintiff or Class Members. Redspeed thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiff and Class Members in violation of O.C.G.A. §§ 16 8-3, and 16-10-23.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

29.

Plaintiff Jonathan Dunn's "Notice of School Speed Violation" shows the following:



Notice #: 2124400458864276
PIN: 4030
View Images and submit payment at
https://secure.speedviolation.com
Amount Due: **$80.00** ($75.00 penalty, $5.00 e-processing fee)
Payment or Contest Must Be Received By: 12/27/2023

**Response: RedSpeed states that the notice referenced in Paragraph 29 speaks for itself and denies any remaining allegations set forth in this Paragraph.**

30.

The School Zone Electronic Enforcement Statute does not authorize an automatic charge for all citations or notices of violation of an unsubstantiated electronic processing fee regardless of actual electronic processing costs. Further, the "Notice of School Speed Violation" issued to Plaintiff misstates that the civil monetary penalty is $80.00 even though the statute only allows for a $75 civil monetary penalty. The five-dollar charge for "e-processing" is unsubstantiated for the mailing of a copy of a citation/violation to an alleged violator.

**Response: In response to Paragraph 30, RedSpeed states that the statute speaks for itself. Paragraph 30 also states legal conclusions to which no responses are required.  To the extent responses are needed, RedSpeed denies those allegations.  RedSpeed further denies all remaining allegations.**

31.

Such facts, as set forth above, were not disclosed to Plaintiff and Class Members, rendering the written statements of Redspeed fraudulent and deceptive. Redspeed has thereby fraudulently and deceptively, and without authority, collected and retained money from Plaintiff and Class Members not authorized by O.C.G.A. § 40-14-18 and in violation of O.C.G.A. §§ 16-8-3, and 16- 10-23.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

32.

Redspeed deceptively posed as the "City of Wrens Police Department" and affixed an image of a law enforcement badge to the violations without disclosing Redspeed's true identify and without disclosing that a substantial portion of the solicited funds were going to a private, for-profit corporation and not to fund local law enforcement or public safety initiatives, in violation of

17

O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clause of the Georgia Constitution.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

33.

Redspeed charged and collected $5.00 from Plaintiff Jonathan Dunn as an "electronic processing fee" and an additional $4.00 for electronic processing of his credit/debit card without statutory authority and without disclosing this lack of authority or factual support for it to collect and retain any of the charges. Redspeed did not disclose that the 33% of the $80 "Civil Monetary Penalty" it collected from Mr. Dunn under the guise of being the "City of Wrens Police Department" was money illegally being retained by Redspeed, a for-profit LLC. Redspeed used the U.S. Mails in the execution of this fraudulent scheme in violation of O.C.G.A. §§ 16-8-3, 16- 10-23, and 40-14-18(m) and the Due Process Clause of the Georgia Constitution.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

34.

Redspeed wrongfully, fraudulently and deceptively extracted $84.00 from Mr. Dunn in violation of O.C.G.A. §§ 16-8-3, 16-10-23 and 40-14-18.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

35.

Under the Speed Photo Enforcement System, Redspeed determines the locations for the Speed Photo Enforcement equipment. Upon information and belief, Redspeed does not install the SPE systems in areas with the highest number of school days or the highest number of school hour vehicle crashes. Instead, SPE systems are installed in school zones with the highest traffic volume. Redspeed's SPE System agreements have a built-in incentive to maximize the issuance of citations

while making public safety a less direct consideration. O.C.G.A. § 40-14-18 specifically provides that the $25 processing fee is to electronically process the civil monetary penalty. It does not provide that the $25 processing fee is for costs to process the citation nor collect revenue. O.C.G.A. § 40-14-18(6)(1).

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

## CLASS ACTION ALLEGATIONS

### 36.

This action is brought by Named Plaintiff as a class action, individually and on behalf of all prospective Class Members, under the provisions of O.C.G.A. 9-11-23.

**Response: RedSpeed admits that Plaintiff seeks to bring a class action. RedSpeed denies the remaining allegations of this Paragraph.**

### 37.

Plaintiff seeks certification of the following Class:

All Georgia residents who have been mailed a "Notice of School Speed Violation" pursuant to the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18 by Redspeed, Georgia LLC from July 1, 2018, to the date of certification of a class.

**Response: RedSpeed denies that such proposed class would qualify for certification under Georgia law and denies any remaining allegations in this Paragraph.**

### 38.

Excluded from the Class are Defendant; officers, directors and employees of Redspeed; any entity in which Redspeed has a controlling interest, is a parent or subsidiary, or which is controlled by Redspeed; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Redspeed.

**Response: RedSpeed admits that any affiliated entities could not be members of Plaintiff's proposed class but denies the remaining allegations set forth in this Paragraph.**

### 39.

Plaintiff, individually and on behalf of the Class Members, seeks a refund of the excessive amounts charged and collected as the "electronic processing fee" or "processing fee," all funds collected that were retained by Redspeed, all credit card processing charges collected and retained by Redspeed, with all sums retained by Redspeed, trebled, plus exemplary damages and expenses of litigation, including reasonable attorney fees.

**Response: RedSpeed denies that Plaintiff is entitled to any refund and further denies the remaining allegations set forth in this Paragraph.**

40.

Certification of Plaintiffs claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using much the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

41.

The identification of Class Members is readily available because Redspeed has access to the names and addresses for all Class Members to whom it has mailed a Notice of School Speed Violation. The names and addresses of the Georgia vehicle owners who have received a Notice of Violation from Redspeed can be used to provide class notice to Class Members. According to the Redspeed contracts, Redspeed provides an automated, web-based program for all valid violations that it has sent to Class Members, including image processing, mailing addresses, monies collected from each Class Member and money retained by Redspeed.

**Response: RedSpeed admits that violators can be readily identified but denies Plaintiff's characterization of the alleged facts in Paragraph 41. RedSpeed also denies that any identifying information can be used to provide notice of the proposed class. RedSpeed further denies any remaining allegations set forth in this Paragraph.**

42.

*Numerosity*. The requirement of numerosity under O.C.G.A. 9-11-23(a)(l) is met because the state-wide Class is so numerous that joinder of all members would be impractical. Redspeed mails hundreds of notices of violations weekly to registered vehicle owners in Jefferson County and other counties in Georgia.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

43.

*Commonality and Predominance*. The requirements of O.C.G.A. § 9-l 1-23(a)(2) and (b)(3) are met because this case involves common questions of law and fact that predominate over any questions that affect only individual Class Members. Common questions of law and fact include: (1) The validity of Redspeed's form contract; (2) Whether Redspeed employees meet the commands of O.C.G.A. § 40-14-2; (3) Whether Redspeed's class-wide procedures meet the commands of O.C.G.A. § 40-14-2; (4) Whether Redspeed engaged in wrongful conduct in charging, collecting and retaining unsubstantiated and excessive electronic fees from Class Members allegedly under O.C.G.A. § 40-18-14; (5) Whether Redspeed wrongfully retained over one third of penalties it collected; (6) Whether Redspeed wrongfully charged, collected and retained credit card processing fees not authorized by the statute; (7) Whether Redspeed collected processing fees in excess of any electronic processing costs; (8) Whether the fact that Redspeed charges for the entire cost of its camera systems without transferring title upon receiving full payment constitutes a forbidden gratuity; (9) Whether Redspeed intentionally collected 33-35% and more of the civil monetary penalty in excess of any costs incurred for the SPE System; (10) Whether Redspeed's conduct was unlawful and suppo1is an action for money had and received, and/or theft by taking; (11) Whether Redspeed fraudulently has held itself out as being various law enforcement agencies while deceptively not disclosing that the solicited penalties were going to Redspeed, a private, for-profit

corporation that was retaining for itself a large portion of the collected funds; (12) Whether Redspeed is a racketeer-influenced, corrupt organization engaged in acts of mail fraud, impersonation of law enforcement and other public officers and theft by deception; (13) Whether Plaintiff and the Class Members suffered injury including a monetary loss; (14) Whether Plaintiff and Class Members are entitled to recover sums wrongfully collected and retained by Redspeed; (15) whether Plaintiff and Class Members are entitled to recover punitive damages; and (16) Whether Plaintiff and Class Members are entitled to declaratory relief.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

44.

*Typicality*. The requirement of O.C.G.A. § 9-11-23(a)(3) is met because the claims of Named Plaintiff are typical of the claims of other Class Members in that Plaintiff was mailed a violation identical in form and that included a flat "Processing Fee" as part of the total civil penalty based upon the same, programmed/automated/computerized conduct of Redspeed in causing to be mailed notices of violations that all included flat rate "Processing Fees," issuing collection letters and reporting delinquencies for failure to pay that result in a referral to the Department of Revenue. The Plaintiff and all members of the Class were injured through the same misconduct of Redspeed and asse1i the same claims for relief. There is no conflict between Named Plaintiff and Class Members with respect to this action, or with respect to the claims for relief herein set forth.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

45.

*Adequacy*. The requirement of O.C.G.A. § 9-l 1-23(a)(4) is satisfied because Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Plaintiff is a member of the Class he seeks to represent. Plaintiff is committed to pursuing this matter against Redspeed on a

state-wide basis to obtain relief for the Class Members. Plaintiff has no known interests that are antagonistic to or conflict with the interests of other Class Members.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

46.

Counsel for Plaintiff and the proposed Class Members are competent and experienced in litigating class actions and complex litigation. Prior class action cases successfully resolved by Plaintiff's Counsel include nationwide class actions with over one hundred thousand class members and numerous class actions for environmental property damage and consumer fraud. Counsel have litigated class actions in both state and federal courts in Georgia, Florida, Pennsylvania, Rhode Island, Massachusetts and Maine. Plaintiff and his Counsel will vigorously prosecute this case and will fairly and adequately protect the Class's interests.

**Response: Redspeed lacks sufficient knowledge or information to admit or deny the allegations in this Paragraph and therefore denies same.**

47.

*Superiority*. The requirements of O.C.G.A. § 9-l l-23(b)(3) are satisfied because this class action is superior to other available methods for fair and efficient adjudication. Treatment as a class action will resolve common questions of law and fact and is superior to numerous individual actions or piecemeal litigation. Without a class action, Class Members may be deterred by the cost of litigating their individual claims, and therefore would have no effective remedy in the absence of class treatment. Plaintiff and Class Members have been harmed by Redspeed's conduct and litigating the relevant issues in a class format will reduce the possibility of repeated litigation regarding Redspeed's conduct.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

48.

There are no apparent impediments at this time that would preclude class treatment. Common questions of law and fact predominate over any questions affecting individual Class Members. Class treatment is superior to the likelihood of piecemeal litigation that would burden the courts. Class treatment affords the Class Members an opportunity to seek relief collectively when they otherwise would be unable to expend the cost of litigation to obtain relief for Redspeed's widespread wrongful collection of funds from Class Members.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

49.

This action is also properly maintained as a class action pursuant to O.C.G.A. §§ 9-ll-23(b)(1) and 9-11-23(b)(2). The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying standards of conduct for Redspeed. As a class action, the issues can be resolved in a way that conserves judicial resources, parties' resources and protects the rights of all Class Members. Relief could be ordered including declaratory and injunctive relief among different courts that could result in different standards of conduct for Redspeed within Georgia. The prosecution of separate actions by Class Members would create the risk of adjudications among Class Members that would be dispositive of the interests and rights of others not parties to this action, or that would substantially impair or impede their ability to protect their interests.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

50.

There are issues appropriate for certification under O.C.G.A. § 9-l l-23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this case and the parties' interests, including the validity of Redspeed's contracts with

the City of Wrens and other local governments, whether Redspeed engaged in wrongful conduct in charging and collecting excessive standardized fees from every Class Member; whether such conduct was unlawful under Georgia law, whether such conduct constitutes theft by taking; whether such conduct is fraudulent and deceptive; and whether Plaintiff and Class Members are entitled to recover refunds and damages.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

<u>**COUNT I - MONEY HAD AND RECEIVED**</u>

51.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs one through fifty as if set forth herein verbatim.

**Response:  RedSpeed incorporates by reference its responses to Paragraphs 1 through 50 of the Complaint as its Response to Paragraph 51 of Plaintiff's Complaint.**

52.

Redspeed entered into contracts with counties in Georgia to install, operate, monitor, prepare and mail notices of violations, collect or cause the collection of civil penalties for violations of the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18.

**Response: RedSpeed admits entering into contracts with local governments in Georgia pursuant to O.C.G.A. § 40-14-18 and states that the contracts speak for themselves.  RedSpeed denies the remaining allegations of this Paragraph.**

53.

This statute provides for a maximum electronic processing fee and specific fines that may be collected by governmental entities as a civil monetary penalty for excessive speed in an authorized school zone.

**Response: Paragraph 53 states legal conclusions to which no response is required.  To the extent a response is needed, RedSpeed admits that the statute authorizes electronic processing fees of $25.  RedSpeed states that the statute speaks for itself and denies any**

**mischaracterization of the statute. RedSpeed further denies any remaining allegations set forth in this Paragraph.**

54.

Redspeed overcharged, collected and retained from Plaintiff and Class Members, excessive, unauthorized and illegal penalties, electronic processing fees and credit card fees that were not incurred, authorized or allowed under the School Zone Electronic Enforcement Statute.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

55.

Redspeed implemented a standardized billing and collection practice that automatically added a flat rate processing fee to every violation regardless of any actual electronic processing costs incurred by Redspeed or a governmental entity for electronic processing of the civil monetary penalty. Electronic processing fees of between $5.00 and $25.00 are excessive charges for the services rendered by Redspeed.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

56.

Redspeed has no lawful claims to the "electronic processing fees" it collected from Plaintiff and Class Members.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

57.

Redspeed wrongfully collected from Plaintiff and Class Members and retained for itself more than 33% to 35% of funds that were only to be used "to fund local law enforcement or public safety initiatives," as mandated by O.C.G.A. § 40-14-18(m). Moreover, the 33% to 35% is but an illegal gratuity as the excessive "electronic processing fee" fully compensates Redspeed for its services.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

58.

Redspeed wrongfully charged Plaintiff Dunn and other Class Members and retained for itself charges for use of credit cards not authorized by law.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

59.

Redspeed has been unjustly enriched at the expense of Plaintiff and Class Members.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

60.

The Plaintiff and Class Members are entitled to a refund of all funds wrongfully collected and retained by Redspeed. Demand has been made for same. Further demand would be futile.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

61.

The Plaintiff and Class Members are entitled to expenses of litigation including reasonable attorney fees due to the bad faith conduct of Redspeed. O.C.G.A. § 13-6-11.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

62.

Redspeed's actions showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care that would raise a presumption of conscience indifference to consequences. Redspeed is liable to the named Plaintiff and all members of the Class for exemplary damages in an amount sufficient to punish Redspeed and deter Redspeed from further like wrongful conduct.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

## COUNT II - GEORGIA RICO

63.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs one through fifty as if set forth herein verbatim.

**Response:  Redspeed incorporates by reference its responses to Paragraphs 1 through 50 of the Complaint as its Response to Paragraph 63 of Plaintiff's Complaint.**

64.

This Count is brought under the Georgia Racketeer Influenced and Corrupt Organizations Act. O.C.G.A. § 16-14-1, et seq. This Court has jurisdiction of this claim.  The Plaintiff brings this claim on behalf of himself and all members of the Class.

**Response: RedSpeed admits that Plaintiff seeks to bring a claim under the Georgia Racketeer Influenced and Corrupt Organizations but denies all other allegations in this Paragraph.**

65.

The conduct of Redspeed as set forth above is in violation of the Georgia Racketeer Influenced and Corrupt Organizations Act in that the Defendant has carried out a pattern of racketeering prohibited by O.C.G.A. § 16-14-3.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

66.

Redspeed has engaged in a pattern of racketeering activity by inflating electronic processing fees, retaining percentages of the civil monetary penalty which it is not authorized to retain, causing notices of violations to be mailed to Plaintiff and Class Members as though Redspeed is a law enforcement official.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

67.

Redspeed, under its agreement with the City of Wrens, has been engaged in this pattern of conduct since the contract was signed by the parties. Members of the proposed Class residing in

28

other counties and cities in Georgia with Redspeed agreements have been subjected to this pattern of conduct since July 1, 2018.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

68.

The Plaintiff and Class Members are the intended victims of this pattern of racketeering activity in that they have been mailed a notice of violation by Redspeed and have been subjected to collection efforts by Redspeed for civil monetary penalties and excessive fees.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

69.

The Plaintiff and Class Members were misled by Redspeed and paid penalties and fees misrepresented on notices of violations as owed to governmental agencies when, in fact, such sums were being collected and retained by Redspeed illegally.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

70.

The statute provides for a maximum fee that shall not exceed $25 for the electronic processing of the civil monetary penalty. The statute does not expand the meaning and scope of the civil monetary penalty to include Redspeed's costs associated with preparing the notices of violations, mailing the notices and collecting the civil monetary penalty.

**Response: Paragraph 70 states legal conclusions to which no response is required.  To the extent a response is needed, RedSpeed admits that the statute authorizes electronic processing fees of $25. RedSpeed states that the statute speaks for itself and denies any mischaracterization of the statute.  RedSpeed further denies any remaining allegations set forth in this Paragraph.**

71.

The percentages retained by Redspeed from the statutory civil monetary penalty exceed all costs for the SPE Systems and costs associated with processing the violations.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

72.

As a result of the racketeering activity, Redspeed has profited millions of dollars by collecting excessive electronic processing fees, retaining unauthorized percentages of the statutory civil monetary penalty and charging additional credit card processing fees on top of the electronic processing fees for the civil monetary penalty.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

73.

Redspeed knew its representations as set forth in the violations it mailed to Plaintiff and Class Members were false and would cause Plaintiff and Class Members to pay such penalties and fees.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

74.

Redspeed has attempted to collect and has collected monies from the members of the Class under false and misleading representations and omissions and through the wrongful impersonation of law enforcement officers and agencies, all in violation of O.C.G.A. §§ 16-8-3, 16-10-23 and 40-14-18(m).

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

75.

The theft by taking, mail fraud, and impersonation of law enforcement have been committed by using standardized methods of doing business and standardized solicitations of money from Class Members in the form of notices of school speed violations and related material.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

76.

In consequence of the unlawful conduct of Redspeed, the named Plaintiff and members of the Class are entitled to damages in an amount equal to three times their actual damages, together with punitive damages and expenses of litigation, including reasonable attorney fees.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

## COUNT III - FRAUD AND DECEIT

77.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs one through fifty as if set forth herein verbatim.

**Response:  Redspeed incorporates by reference its responses to Paragraphs 1 through 50 of the Complaint as its Response to Paragraph 77 of Plaintiff's Complaint.**

78.

The Plaintiff and Class Members were misled by Redspeed and paid penalties and fees misrepresented on violations as owed to law enforcement when, in fact, such sums were being collected and retained by Redspeed illegally. They reasonably relied upon the representations and omissions of Redspeed.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

79.

The statute provides for a maximum fee that shall not exceed $25 for the electronic processing of the civil monetary penalty. The statute does not expand the meaning and scope of

31

the civil monetary penalty to include Redspeed's costs associated with preparing the citation, mailing the citation and collecting the civil monetary penalty.

**Response: Paragraph 79 states legal conclusions to which no response is required.  To the extent a response is needed, RedSpeed admits that the statute authorizes electronic processing fees of $25. RedSpeed states that the statute speaks for itself and denies any mischaracterization of the statute.  RedSpeed further denies any remaining allegations set forth in this Paragraph.**

80.

The percentages retained by Redspeed from the statutory civil monetary penalty exceed all costs for the SPE Systems and costs associated with processing the notices of violations.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

81.

Redspeed has profited fraudulently and deceptively millions of dollars by collecting excessive electronic processing fees, retaining unauthorized percentages of the statutory civil monetary penalty and charging additional credit card processing fees on top of the electronic processing fees for the civil monetary penalty.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

82.

Redspeed knew its representations as set forth on the notices of violations it mailed to Plaintiff and Class Members were false and would cause Plaintiff and Class Members to pay such penalties and fees.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

83.

Redspeed has fraudulently and deceptively attempted to collect and has collected monies from the Plaintiff and members of the Class under false and misleading representations and omissions and through the wrongful impersonation of law enforcement officers and agencies.

**Response: RedSpeed denies the allegations set forth in this Paragraph.**

84.

In consequence of the fraudulent and deceptive conduct of Redspeed, the named Plaintiff and members of the Class are entitled to recover their general and special damages, together with punitive damages and expenses of litigation, including reasonable attorney fees.

**Response: RedSpeed denies the allegations set forth in this Paragraph**

## COUNT IV – DECLARATORY RELIEF

85.

Named Plaintiff realleges and incorporates the allegations set forth in paragraphs one through fifty as if set forth herein verbatim.

**Response: Redspeed incorporates by reference its responses to Paragraphs 1 through 50 of the Complaint as its Response to Paragraph 85 of Plaintiff's Complaint.**

86.

This Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief under O.C.G.A. § 9-4-1, et seq.

**Response: Paragraph 86 states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed denies that Plaintiff is entitled to any relief whatsoever.  RedSpeed further denies any remaining allegations set forth in this Paragraph.**

87.

Redspeed utilizes contracts that contain standard, uniform provisions in its contracts with the City of Wrens and other local governments in Georgia. These provisions include: [omitted]

**Response: RedSpeed admits that its contracts with local governments, such as the City of Wrens, share many of the same or similar provisions to those selectively included in Paragraph 87.**

88.

A contract that lacks material terms or that contains material provisions that are void, illegal or otherwise unenforceable is a void and unenforceable contract in toto.

**Response: Paragraph 88 contains no factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

89.

Article III, Section VI, paragraph VI(a) of the Georgia Constitution prohibits gratuities made by the State of Georgia or any Georgia governmental entities, including local governments to any private entities.

**Response: Paragraph 89 contains no factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

90.

Contracts that provide for gratuities flowing to private entities are void.

**Response:  Paragraph 90 contains no factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

91.

The terms of the Redspeed contract that provide that the City of Wrens must pay Redspeed for the cost of the camera systems, but that Redspeed would continue to own the systems even after the local government has fully paid Redspeed for the system is a gratuity from the City of Wrens to Redspeed that violates the prohibition of gratuities found in Article III, Section VI, paragraph VI(a) of the Georgia Constitution.

**Response: Paragraph 91 states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed states that its contract with the City of Wrens speaks for itself.  RedSpeed further denies any remaining allegations set forth in this Paragraph.**

92.

The provisions regarding full payment of the cost of the systems, but with title to such system remaining with Redspeed, is a material provision of the contracts between Redspeed and the City of Wrens and other local governments in Georgia that renders each of these contracts void and unenforceable. The City of Wrens and other local governments that have fully paid for their camera speed detection systems are entitled to have title to said systems conveyed to the local government.

**Response: Paragraph 92 states a legal conclusion to which no response is required. To the extent a response is needed, RedSpeed states that its contracts with the City of Wrens and other local governments speak for themselves. RedSpeed further denies any remaining allegations set forth in this Paragraph.**

93.

Judicial proceedings in Georgia must meet the commands of the due process clause of the Georgia Constitution, Article I, Section I, paragraph I.

**Response: Paragraph 93 contains no factual allegations requiring a response. To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

94.

Judicial proceedings in the State of Georgia in which significant discretionary actions are undertaken by parties compensated in a manner contingent on the outcome of the proceeding violate the due process clause of the Georgia Constitution.

**Response: Paragraph 94 contains no factual allegations requiring a response. To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

95.

The local governments of Georgia, including counties and municipalities, lack the power to outsource judicial proceedings to private, for-profit corporations compensated based upon the outcome of the proceedings.

**Response: Paragraph 95 contains no factual allegations requiring a response and states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

96.

The contract between Redspeed and the City of Wrens, being in violation of Article I, Section I, paragraph I of the Georgia Constitution, is void and unenforceable.

**Response: Paragraph 96 states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed denies the allegations set forth in this Paragraph.**

97.

The Rules of Professional Conduct of the State Bar of Georgia prohibit employment of expert witnesses that are to be compensated contingent on the outcome of proceedings for which the expert witness services are to be provided. Rule 3.4(b)(3), Georgia Rules of Professional Conduct.

**Response:  Paragraph 97 contains no factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

98.

The provision of the contract between Redspeed and the City of Wrens that provides that Redspeed will provide expert witnesses to testify against those charged with violation of speed laws is in violation of Rule 3.4(b)(3) of the Georgia Rules of Professional Conduct and the Due Process Clause of the Georgia Constitution in that payment to Redspeed for such services are contingent upon the outcome of efforts to enforce alleged violations. This is a material provision of the contract, rendering the contract void and unenforceable.

**Response: Paragraph 98 states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed states that its contract with the City of Wrens speaks for itself.  RedSpeed further denies any remaining allegations set forth in this Paragraph.**

99.

The right to trial by jury in both civil and criminal cases is guaranteed by the Georgia

Constitution. Art. I, Sec. I, para. XI.

**Response: Paragraph 99 contains no factual allegations requiring a response. To the extent a response is required, RedSpeed denies the allegations in this Paragraph.**

100.

The Georgia Constitution further provides:

No person shall be deprived to the right to prosecute or defend either in person or by an attorney that person's own cause in any of the courts of this State.

Art. I, Sec. I, para. 12.

**Response: Paragraph 100 contains no factual allegations requiring a response. To the extent a response is required, RedSpeed denies the allegations in this Paragraph.**

101.

The provisions of the Redspeed form contract, in general and section 19 of such contract

in particular, create a judicial system administered by a private, for-profit corporation, thereby

depriving persons accused of violations of Georgia law of their constitutional right of access to the

courts of Georgia.

**Response: Paragraph 101 states a legal conclusion to which no response is required. To the extent a response is needed, RedSpeed states that the referenced provisions of a RedSpeed contract speak for themselves. RedSpeed denies Plaintiff's characterization of the provisions and further denies any remaining allegations set forth in this Paragraph.**

102.

The contract between Redspeed and the City of Wrens, as well as the contracts between

Redspeed and other local governments of Georgia, that contain the provisions quoted above are

each void as constituting deprivations of the rights of Georgia citizens to trial by jury, the

presumption of innocence, adjudication of their cause by an unbiased court and their right of access

to the court of Georgia.

**Response: Paragraph 102 states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed states that the referenced contracts speak for themselves.  RedSpeed denies Plaintiff's characterization of the provisions and further denies any remaining allegations set forth in this Paragraph.**

103.

The presumption of innocence and the burden of proof on the proponent are guaranteed by the due process clause of the Georgia Constitution. A1i. I, Sec. I, para. I.

**Response: Paragraph 103 contains no factual allegations requiring a response.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

104.

A copy of a police officer's previously provided electronic signature printed on a notice of violation does not meet the requirements of O.C.G.A. § 40-14-1S(b)(2)(D) that provides:

> (D) A copy of a certificate sworn to or affirmed by a ce1iified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

O.C.G.A. § 40-14-18(b)(2)(D).

**Response: Paragraph 104 contains no factual allegations requiring a response and states a legal conclusion to which no response is required.  To the extent a response is needed, RedSpeed denies the allegations in this Paragraph.**

105.

The copying of an electronic form signature, accompanied by the words sworn to or affirmed on the accusation charging Mr. Dunn with excessive speed does not meet the requirements of O.C.G.A. § 40-14-18(b)(2)(D), nor does it meet the requirements for an enforceable affidavit or affirmation as set out in decisions of the Georgia appellate courts. The accusation mailed by Redspeed to Mr. Dunn thus does not meet the dictates of Georgia law and is therefore void. The named Plaintiff and members of the proposed Class are entitled to a declaratory

judgment declaring that the form statements "sworn to or affirmed" with a copy of an exemplar

signature does not meet the commands of Georgia law and thus renders all accusations and all

money collected under such accusations illegally obtained by Redspeed.

**Response: Paragraph 105 states a legal conclusion to which no response is required.  To the
extent a response is needed, RedSpeed denies that Plaintiff or any member of the proposed
class are entitled to any relief.  RedSpeed further denies any remaining allegations set forth
in this Paragraph.**

106.

As a matter of Georgia law, a governmental entity, including the courts of Georgia, may

not extract any fees from citizens of the State of Georgia absent legislative authorization for each

fee.

**Response: Paragraph 106 contains no factual allegations requiring a response.  To the extent
a response is needed, RedSpeed denies the allegations in this Paragraph.**

107.

Nowhere in O.C.G.A. § 40-14-18 is any authority for a private, for-profit corporation to

extract a fee from alleged violators of speed limit statutes.

**Response: Paragraph 107 states a legal conclusion to which no response is required.  To the
extent a response is needed, RedSpeed states that the statute speaks for itself.  RedSpeed
denies Plaintiff's mischaracterization of the statute and further denies any remaining
allegations set forth in this Paragraph.**

108.

A contractual provision cannot create legislative authority for a private, for-profit

corporation, such as Redspeed, to extract money from alleged violators of speed limit statutes.

**Response:  Paragraph 108 states a legal conclusion to which no response is required.  To the
extent any response is needed, RedSpeed denies the allegations in this Paragraph.**

109.

There is no authority under O.C.G.A. § 40-14-18 or elsewhere in Georgia law authorizing a private, for-profit corporation, such as Redspeed, to collect and receive 33% of fines authorized by the statute. Such fines can only be paid to a governmental entity and must be used for the purposes designated by O.C.G.A. § 40-14-18(111).

**Response:  Paragraph 109 states a legal conclusion to which no response is required.  To the extent any response is needed, RedSpeed states that O.C.G.A. § 40-14-18 speaks for itself. RedSpeed further denies any remaining allegations in this Paragraph.**

110.

There is no legislative authority in O.C.G.A. § 40-14-18 or elsewhere in Georgia law for a private, for-profit corporation to receive a credit card processing fee out of fines imposed and collected from alleged violators of speeding ordinances.

**Response: Paragraph 110 states a legal conclusion to which no response is required.  To the extent any response is needed, RedSpeed states that O.C.G.A. § 40-14-18 speaks for itself. RedSpeed further denies any remaining allegations in this Paragraph.**

111.

O.C.G.A. § 40-14-18(b)(l) authorizes local government entities to collect electronic processing fees up to $25.00 per violation. It does not authorize a private, for-profit corporation, such as Redspeed, to collect charges labeled as "electronic processing fees."

**Response: Paragraph 111 states a legal conclusion to which no response is required.  To the extent any response is needed, RedSpeed states that O.C.G.A. § 40-14-18 speaks for itself. RedSpeed further denies any remaining allegations in this Paragraph.**

112.

The form contract purports to authorize Redspeed to collect "electronic processing fees" not to "exceed $25.00 per violation," as consideration to Redspeed for the contract between Redspeed and local government entities, including the City of Wrens, but does not include any method by which the amount of the alleged electronic processing fee can be calculated. The

provision of paragraph 25 quoted above is indeterminate. The amount of compensation owed to a party to a contract is always a material term of the contract. Contracts that do not objectively specify the consideration are materially incomplete and void as a matter of law.

**Response: In response to Paragraph 112, RedSpeed states that its contracts with the City of Wrens and other local governments speak for themselves. Paragraph 112 also contains legal conclusion to which no responses are required. To the extent any response is needed, RedSpeed denies the allegations set forth in this Paragraph.**

113.

The Plaintiff and members of the Plaintiff Class are entitled to a declaration declaring that Redspeed is not and has not been authorized to keep for itself 33% of monies received by Redspeed from alleged violators, the two percent charge for "license reader module," the $25.00 charged for alleged "electronic processing," or a credit card processing fee.

**Response: RedSpeed denies the allegations set forth in this Paragraph and further denies that Plaintiff or any purported class member is entitled to any relief.**

114.

Plaintiff and Class Members have an ongoing, actionable dispute arising out of Redspeed's collection of "electronic processing fees," unauthorized charges for use of credit cards, the two percent "license reader module" fee, and collection and retention of one third of funds owed to governmental bodies and designated to fund local law enforcement or public safety initiatives. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Redspeed's contract with the City of Wrens violates Georgia law and is void and unenforceable.

**Response: Paragraph 114 states a legal conclusion to which no response is required. To the extent any response is needed, RedSpeed states that neither Plaintiff nor any purported class member is entitled to any relief. RedSpeed further denies any remaining allegations set forth in this Paragraph.**

41

Respectfully submitted this 11th day of March, 2024.

/s/ Christopher S. Cohilas                    By:  /s/ Jeremy Berry _____

Christopher S. Cohilas                              Jeremy T. Berry
Georgia Bar No. 175377                            Georgia Bar No. 055455
Louis E. Hatcher                                       Brittany M. Cambre
Georgia Bar No. 337342                            Georgia Bar No. 350793
Alfreda L. Sheppard                                  Joseph Siegelman
Georgia Bar No. 525106                            Georgia Bar No. 837090
WATSON SPENCE LLP                               CHILIVIS GRUBMAN WARNER & BERRY LLP
P.O. Box 2008                                           1834 Independence Square
Albany, Georgia 31702-2008                       Atlanta, GA 30338
Telephone: 229-436-1545                           Telephone: 404-233-4171
Facsimile: 229-436-6358                             Facsimile:  404-261-2842
ccohilas@watsonspence.com                       jberry@cglawfirm.com
lhatcher@watsonspence.com                       bcambre@cglawfirm.com
asheppard@watsonspence.com                    jsiegelman@cglawfirm.com

                                                            *Attorneys for Defendant RedSpeed Georgia LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing *Answer and Affirmative Defenses* using the Court's Electronic Case Management System which will notify all counsel of record via electronic mail as follows:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
Post Office Box 1547
Augusta, Georgia 30903-1547
John@bellfirm.net
pam@bellfirm.net

John B. Manly
James E. Shipley, Jr.
Manly Shipley, LLP
Post Office Box 10840
Savannah, Georgia 31412
john@manlyshipley.com
jim@manlyshipley.com

This 11th day of March, 2024.

/s/ Joseph J. Siegelman
Joseph J. Siegelman

43

⊕ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
JEFFERSON COUNTY, GEORGIA

**23CV00138**

**MAR 11, 2024 04:54 PM**

*Anne L. Durden*
Anne L. Durden, Clerk
Jefferson County, Georgia

IN THE SUPERIOR COURT OF JEFFERSON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| JONATHAN DUNN, Individually And On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 23CV00138 |
| REDSPEED GEORGIA LLC and CITY OF WRENS, GEORGIA, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT REDSPEED GEORGIA LLC'S MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' PURPORTED CLASS ACTION COMPLAINT**

Defendant RedSpeed Georgia LLC ("RedSpeed") hereby moves to dismiss Plaintiffs'

purported Class Action Complaint and includes the following Memorandum of Law in support of

its Motion to Dismiss.

## I.   INTRODUCTION

American City & County reports that "25,000 children are injured annually and more than

100 killed on average while walking to or from school, all as a result of speeding." Wes Guckert,

"Making School Zones Safer for Students and Pedestrians," July 20, 2022.

https://www.americancityandcounty.com/2022/07/20/making-school-zones-safer-for-students-

and-pedestrians/.[1] Notably, a recent study showed that "active school zone periods experience

higher crash rates; this holds for both motor vehicle only crashes and motor vehicle and non-

---

[1]      Wes Guckert is a Professional Transportation Planner and president and CEO of The Traffic Group, a traffic engineering and transportation planning company, is a fellow of the Institute of Transportation Engineers, and on the National Small Business Leadership Council.

motorist involved crashes. The danger to children and other pedestrians from speeding vehicles in school zones is real, and it is unacceptable." Aemal Khattak and Yashu Kang, "Research on School Zone Safety," Nebraska Dep't of Transp., June 2020, pp. ii., vii, 38, 42. https://digitalcommons.unl.edu/ndor/254?utm_source=digitalcommons.unl.edu%2Fndor%2F254 &utm_medium=PDF&utm_campaign=PDFCoverPages.[2] Guckert contends, based upon his education, training, and experience that "speed cameras are one of the best methods for slowing cars. While most people are not wild about speed cameras, the reality is that they help to encourage motorists to slow down, particularly in high-risk areas such as school zones."

Distilled to its essence, Plaintiff contends he should be allowed to bring a class action on behalf of people who are ticketed for exceeding the speed limit by more than ten miles per hour [3] in a school zone during school hours and one prior to the start and close of the school instructional periods.[4] Plaintiff's contentions are directed specifically toward shielding unlawful behavior— behavior that places lives at risk—from relatively minimal consequences, as compared to the dangers associated with the unlawful behavior sought by Plaintiff to be protected.[5] It is noteworthy

---

[2]    The citations to Guckert and the Nebraska Department of Transportation study are for background purposes only, and not intended by Defendant Redspeed as a basis for, or factor in, the Court's decision on this Motion to Dismiss.

[3]    This is actually more generous to the speeder than is the case with a hand-held speed detection device operated by a city, county, or campus law enforcement officer. While Georgia law would normally forbid such officers to make a traffic stop solely on the basis of speed unless the vehicle was in excess of ten miles per hour over the posted limit, O.C.G.A. § 40-14-8(b) makes an exception in school zones, allowing stops for traveling in excess of the speed limit regardless whether the vehicle exceeds ten miles per hour over that limit.

[4]    O.G.G.A. § 40-14-18(a)(1) provides that speed cameras may be active during instructional times and for one hour prior to and one hour subsequent to scheduled class times. Those two hours are, of course, the heaviest times for motorized and pedestrian traffic in school zones. This is consistent with the time periods set forth in O.G.G.A. § 40-14-8(b). *See* note 2, *supra.*

[5]    Plaintiff admittedly sped through an active school zone at 61 miles per hour!

that the entirety of Plaintiff's Complaint is directed toward excusing (and financially rewarding) Plaintiff and others for having sped through active school zones, placing children and their families and teachers in danger. Tragically, the relief requested by Plaintiff would allow such endangerment to continue with impunity.

## II. BACKGROUND

**A. AUTHORIZATION FOR CAMERAS TO DETECT SCHOOL ZONE SPEEDING ENDANGERING THE LIVES OF PEDESTRIANS AND MOTORISTS**

Recognizing the dangers to its citizens from those who fail to obey school zone speed limits, and understanding the limited officers available to enforce traffic laws in all of the various school zones, the Georgia Legislature authorized enforcement of school speed zones "by using photographically recorded images for violations which occur[] only on a school day during the time in which instructional classes are taking place and one hour before such classes are scheduled to begin and for one hour after such classes have concluded when such violations are in excess of ten miles per hour over the speed limit." O.G.G.A. § 40-14-8(a)(1).  Prior to placing and enforcing the cameras, however, a substantial number of protective measures must be met:

1. "Prior to the placement of a device within a school zone, each school within whose school zone such automated traffic enforcement safety device is to be placed shall first apply for and secure a permit from the Department of Transportation for the use of such automated traffic enforcement safety device. Such permit **shall be awarded based upon need**. …" O.C.G.A. § 40-14-18(a)(2) (emphasis supplied);

2. The speed detection device:

   a. "must meet or exceed the minimum performance specifications established by the Department of Public Safety," O.C.G.A. § 40-14-1(4);

   b. be "capable of producing photographically recorded still or video images, or both, of the rear of a motor vehicle or of the rear of a motor vehicle being towed by another vehicle, including an image of such vehicle's rear license plate," O.C.G.A. § 40-14-1.1(2)(A);

   c. be "capable of monitoring the speed of a vehicle as photographically recorded

pursuant to subparagraph (A) of this paragraph," O.C.G.A. § 40-14-1.1(2)(B); and

    d.  set forth "on each photographically recorded still or video image produced the date, time, location, and speed of a photographically recorded vehicle traveling at a speed above the posted speed limit within a marked school zone." O.C.G.A. § 40-14-1.1(2)(C);

3.  The governing authority must "apply to the Department of Public Safety for a permit to authorize the use of speed detection devices for purposes of traffic control within such [authorities' boundaries] on streets, roads, and highways, provided that such application shall name the street or road on which the device is to be used and the speed limits on such street or road shall have been approved by the Office of Traffic Operations of the Department of Transportation," O.C.G.A. § 40-14-1.1; O.C.G.A. § 40-14-18(a)(2);

4.  The governing authority must "possesses a license in compliance with Federal Communications Commission rules, and … each device, before being placed in service and annually after being placed in service, [shall be] certified for compliance by a technician possessing a certification as required by the Department of Public Safety," O.C.G.A. § 40-14-4;

5.  The automated traffic enforcement safety device "shall maintain a log for the automated traffic enforcement safety device attesting to the performance of such device's self-test at least once every 30 days and the results of such self-test pertaining to the accuracy of the automated traffic enforcement safety device," O.C.G.A. § 40-14-5(c)(1) ;

6.  There shall be an "independent calibration test on the automated traffic enforcement safety device at least once every 12 months," O.C.G.A. § 40-14-5(c)(2);

7.  Signs warning of the use of speed detection devices shall:

    a.  be erected "on every highway which comprises a part of the state highway system at that point on the highway which intersects the corporate limits [or boundary] of the [governing authority]. Such signs shall be at least 24 by 30 inches in area and shall warn approaching motorists that speed detection devices are being employed. No such devices shall be used within 500 feet of any such warning sign erected pursuant to this subsection," O.C.G.A. § 40-14-6(a);

    b.  In addition to the signs required by the preceding paragraph, "each [governing authority] using speed detection devices shall erect speed limit warning signs on every highway which comprises a part of the state highway system at that point on the highway which intersects the corporate limits [or boundary] of the [governing authority]. Such signs shall be at least 24 by 30 inches in area, shall warn approaching motorists of changes in the speed limit, shall be visible plainly from every lane of traffic, shall be viewable in any traffic conditions, and shall not be placed in such a manner that the view of such sign is subject to being obstructed by any other vehicle on such highway. No such devices shall be used within 500 feet

of any such warning sign[s]," O.C.G.A. § 40-14-6(b);

    c.  In addition to the signs required under the two immediately preceding paragraphs, "each law enforcement agency using an automated traffic enforcement safety device as provided for in Code Section 40-14-18 shall erect signs warning of the use of a stationary speed detection device within the approaching school zone. Such signs shall be at least 24 by 30 inches in area, shall be visible plainly from every lane of traffic, shall be viewable in all traffic conditions, and shall not be placed in such a manner that the view of such sign is subject to being obstructed by any other vehicle on such highway. Such signs shall be placed within 500 feet prior to the warning sign announcing the reduction of the speed limit for the school speed zone," O.C.G.A. § 40-14-6(c);

8.  The automated speed detection device may be enforced by using photographically recorded images for violations which occurred only on a school day during the time in which instructional classes are taking place and one hour before such classes are scheduled to begin and for one hour after such classes have concluded," O.C.G.A. § 40-14-18(a)(1);

9.  Enforcement pursuant to the immediately preceding paragraph shall be permissible only "when such violations are in excess of ten miles per hour over the speed limit,"[6] O.C.G.A. § 40-14-18(a)(1).

## B.  ADDITIONAL PROTECTIONS FOR THOSE SPEEDING THROUGH SCHOOL ZONES

The Georgia Legislature also placed additional protections to ensure that only those who are in violation of O.C.G.A. § 40-14-18 are required to pay the mandated civil monetary penalty:

1.  The speeder's vehicle must be "found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard or disobedience was not otherwise authorized by law," O.C.G.A. § 40-14-18(b)(1);

2.  The first automated traffic enforcement safety device [must have been] introduced by a law enforcement agency within a school zone for a period of 30 days prior to the offender's violation, O.C.G.A. § 40-14-18(a)(1);

3.  "A law enforcement agency authorized to enforce the speed limit of [the] school zone, or an agent working on behalf of a law enforcement agency or governing body, [has sent] by first class mail addressed to the owner of the motor vehicle within 30 days after obtaining

---

[6]    As noted above, this is more strict than normal with respect to school zones, because O.C.G.A. § 40-14-8(b) otherwise exempts school zones from the requirement that a speeder be more than 10 miles per hour over the speed limit in order to be ticketed.

the name and address of the owner of the motor vehicle but no later than 60 days after the date of the alleged violation, O.C.G.A. § 40-14-18(b)(2).:

    a. "A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid," O.C.G.A. § 40-14-18(b)(2)(A);

    b. "An image taken from the photographically recorded images showing the vehicle involved in the infraction," O.C.G.A. § 40-14-18(b)(2)(B);

    c. "A website address where photographically recorded images showing the vehicle involved in the infraction and a duplicate of the information provided for in this paragraph may be viewed," O.C.G.A. § 40-14-18(b)(2)(C);

    d. "A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law," O.C.G.A. § 40-14-18(b)(2)(D), O.C.G.A. § 40-14-18(b)(3);

    e. A statement of the inference that may be provided by O.C.G.A. § 40-14-18(b)(4) "and of the means specified therein by which such inference may be rebutted," O.C.G.A. § 40-14-18(b)(2)(E);

    f. "Information advising the owner of the motor vehicle of the manner in which liability as alleged in the citation may be contested through an administrative hearing," O.C.G.A. § 40-14-18(b)(2)(f); and

    g. "A warning that failure to pay the civil monetary penalty or to contest liability in a timely manner as provided for in" O.C.G.A. § 40-14-18(d) "shall waive any right to contest liability," O.C.G.A. § 40-14-18(b)(2)(g); and

4. "Proof that a motor vehicle was operated in disregard or disobedience of the speed limit of the marked school zone shall be evidenced by photographically recorded images," O.C.G.A. § 40-14-18(b)(3).

## C.   PLAINTIFF'S CONTENTIONS THAT HE AND OTHERS HAVE CARTE BLACHE PROTECTIONS WITH RESPECT TO SPEEDING THROUGH SCHOOL ZONES ARE PATENTLY FRIVOLOUS

In short, the burdens upon Defendants RedSpeed and the City of Wrens are onerous, while the burden on Plaintiff and others passing through school zones in the City of Wrens is elemental and simple: Do not endanger the lives of children and others by driving 11 miles per hour or more over the posted school zone speed limit during the designated hours. Plaintiff contends he finds it so burdensome to keep his speeding to less than 10 miles per hour over a school zone speed limit that the Court must honor his cries for class action status.

Plaintiff was ticketed for racing through an active school zone at **61 miles per hour**! Pretermitting the frivolity of Plaintiff's position as to his "right" to speed through an active school zone with legal impunity, his legal contentions are meritless. He brings claims for: (1) Money had and received; (2) Georgia RICO; (3) Fraud and deceit [sic]; and (4) Declaratory relief. None of the four counts can survive a Rule 12(b)(6) motion to dismiss. Because the claims are fundamentally flawed, and repleading would be futile, Plaintiffs' Complaint should be dismissed with prejudice.

## III.   INTRODUCTION

A motion to dismiss brought pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim may be granted where

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

*PV Holding Co. v. Poe*, 360 Ga. App. 381, 382, 861 S.E.2d 265 (2021) (quoting *Hendon Properties, LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 435, 620 S.E.2d 644 (2005)). While that is a

relatively high burden, Plaintiffs' claims, for the reasons set forth above and below, cannot meet the standard to survive this Motion to Dismiss.

## IV.   ARGUMENT AND CITATION TO AUTHORITY

The Georgia Legislature passed a law in 2018 to authorize traffic cameras to deal with the chronic problem of drivers endangering students, teachers, and others by speeding through active school zones. Many states, recognizing those dangers, have enacted such laws.

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff admits that he received a notice of his speeding violation, (*see, e.g.*, Complaint ¶¶ 3, 7), and that he voluntarily paid the associated fine.[7] (Complaint ¶¶ 10)  Plaintiff nevertheless asks the Court to issue wide-ranging declaratory relief pursuant to O.C.G.A. § 9-4-1, *et seq.* (Complaint ¶¶ 85-114) Beyond Plaintiff's lack of standing which, in itself is fatal to the requested declaratory relief, O.C.G.A. § 9-4-1 limits declaratory relief to those matters involving "uncertainty and insecurity with respect to rights, status, and other legal relations," and cannot be based upon "actions about which [a plaintiff] claims uncertainty have already occurred." *Perdue v. Barron*, 367 Ga. App. 157, 164, 885 S.E.2d 210 (2023).

Plaintiff's "money had and received" count is simply a form of an "unjust enrichment" claim, *see, e.g.*, *Price & Co. v. Majors Mgmt., LLC*, 363 Ga. App. 427, 437, 869 S.E.2d 587 (2022), and "can only be asserted by the 'true owner' of money for a refund." *Tolson Firm, LLC v. Sistrunk*, 338 Ga. App. 25, 26, 789 S.E.2d 265 (2016). Because Plaintiff voluntarily paid the ticket issued on behalf of the City of Wrens, his claim is barred by the voluntary payment doctrine. Plaintiff's

---

[7]      Because all of Plaintiff's nexus with his claims arises out of his speeding violation which he admitted by way of his voluntary payment, all of Plaintiff's claims are barred by the doctrine of unclean hands.

RICO claim is not based on underlying criminal acts, and his claim for "fraud and deceit" would be barred by, among other things, a lack of justifiable reliance. For those reasons, Plaintiff's Complaint does not set forth a proper class action.

## A.  PLAINTIFF'S COUNT I, MONEY HAD AND RECEIVED, MUST BE DISMISSED

Plaintiff's Complaint is a rambling, shotgun style pleading, with every Count incorporating the same fifty initial paragraphs of the Complaint. It appears, however, that Plaintiff's "money had and received" claim is based upon RedSpeed: (1) allegedly having assessed a fine in excess of the statutorily authorized cap; (2) having charged Plaintiff an electronic processing fee of $5.00; (3) having charged Plaintiff a $4.00 credit card processing fee when Plaintiff voluntarily chose to pay by credit card instead of by check or money order; and (4) RedSpeed allegedly retaining "33% to 35% of funds" collected from speeders such as Plaintiff, rather than remitting all of it to the City of Wrens. None of these contentions fit the elements of a money had and received claim, which requires that a plaintiff show: (1) "a person has received money of the other," (2) "that in equity and good conscious he should not be permitted to keep," (3) "demand for repayment has been made," and (4) "the demand was refused." *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359, 551 S.E.2d 765 (2001).

### Plaintiff Never Made a Demand for Payment

As to the latter element, Plaintiff filed suit without ever having made a demand upon RedSpeed or the City of Wrens for repayment, and that is fatal to his claim. *See City of Atlanta v. Hotels.com*, 289 Ga. 323, 328, 710 S.E.2d 766 (2011) ("In order to sustain an action for money had and received, a party must show, in addition to showing that an entity has received money justly belonging to another, that it made a demand for payment and was refused.") (citing

*Fernandez v. WebSingularity, Inc.*, 299 Ga.App. 11, 681 S.E.2d 717 (2009)). Count I is subject to dismissal with prejudice on that basis alone.

### Plaintiff's Money Had and Received Cannot Survive as a Stand-Alone Tort

As noted above, Plaintiff's "money had and received" count is simply a form of an "unjust enrichment" claim. *See Price & Co.*, 363 Ga. App. at 437. As such, it is, exclusively, "an alternative theory of recovery" to a contract claim. *See, e.g.*, *Wachovia Insurance Services, Inc. v. Fallon*, 299 Ga. App. 440, 449, 682 S.E.2d 657 (2009); *Tidikis v. Network for Medical Communications & Research, LLC*, 274 Ga. App. 807, 811, 619 S.E.2d 481 (2005). "[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Wachovia*, 299 Ga. App. at 449 (quoting *Tidikis*, 274 Ga. App. at 811). Plaintiff has not pled the existence of any contract between RedSpeed and him. "Because [Plaintiff herein] asserts unjust enrichment as a separate tort and not an alternative theory of recovery for a failed contract, this claim fails as a matter of law." *Id.* (citing *Tidikis*, at 811). Accordingly, Count I must be dismissed.

### Money Had and Received is Inapplicable to the Allegations of Plaintiff's Complaint

Additionally, Plaintiff's unjust enrichment claim fails because Plaintiff conferred no benefit to RedSpeed for which he expected compensation—an indispensable element of the claim. The Court of Appeals in *Sitterli v. Csachi*, 344 Ga.App. 671, 811 S.E.2d 454 (2018), recited the elements of an unjust enrichment claim, emphasizing that such claim fails if the plaintiff lacked an "*expectation that the defendant would be responsible for the cost*" of the benefit conferred:

> [A] claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; *that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof*; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it.

*Sitterli*, 344 Ga. App. 673 (emphasis in original) (quoting *Campbell v. Ailion*, 338 Ga.App. 382, 387, 790 S.E.2d 68 (2016)). The *Sitterli* Court noted that it is "well-settled law that for unjust enrichment to apply, a party conferring a benefit 'must act with the *expectation that the other will be responsible for the cost*.'" 244 Ga. App. at 674 (citing *Morris v. Britt*, 275 Ga.App. 293, 294, 620 S.E.2d 422 (Ga. 2005)) (emphasis in original); *see also Hollifield v. Monte Vista Biblical Gardens, Inc.*, 251 Ga. App. 124, 131, 553 S.E.2d 662 (2001) ("For unjust enrichment to apply either in law or equity, the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost."); *Bedsole v. Action Outdoor Advertising JV, LLC*, 325 Ga. App. 194, 200, 750 S.E.2d 445 (2013) (examining whether the plaintiff "expected to be compensated at the time he rendered the services"). Plaintiff contends that RedSpeed was unjustly enriched when it collected Plaintiff's voluntary payment on behalf of the City of Wrens for his speeding citation. Plaintiff neither had nor alleges that he had—nor could he—any expectation from his payment of the citation other than to face no further civil penalty for his speeding violation, and that expectation was met. Accordingly, Plaintiff's unjust enrichment claim in the form of money had and received simply does not apply to these circumstances. Count I of Plaintiff's Complaint must therefore be dismissed.

### The Fee Assessed by RedSpeed was Mandated and Authorized by Statute

Plaintiff's contention that RedSpeed assessed a civil fine in excess of the statutorily authorized amount is patently absurd. O.C.G.A. § 40-14-18 provides that the "civil monetary penalty shall be $75.00 for a first violation …." Plaintiff falsely claims he was assessed an $80.00 civil monetary penalty, and cites Exhibit "A" to his Complaint, a Notice of School Speed Violation

("Violation Notice"), in support of the false statement.[8] The Violation Notice states in that regard: "Amount Due: $80.00 ($75.00 penalty, $5.00 e-processing fee)." It further states that "you are liable for the violation and the state-mandated penalty of $75.00 with $5.00 electronic processing fee." The referenced statute provides for both the civil penalty and the electronic processing fee, and the penalty is in the exact amount mandated by the statute.

Plaintiff's objection to the $5.00 electronic processing fee is inexplicable, and inexcusable, in light of the express statutory language authorizing an even greater fee, to wit: "fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00." There can be no question that $4.00 is a lesser sum than, and does not exceed, $25.00. The statute contains no mandate that RedSpeed (or any similarly situated entity) provide a detailed explanation or justification of the amount of the fee. Indeed, RedSpeed assesses only 20 percent of the amount to which it would be statutorily entitled.

Plaintiff's dislike of the $4.00 credit card processing fee fares no better. The Violation Notice demonstrates that Plaintiff was given three options for paying the assessed penalty and processing fee: By money order to a designated mailing address, by check to the designated mailing address, or by online payment at https://secure.speedviolation.com. Indeed, the Violation Notice states in bolded font:

> **PAYMENT BY MAIL: Mail your person check, cashier's check or money order (payable to: City of Wrens School Zone Safety Program) in the enclosed envelope along with the remittance stub at the bottom of the reverse side of this notice. Print the Notice # on your personal check, cashier's check or money order. Payment mailing address: P.O. Box 533507, Atlanta, GA 30353-3507.**

---

[8]     The "pleadings to be construed" in deciding a 12(b)(6) motion to dismiss "include any exhibits attached to and incorporated into the complaint and the answer." *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 750, 751 S.E.2d 545 (2013) (cited in *Roberts v. JP Morgan Chase Bank, N.A.*, 432 Ga. App. 73, 73-74, 802 S.E.2d 880 (2017)). *See also* OCGA § 9–11–10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").

Rather than utilize these options, none of which would have incurred a credit card processing fee, Plaintiff voluntarily and intentionally chose to pay online and voluntarily and intentionally assented to the credit card processing fee.

### Plaintiff's Claims Are Barred by the Voluntary Payment Doctrine

Further, because Plaintiff voluntarily paid the $75.00 civil penalty, the $5.00 electronic processing fee, and the $4.00 credit card processing fee, his claims pursuant to a theory of money had and received are barred by the "voluntary payment doctrine," which is codified at O.C.G.A. § 13-1-13:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

"The party seeking to recover payment bears the burden of showing that the voluntary payment doctrine does not apply." *Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282, 284, 542 S.E.2d 640 (2000) (quoted in *Progressive Elec. Servs., Inc. v. Task Force Constr., Inc.*, 327 Ga. App. 608, 618, 760 S.E.2d 621 (2014)). "Even if the plaintiff does not have actual knowledge of all of the facts, the doctrine will still bar recovery where the plaintiff had constructive knowledge of the material facts." *Ellison v. Southstar Energy Servs., LLC*, 298 Ga. App. 170, 173-74, 679 S.E.2d 750 (2009) (citing *Cotton v. Med–Cor Health Info. Solutions, Inc.*, 221 Ga. App. 609, 611, 472 S.E.2d 92 (1996)) ("plaintiff must show that 'a valid reason existed for [his] failure to determine the truth' in order to avoid application of the doctrine").

What Plaintiff knew at the time he paid the monies to RedSpeed was the amount of the civil monetary penalty, the amount of the electronic processing fee, and the amount of the credit

card fee. Plaintiff knew that he had sped through the school zone at 61 miles per hour, and he saw

a video of his unlawful behavior on the https://secure.speedviolation.com website.

What Plaintiff knew or should have known, and had constructive notice of, was all of the

information in O.C.G.A. § 40-14-18 and the related statutes. What Plaintiff absolutely knew was

that the Violation Notice stated:

### Section II: CONTEST THE VIOLATION

**You may testify under oath in open court or submit to the court a sworn statement that you were not the operator of the vehicle at the time of the alleged violation. You may download the affidavit at https://secure.speedviolation.com**

**You may present to the court a certified copy of a police report showing that the vehicle had been reported to the police as stolen prior to the time of the alleged violation.**

**To request a hearing on the above referenced Notice of Violation, submit the signed and dated coupon below in the envelope provided. Your response must be received on or before the "Payment or Contest Must Be Received By" date indicated on the reverse of this Notice. You will be notified by mail of the assigned hearing date, time and location.**

**You may also schedule a Court Hearing by phone by calling the City of Wrens School Zone Safety Program Customer Service line at 877-682-1757.**

Rather than contest the citation, Plaintiff voluntarily paid the civil penalty, electronic processing

fee, and credit card processing fee. Plaintiff has therefore waived and forfeited any claim to the

monies voluntarily paid to RedSpeed, and his claim for money had and received must be dismissed

as a matter of law.

### B. PLAINTIFF'S COUNT II, GEORGIA RICO, MUST BE DISMISSED

### Plaintiff Cannot Show Statutory Predicate Acts

A valid civil RICO claim requires that "'a plaintiff show that the defendant violated or

conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury

to the plaintiff.'" *Hansford v. Veal*, 369 Ga. App. 641, 648, 894 S.E.2d 215 (2023) (quoting *Overlook Gardens Properties, LLC v. Orix, USA, LP*, 366 Ga. App. 820, 834, 884 S.E.2d 433 (2023)). As to the former element, Plaintiff would have to prove that RedSpeed committed or attempted to engage in racketeering activity, with said activity consisting of one or more on a list of designated actions. *See* O.C.G.A. § 16-14-3. The alleged underlying predicate acts, although not artfully pleaded, are those addressed above in Section A relating to Plaintiff's money had and received claim. Money had and received is not one of the enumerated predicate acts in the RICO statut,e and therefore the complaint must fail on that basis alone.

Moreover, even if money had and received could, as a matter of law, be considered a RICO predicate act, Plaintiff's RICO claim suffers from the same defects as the money had and received claims. Plaintiff violated the law—endangering children and others; he was afforded due process—having the right to contest the citation and to a hearing, but he chose not to do so. Plaintiff had choices as to the method of payment of the mandatory statutory penalty, but chose to pay online and incur the credit card processing fee he would not have incurred had he paid by check or money order. There was nothing unlawful in the actions of RedSpeed, and all of Plaintiff's actions were voluntary and with actual or constructive knowledge of the facts.

The only new wrinkle argued by Plaintiff with respect to the RICO claim is that he "paid penalties and fees misrepresented on notices of violations as owed to governmental agencies when, in fact, such sums were being collected and retained by RedSpeed illegally." (Complaint, ¶ 69) Plaintiff knows that, as stated, this is a misleading and false allegation. Plaintiff pleaded in paragraph numbered 33 of his Complaint that RedSpeed had retained only "33% of the $80 'Civil Monetary Penalty' it collected" from him. Thus, he knows paragraph 69 is false as pleaded. Plaintiff would actually be addressing in his RICO claim 33 percent of the $75.00 statutory civil

penalty. Nevertheless, Plaintiff does not state predicate acts which would satisfy the elements of a RICO claim. By way of contract with RedSpeed, the City of Wrens—through its powers pursuant to O.C.G.A. §§ 40-14-1.1, *et seq.*, and particularly § 40-14-18—has authorized RedSpeed to place the speed detection cameras, and to assess and collect the civil penalties. O.C.G.A. § 40-14-18 authorizes this type of arrangement, and neither RedSpeed nor the City of Wrens are engaging in RICO-predicate behavior by acting in accord with statutory authorizations.

**Plaintiff Cannot Show Injury from a Statutory Predicate Act**

Regardless, Plaintiff cannot prove the second requirement of his RICO claim, to wit: "that the [alleged] RICO violation proximately caused injury to the plaintiff.'" *Hansford*, 369 Ga. App. at 648; *Overlook Gardens Properties, LLC*, 366 Ga. App. at 834. Plaintiff's admitted speeding through a school zone in excess of 10 miles per hour over the speed limit subjected him to a mandatory $75.00 civil monetary penalty. *See* O.C.G.A. § 40-14-18(b)(1). Plaintiff unquestionably owed the civil monetary penalty. That he paid it to RedSpeed, the agent of the City of Wrens, as opposed to directly to the latter, was of no adverse consequence to him. Plaintiff's payment to RedSpeed, as agent for the City of Wrens, satisfied the penalty mandate of O.C.G.A. § 40-14-18(b)(1). Plaintiff would have been no better off making payment directly to the City of Wrens, and he was no worse off having remitting payment to RedSpeed, so he could not possibly show injury flowing from any act of RedSpeed, and he therefore cannot prove a necessary element of a civil RICO action, and that claim must be dismissed with prejudice.

## C.  PLAINTIFF'S COUNT III, FRAUD AND DECEIPT [SIC], MUST BE DISMISSED

Plaintiff's claim for fraud and deceit is simply a regurgitation under another name of its RICO and money had and received claims, and for the reasons stated above, cannot possibly constitute a viable legal theory under the facts alleged in Plaintiff's Complaint. Indeed, fraud and

deceit require a much higher showing than the other two claims, because Plaintiff has to show fraud, and separately that his "justifiable reliance" on the alleged fraud could not have been discovered had he exercised due diligence.

> To prove fraud, the plaintiff must establish five elements: [1] a false representation by a defendant, [2] scienter, [3] intention to induce the plaintiff to act or refrain from acting, [4] justifiable reliance by plaintiff, and [5] damage to plaintiff.

*Freebirds LLC v. Coca-Cola Co.*, 366 Ga. App. 443, 445, 883 S.E.2d 388 (2023) (quoting *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 50, 668 S.E.2d 737 (2008)). Plaintiff has alleged false representations by RedSpeed in the form of the Violation Notice, scienter, and an intention to induce the Plaintiff to act. While Plaintiff would be unable to produce evidence to prove his claims on those elements, for purposes of this Motion to Dismiss RedSpeed will address the latter two elements: justifiable reliance and damage to the plaintiff.

**Plaintiff Cannot Prove that He Suffered Damages**

RedSpeed has already demonstrated the Plaintiff cannot prove he was damaged as a result of an act or representation on the part of RedSpeed. Plaintiff admittedly recklessly endangered children and others by speeding through an active school zone at 61 miles per hour. He admitted his guilt by way of paying the statutorily mandated civil monetary penalty instead of requesting a hearing or objecting to the finding of his commission of an illegal action or to the amount of the civil monetary penalty, despite prominent notice of his right to contest those matters. Because he was guilty, and admitted so, O.C.G.A. § 40-14-18(b)(1) mandated he pay the $75.00 civil monetary penalty. As noted above, Plaintiff could not possibly show harm from satisfying the statutory mandate by paying the money to RedSpeed as the City of Wren's agent, as opposed to paying the penalty directly to the City of Wrens. Any argument to the contrary is legally and factually absurd.

16

**Plaintiff Cannot Show Justifiable Reliance**

Nor could Plaintiff, under any set of circumstances he could prove, demonstrate justifiable reliance on any representation by RedSpeed. Plaintiff's primary allegation of misrepresentation by RedSpeed is that: (1) Plaintiff was led by the appearance of the Violation Notice to believe that the penalties and fees he owed as a result of speeding through an active school zone endangering children's lives were "on violations as owed to law enforcement when, in fact, such sums were being collected and retained by RedSpeed illegally"; and (2) the "percentages retained by RedSpeed from the statutory civil monetary penalty exceed all costs for the SPE Systems and costs associated with processing the notices of violations"; and (3) RedSpeed charged a credit card processing fee.

Plaintiff's contentions are frivolous and cannot form the basis for a legitimate legal claim. As to the first contention, O.C.G.A. § 40-14-18 provides expressly that an individual speeding through an active school zone at more than 10 miles per hour over the speed limit **shall** pay a civil monetary penalty of "$75.00 for a first violation." Accordingly, because Plaintiff did not contest the prima facie case of his having unlawfully sped through an active school zone, the $75.00 civil monetary penalty was owed by Plaintiff. The collection point for the civil monetary penalty had no bearing on the fact that Plaintiff was mandated by statute to pay the penalty, and it did not alter that fact that payment via RedSpeed satisfied his statutory obligation. Again, it is an elementary proposition that Plaintiff could therefore have suffered no harm.

Plaintiff's second contention is equally frivolous. O.C.G.A. § 40-14-18(b)(1) provides that an admitted first-time offender **shall** pay "fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00." There is no evidence that Plaintiff could submit in support of his Complaint that would make $5.00 (the electronic processing fee assessed

by RedSpeed) exceed $25.00. Nor is there anything in O.C.G.A. § 40-14-18, or anywhere else in Georgia law for that matter, that limits the amount of the O.C.G.A. § 40-14-18(b)(1) electronic processing fee to "SPE Systems and costs associated with processing the notices." Indeed, the statute itself compels a number of factors be involved in the processing of the notices, including: (1) the ascertainment and verification of the identity of the owner of the vehicle operated by the lawbreaker; (2) the preparation and issuance of a citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid; (3) producing and making available to the owner of the vehicle operated by the speeder of a recorded image showing the vehicle involved in the infraction; (4) maintenance of a website making available photographically recorded images showing the vehicle involved in the infraction and allowing for viewing by the owner of the car that sped through the school zone endangering children; (5) obtaining a copy of a certificate sworn to or affirmed by a certified peace officer employed by the law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law; (6) provision of information advising the owner of the motor vehicle operated by the lawbreaker of the manner in which liability as alleged in the citation may be contested through an administrative hearing; (7) provision to the owner of the vehicle that unlawfully sped through the school zone of a warning that failure to pay the civil monetary penalty or to contest liability in a timely manner as provided for in O.C.G.A. § 40-14-

18(d) shall waive any right to contest liability; (8) make available to the owner of the vehicle that was unlawfully operated in the school zone photographically recorded images that said vehicle was operated in disregard or disobedience of the speed limit of the marked school zone; and (9) providing to the owner of the vehicle a copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency and stating that, based upon inspection of photographically recorded images, said motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law.[9] Accordingly, Plaintiff has neither a legal nor factual basis to support his contention that the O.C.G.A. § 40-14-18(b)(1) electronic processing fee is as limited in scope as Plaintiff hopes to define it.

Plaintiff's third contention, that RedSpeed charged a credit card processing fee, is inexplicably absurd and frivolous. As noted above, Plaintiff could have utilized a money order or check to pay the civil penalty he incurred as a result of speeding through an active school zone. Instead, he chose to pay online, and he voluntarily chose and agreed to incur the credit card processing fee that was attendant to that method of payment. Plaintiff had other options that did not include the credit card processing fee, but he knowingly chose to pay the fee. Again, his voluntarily choosing the option that involved a credit card processing fee, and his knowing and voluntary payment of said fee, bars any claim based upon his voluntary payment. *See* O.C.G.A. § 13-1-13.

---

[9]      Even this would not, of course, capture all of the costs associated with the personnel necessary to perform the other human functions involved in the electronic processing process, including but not limited to salaries and benefits of those who write the code for the website, maintain the website, provide cybersecurity and other protections against unauthorized access to the website, and of those who carry out the other functions set forth above.

### D.  PLAINTIFF'S COUNT IV, DECLARATORY RELIEF, MUST BE DISMISSED

**Plaintiff's Claim for Declaratory Relief is in Violation of the Georgia Constitution**

Plaintiff makes a broad-ranging, impermissible request for declaratory relief. As an initial matter, Plaintiff alleges in paragraphs 88 through 114 of his Complaint that the contract between RedSpeed and the City of Wrens violated Georgia constitutional and statutory law.[10] The Constitution of the State of Georgia precludes this Count as to RedSpeed, and the Count is subject to dismissal for being pleaded in violation of the Constitution of the State of Georgia. Effective January 1, 2021, sovereign immunity was "waived for actions in the superior court seeking declaratory relief from acts of … [any] municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States." Ga. Const. art. I, § II, para. V(b)(1). However, any such action filed against a "municipality of the state or officer or employee thereof shall be brought exclusively against such … municipality and in the name of such … municipality. **Actions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed.**" Ga. Const. art. I, § II, para. V(b)(2). The naming of RedSpeed as a defendant violates this provision of the Georgia

---

[10]     Paragraph 97 of the Complaint makes the bizarre allegation that the contract between Redpeed and the City of Wrens violates "Rule 3.4(b)(3) of the Georgia Rules of Professional Conduct" prohibition on paying expert witnesses contingent upon the outcome of a proceeding. Plaintiff apparently overlooked Rule 4-101 of the Georgia Rules of Professional Conduct that declares the scope of authority of those rules: "The State Bar of Georgia is hereby authorized to maintain and enforce, as set forth in rules hereinafter stated, Georgia Rules of Professional Conduct to be observed **by the members of the State Bar of Georgia and those authorized to practice law in the state of Georgia** …" (Emphasis supplied.) Indeed, Rule 3.4 begins: "A **lawyer** shall not …." (Emphasis supplied.) Of course, neither Redspeed nor the City of Wrens are members of the State Bar or authorized to practice law in Georgia.

Constitution and it is mandatory upon the Court to dismiss Plaintiff's Count IV seeking declaratory relief.

Even if Count IV was not subject to dismissal for being pleaded in direct contravention to the mandates of said constitutional provision, the entirety of Count IV would be subject to dismissal on the basis that the request for declaratory relief rests upon the grounds shown above to be without legal merit.

**Plaintiff Has Not Pleaded a Justiciable Issue for Purposes of Declaratory Relief**

There is no private right of action under O.C.G.A. § 40-14-1 et seq. This is fatal to Count IV, which purports to be brought pursuant to O.C.G.A. § 9-4-1, *et seq.*, said statutory provisions relating to declaratory judgments. However, a "declaratory judgment may not be granted in the absence of a justiciable controversy." *Watts v. Promina Gwinnett Health Sys., Inc.*, 242 Ga. App. 377, 381, 530 S.E.2d 14 (2000) (quoting *Farm & Home Life Ins. Co.*, 235 Ga. App. 507, 508, 510 S.E.2d 76 (1998)). Plaintiff has already paid the civil monetary penalty he was assessed for speeding through an active school zone, and he has paid the electronic processing fee, and the credit card processing fee. Plaintiff chose not to contest the penalty and fees, and there is therefore no justiciable controversy.

Nor could Plaintiff, under the circumstances of this case, rely upon a court's authority to render declaratory relief in those instances "when there is 'a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest.'" *DeKalb County v. City of Chamblee*, 369 Ga. App. 503, 505, 894 S.E.2d 59 (2023) (quoting *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26, 28, 785 S.E.2d 874 (2016)). This exception is unavailable to

Plaintiff because "'[d]eclaratory judgment will not be rendered based on a possible or probable future contingency.'" *Effingham County Bd. of Com'rs v. Effingham County Indus. Dev. Auth.*, 286 Ga. App. 748, 750, 650 S.E.2d 274 (2007) (quoting *Baker v. City of Marietta*, 271 Ga. 210, 215, 518 S.E.2d 879 (1999)). While it is possible Plaintiff will again speed through an active school zone in the City of Wrens that is monitored by an automatic speed detecting device placed jointly by RedSpeed and the City, and perhaps even probable given Plaintiff's lack of remorse for endangering children and others, that possible future contingency does not provide grounds for this Court to issue declaratory relief.

Additionally, those cases cited in the preceding paragraph are construing O.G.G.A. § 9-4-2, which allows for the declaration "of rights and other legal relations …." Plaintiff, of course, has no legal "right" to speed through a school zone, so insofar as he is requesting the Court declare his "rights" in the event he commits a future violation of the law, he is beyond the sphere of declaratory relief. Further, as a result of his pleadings, he cannot be advising the Court he is unaware of the facts and potential consequences should he again speed through a school zone with automated detection devices placed by RedSpeed and the City of Wrens. He has informed the Court by way of his Complaint that he understands he will be cited if he exceeds by 10 or more miles per hour the speed limit of an active school zone. He understands a citation will be issued to the owner of the vehicle in which the speeding occurs. He understands that if the speeding vehicle is registered to him, he will receive the citation. He understands he would have the right to contest the citation, including but not limited to on every basis he desires to raise in opposition to the propriety of the citation, including those issues he has pleaded in his Complaint. He understands that he could appeal and litigate any adverse decision. He understands that if he elects to pay the civil monetary penalty, he may do so by check or money order or credit card. He understands that should he pay

by credit card, he will be charged a credit card processing fee. He understands that if he pays the citation, it will include the electronic processing fee. Plaintiff understands that he would be paying the civil monetary penalty to RedSpeed as agents for the City of Wrens, and that a portion of that fee would belong to RedSpeed. There is no uncertainty that presents itself as an appropriate determination for this Court based upon the allegations of the Complaint.

**There is No State Action Upon Which to Raise a Purported Lack of Due Process**

Plaintiff alleges violation of his state constitutional due process rights in paragraphs 93 and 94. State action is required to assert a challenge under Georgia's constitution. *See Alliance Partners v. Harris Trust & Sav. Bank*, 266 Ga. 514, 515, 467 S.E.2d 531 (Ga. 1996) (requiring state action for successful due process challenge); *Coffey Enters. Realty & Dev. Co., Inc. v. Holmes*, 233 Ga. 937, 939, 213 S.E.2d 882 (1975); *Parks v. Bank of New York*, 279 Ga. 418, 419, 614 S.E.2d 63 (2005) (citing with approval *Holmes* and *Parks*). Plaintiffs do not even allege RedSpeed was a state actor for purposes of a challenge under the Georgia Constitution. In fact, Plaintiffs allege exactly the opposite. They assert that Georgia's speed detection device statute is unconstitutional because RedSpeed is *not* an agent of any governing body. *See e.g.*, Complaint, ¶¶ 1, 21 ("RedSpeed is not an agent of the City of Wrens nor of the Wrens Police Department"). Plaintiff cannot have his cake and eat it too. Accordingly, there is no due process issue properly before the Court as to RedSpeed.

## E.  PLAINTIFF HAS NOT PLEADED ADEQUATE CLASS ACTION PREREQUISITES

**Plaintiff Cannot Adequately Represent any Class**

The Georgia courts "have held that where a named plaintiff shows no injury or has no valid claim, class certification is improper." *Deal v. Miller*, 321 Ga. App. 220, 226, 226 n.28, 739 S.E.2d 487 (2013) (citing *Life Ins. Co. of Ga. v. Meeks*, 274 Ga. App. 212, 218, 617 S.E.2d 179 (2005)

("When the named plaintiff has no valid claim against the defendant, he is not eligible to represent the purported class."); *Dryvit Systems v. Stein*, 256 Ga. App. 327, 329, 568 S.E.2d 569 (2002) ("Because [plaintiff] himself has no valid claims against [defendant], he cannot claim membership in, and is not eligible to represent, the purported class")). Because, as shown above, Plaintiff has not advanced a viable legal claim, nor any resultant damages, he cannot serve as a class representative.

### Class Action Status is Inappropriate for the Issues Raised in the Complaint

Even if the Court were to find that any of Plaintiff's claims survived and that he suffered resultant damages, he has not pleaded a proper class action. "A class action is an exception to the usual rule that litigation is 'conducted by and on behalf of the individual named parties only, and consistent with its exceptional nature, a class action is permitted only in the limited circumstances described in OCGA § 9-11-23.'" *Cagle v. Portfolio Recovery Assocs., LLC*, 368 Ga. App. 41, 42, 889 S.E.2d 181 (2023) (quoting *Georgia-Pacific Consumer Prods., LP v. Ratner*, 295 Ga. 524, 525, 762 S.E.2d 419 (2014); citing *Bowden v. Med. Ctr., Inc.*, 309 Ga. 188, 192, 845 S.E.2d 555 (2020)). "And the party seeking to represent a class 'bears the burden of proving that class certification is appropriate,'" *id.*, at 43, "which first entails 'establishing that the prerequisites of OCGA § 9-11-23 (a) have been satisfied, those being (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy." *Id.* (quoting *American Debt Found., Inc. v. Hodzic*, 312 Ga. App. 806, 808, 720 S.E.2d 283 (2011); citing OCGA § 9-11-23(a)).

"If the plaintiff fails to meet even one of the threshold requirements of OCGA § 9-11-23 (a), there is 'no need to consider any of the other requirements of the statute, and the request for

certification must fail.'" *Id.* (quoting *Bowden*, 309 Ga. at 194; *Ratner*, 295 Ga. at 527).[11] Based upon Plaintiff's allegations, the commonality and typicality requirements could not be met. Utilizing his allegations, potential plaintiffs who have received a citation could have any mixture of the following factual scenarios: (1) have been exceeding the speed limit by more than 10 miles per hour **versus** contending they were not more than ten miles per hour over the limit; (2) being the driver and owner of the car **versus** being the owner but contesting being the driver; (3) admitting being cited during a time that the speed detection cameras should be operational **versus** claiming that the citation was from a statutorily prohibited time; (4) paying the civil monetary penalty **versus** contesting the citation; (5) paying the civil monetary penalty by credit card **versus** paying the monetary penalty by way of check or money order; and (6) being charged with a first offense **versus** being charged with a second or subsequent defense.[12] All of these issues would have to be considered on an individual basis with respect to each potential plaintiff.[13] This renders class certification ***impossible.***

Additionally, each plaintiff would have to try an individual case with respect to reliance. Quite frankly, as shown above none of Plaintiff's arguments with respect to reliance have any legal

---

[11] "Importantly, in order to satisfy these requirements, it is 'not enough for the plaintiffs simply to have alleged that they were satisfied.'" *Id.* (quoting *Ratner*, at 526). Rather, the plaintiffs must come forward with "evidence to prove their satisfaction of the statutory requirements." *Id.* While Plaintiff may not have to make the evidentiary showing at the motion to dismiss stage, it is a legitimate consideration for the Court that based upon information now known, Plaintiff will be unable at any time to make the required evidential showing.

[12] In addition to the fine for the former being less than for the latter, a person who had already been through the process would have knowledge the Plaintiff herein claims to not have known at the time the paid his civil monetary penalty.

[13] This is simply a representative list and not intended to be exhaustive. "Because many individual suits would be necessary in this case even if the one or two common issues were resolved class-wide, we are constrained to conclude that the trial court abused its discretion in granting [plaintiff's] motion for class certification." *Life Ins. Co. of Ga.*, 274 Ga. App. at 219.

or factual merit, but those issues would be at play if a class is certified. As an example, the fraud and deceit claims mandate each plaintiff show fraud as to that particular plaintiff, and separately that each plaintiff's "justifiable reliance" on the alleged fraud particular to that plaintiff. *See, e.g., Freebirds LLC*, 366 Ga. App. at 445; *DaimlerChrysler Motors Co.*, 294 Ga. App. at 50. Beyond that, despite Georgia being a notice pleading state, "'[i]n all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity.'" *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717, 721, 894 S.E.2d 442 (2023) (quoting OCGA § 9-11-9 (b)). Accordingly, in light of the multitude of potential scenarios (for example as set forth in the preceding paragraph) each potential plaintiff would have to plead with particularity the alleged misrepresentations and omissions upon which that plaintiff purportedly relied, and the defendants would have the right to advance defenses particular to the fraud claimed by each potential plaintiff.

For all of the above reasons, the Court should reject Plaintiff's allegations that this would be an appropriate matter for class certification. In any event, Plaintiff, having no viable claims of his own, cannot serve as a class representative even should the Court consider possible class certification.

## CONCLUSION

Wherefore, for the foregoing reasons, Defendant RedSpeed respectfully requests that the Court dismiss, with prejudice, Plaintiff's Complaint.

[*Signatures on the following page*]

26

Respectfully submitted this 11th day of March, 2024.

| | |
|---|---|
| */s/ Christopher S. Cohilas* | By:  */s/ Jeremy Berry* |
| Christopher S. Cohilas | Jeremy T. Berry |
| Georgia Bar No. 175377 | Georgia Bar No. 055455 |
| Louis E. Hatcher | Brittany M. Cambre |
| Georgia Bar No. 337342 | Georgia Bar No. 350793 |
| Alfreda L. Sheppard | Joseph Siegelman |
| Georgia Bar No. 525106 | Georgia Bar No. 837090 |
| WATSON SPENCE LLP | CHILIVIS GRUBMAN WARNER & BERRY LLP |
| P.O. Box 2008 | 1834 Independence Square |
| Albany, Georgia 31702-2008 | Atlanta, GA 30338 |
| Telephone: 229-436-1545 | Telephone: 404-233-4171 |
| Facsimile: 229-436-6358 | Facsimile:  404-261-2842 |
| ccohilas@watsonspence.com | jberry@cglawfirm.com |
| lhatcher@watsonspence.com | bcambre@cglawfirm.com |
| asheppard@watsonspence.com | jsiegelman@cglawfirm.com |
| | |
| | *Attorneys for Defendant RedSpeed Georgia LLC* |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day served a copy of the within and foregoing ***Defendant's Motion to Dismiss and Memorandum of Law in Support of Motion to Dismiss*** upon all parties to this matter electronically via PeachCourt e-file and via Statutory Electronic Service, addressed to counsel of record as follows:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
Post Office Box 1547
Augusta, Georgia 30903-1547
John@bellfirm.net
pam@bellfirm.net

John B. Manly
James E. Shipley, Jr.
Manly Shipley, LLP
Post Office Box 10840
Savannah, Georgia 31412
john@manlyshipley.com
jim@manlyshipley.com

This 11th day of March, 2024.

*/s/ Jeremy Berry*
Jeremy T. Berry